UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
MANZOOR BEVINAL, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

    vs.

AVON PRODUCTS, INC., SHERILYN S.
McCOY, JAMES S. WILSON and JAMES S.
SCULLY,

              Defendants.
———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.

CLASS ACTION

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

DEMAND FOR JURY TRIAL

Plaintiff Manzoor Bevinal ("plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Avon Products, Inc. ("Avon" or the "Company"), Company press releases and conference calls, and media reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all purchasers of Avon common stock between August 2, 2016 and August 2, 2017, inclusive (the "Class Period"), against Avon and certain of the Company's officers and/or directors, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5. Jurisdiction is conferred by §27 of the Exchange Act, 15 U.S.C. §78aa.

3.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) as, upon information and belief, Avon shareholders reside in this District, the acts and transactions giving rise to the violations of law complained of occurred in part in this District, the false and misleading statements were disseminated in this District, and the manipulative conduct was carried out in part in this District.

4.      In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

5.      Plaintiff Manzoor Bevinal purchased Avon common stock during the Class Period as described in the certification attached hereto and incorporated herein by reference and suffered damages thereby.

6.      Defendant Avon is a global manufacturer and marketer of beauty and related products.  During the Class Period, shares of Avon common stock traded in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "AVP."

7.      Defendant Sherilyn S. McCoy ("McCoy") was the Chief Executive Officer and a director of Avon throughout the Class Period.

8.      Defendant James S. Wilson ("Wilson") was the Chief Financial Officer ("CFO") of Avon from January 2017 through the end of the Class Period.

9.      Defendant James S. Scully ("Scully") was the Chief Operating Officer of Avon throughout the Class Period and the CFO of Avon from the start of the Class Period through December 2016.

10.      The defendants referenced above in ¶¶7-9 are collectively referred to herein as the "Individual Defendants."  The Individual Defendants made, or caused to be made, false statements that caused the price of Avon common stock to be artificially inflated during the Class Period.

## BACKGROUND

11.      Defendant Avon is a global manufacturer and marketer of beauty and related products.  Avon's reportable segments are based on geographic operations in four regions: Europe,

Middle East & Africa; South Latin America; North Latin America; and Asia Pacific.  During 2016, Avon had sales operations in 57 countries and territories.  Brazil is Avon's largest market, measured by revenue and number of sales representatives.  In 2016, Brazil revenue was $1.2 billion, approximately 21% of Avon's total revenues.  No other country accounts for more than 10% of Avon's total revenues.

12.    Unlike most of its competitors, which sell their products through third-party retail establishments (*e.g.*, drug stores and department stores), Avon's business is conducted primarily in one channel, direct selling to Avon representatives.  Avon representatives then resell Avon products to end-user customers.  Avon representatives are independent contractors and not Avon employees. As of December 31, 2016, Avon had approximately 6 million active representatives.

13.    In addition to revenue, operating profit and operating margin, Avon considers "Change in Representatives" (*i.e.,* representative growth) a key performance metric.  Likewise, growth in active representatives  and revenue growth are two primary components of Avon's senior executive compensation plan.

14.    Avon representatives purchase products directly from Avon.  Representatives are generally precluded from submitting  a new order for Avon products until the accounts receivable balance past due for prior orders is paid.  Avon represented to investors that it records an estimate of an allowance for doubtful accounts on receivable balances based on an analysis of historical data and current circumstances.  Avon reviews the allowance for doubtful accounts for adequacy, at a minimum, on a quarterly basis.  In the five years preceding the Class Period, Avon's annual bad debt expense remained constant at approximately 2.5% of sales.

**DEFENDANTS' SCHEME AND FRAUDULENT COURSE OF CONDUCT**

15.    In order to inflate its reported revenue and representative  growth metric during the Class Period, Avon engaged in an undisclosed  scheme whereby it significantly loosened its credit

- 3 -

terms in order to recruit new representatives in Brazil, its largest market.  Avon did not disclose the changes to its credit terms in Brazil.  Avon also failed to increase its allowance for doubtful accounts to account for the changes to its credit terms in Brazil.

### DEFENDANTS' FALSE AND MISLEADING STATEMENTS AND MARKET MANIPULATION DURING THE CLASS PERIOD

16.     The Class Period begins on August 2, 2016.  On that date, Avon issued a press release announcing its second quarter 2016 results and held a conference call for analysts, media representatives and investors.  Following the recent undisclosed changes Avon had made to its credit terms to recruit new representatives and boost revenue in Brazil, Avon reported  that "Brazil[] Revenue was up 2% in local currency, slightly above our expectations."  Avon also reported an increase in new  representatives in Brazil,  citing "strong and consistent recruiting programs and onboarding of new representatives."  Avon did not disclose that it had significantly loosened its credit terms in Brazil to recruit new representatives.  In fact, Avon told investors the exact opposite, with defendant McCoy assuring investors that the Company had been cautious in adding new representatives:

> And in light of the economic environment [in Brazil], we continue taking a balanced risk-based approach to bring in and on board new representatives.

17.     Avon also misled investors by failing to increase its allowance for bad debts to account for the changes it had made to its credit terms.

18.     As a result of Avon's announcement, the price of Avon stock spiked over 14% to close at $4.76 per share on August 2, 2016, on volume of over 21 million shares.  On the following day, August 3, 2016,  the price of Avon stock increased another 7% to close at $5.08 per share.

19.     On November 3, 2016, Avon issued a press release announcing its third quarter 2016 results and held a conference call for analysts, media representatives and investors.  On the call, defendant McCoy represented the following:

- 4 -

Let's start with Brazil.  Brazil delivered a strong quarter, coming in above our expectations, with local currency revenue growth of 6%.  This was driven by growth in both active representatives and average order and included an estimated three point negative impact from MVA taxes.[1]

20.    Defendant McCoy also touted Avon's successful recruitment of new representatives in Brazil without mentioning that Avon had significantly loosened its credit terms in Brazil to recruit new representatives:

We are pleased that Brazil grew both active representatives and ending representatives through a combination of a very successful recruiting program and initiatives to build activity.

21.    On November 3, 2016, Avon also filed its Form 10-Q for the quarterly period ended September 30, 2016.  In its Form 10-Q, Avon disclosed that its operating expenses were higher due to "an increase of 30 basis points from higher bad debt expense, primarily in Brazil," and that margins in its South Latin America segment were negatively impacted by "higher bad debt expense" in Brazil.  However, Avon falsely stated that the increase in bad debt was "primarily due to the macroeconomic environment in Brazil" rather than the undisclosed changes Avon had made to its credit terms to recruit new representatives and boost revenue in Brazil.  In addition, Avon again failed to increase its allowance for bad debts to account for the changes it had made to its credit terms.

22.    Following the release of its third quarter 2016 results, the price of Avon stock dropped $0.17 per share to close at $6.24 per share on November 3, 2016, a decline of nearly 3%. On the following day, November 4, 2016, the price of Avon stock dropped again, falling 5% to close at $5.94 per share.

23.    On February 16, 2017, Avon issued a press release announcing its fourth quarter 2016 results and held a conference call for analysts, media representatives and investors.  The Company

---

[1]    Brazil revenue growth would have been 9% without the negative impact of the MVA tax issue.

reported a net loss of $0.03 per share and a 2% decline in active representatives.  The Company also disclosed a $35 million bad debt charge.  On the call, defendant McCoy stated:

> Let me begin by saying that I am disappointed with our fourth-quarter results.
>
> *          *          *
>
> Now turning to our fourth-quarter performance, which as I said was disappointing, considering the positive trend in the first three quarters of the year. Revenue fell short of expectations, and while we made significant progress taking out cost, this was dampened by an unexpected increase in bad debt of roughly 210 basis points or approximately $35 million, primarily within our Brazilian business.

24.     Defendant McCoy acknowledged that the bad debt charge was  the direct result of the previously undisclosed changes to credit terms to recruit new representatives in Brazil:

> We saw a higher than expected level of bad debt in the second half of the year. There are two primary reasons for this.  One, the inability of some consumers to pay, and two, in order to assist with new Representative recruiting, the team adjusted credit terms.

25.     Defendant Wilson acknowledged that Avon's decision to relax credit terms in Brazil during the second half of 2016 was "a very specific action for a limited period of time in one market."

26.     In addition to the bad debt charge, Avon warned that as credit terms were tightened, new representative growth in Brazil would suffer going forward.  Specifically, defendant McCoy stated:

> Moving forward, we are taking actions to adjust both of these factors by first enhancing our collection processes and second, tightening our recruiting terms.  We expect that this may potentially result in a moderated new Representative growth.

27.     As a result of this news, the price of Avon stock dropped $1.09 per share to close at $4.77 per share on February 17, 2017, a decline of nearly 19%.  On the following day, February 18, 2017, the price of Avon stock dropped again, falling over 3% to close at $4.61 per share.

- 6 -

28.     However, defendants' positive statements that the Brazil bad debt had been fully accounted for in the fourth quarter kept the stock from dropping further.  For example, defendants represented the following on the conference call:

> [Analyst:]  [T]he bad debt stuff in Brazil, is that all cleaned up, or do you think there's going to be more of a tail going into next year? . . .
>
>           . . . [Defendant Wilson:]  In the bad debt, obviously, our business does have bad debt expense on an ongoing basis, but the specific thing we believe is fully cleared up and booked in the 2016 results, so we would not be expecting a flow over of that into 2017.

29.     On May 4, 2017, Avon issued a press release announcing its first quarter 2017 results and held a conference call for analysts, media representatives and investors.  The Company reported a net loss of $0.10 per share and a 3% decline in active representatives.  On the call, Avon disclosed that despite its earlier assurances that the Brazil bad debt problem had been fully accounted for in 2016, the Company was recording another significant charge for bad debt in the first quarter of 2017.  The bad debt charge was again tied directly to Avon's decision to loosen its credit terms to recruit new representatives in Brazil during the second half of 2016.  Specifically, defendant Wilson acknowledged:

> In addition, at the end of last year, we saw a rise from our normal level of bad debt, which was typically between 2% to 3% of revenue, driven by relaxation of credit terms as part of our recruitment crusades, coupled with the general economic environment.  On the quarter 4 call, we said that bad issues were behind us, however, while we are seeing some improvement based on the actions we took to remediate the position, including tightening credit terms, it's taking longer than expected to return to normal levels.

30.     As a result of this news, the price of Avon stock dropped $1.03 per share to close at $3.62 per share on May 4, 2017, a decline of 22%.

31.     However, defendants again made positive statements about the limited impact the remedial actions (*i.e.*, stricter credit terms applied to recruiting new representatives) in Brazil would

have on future revenues.  For example, defendant Wilson represented the following on the conference call:

> We anticipate that an elevated level of bad debt may continue in quarter 2 and start to recover later in the year.  Part of the remedial actions will result in a moderation of recruitment, but we do not expect to see this materially impacting on revenue generation.

32.     On August 3, 2017, Avon issued a press release announcing its second quarter 2017 financial results and held a conference call for analysts, media representatives and investors.  The Company reported a net loss of $0.12 per share and a 3% decline in active representatives.  The Company also reported that Brazil revenue was "down 2% in constant dollars, primarily driven by a decrease in Active Representatives."  On the call, defendant Wilson acknowledged that, despite Avon's earlier representations, the remedial actions in Brazil (*i.e.*, stricter credit terms applied to recruiting new representatives) were negatively impacting active representatives and revenue in Brazil:

> [T]he remedial actions resulted in moderation of recruitment that impacted Active Representative growth in the quarter.  Although we do expect to see improvement in the issues that impacted Brazil's performance this quarter, we expect the second half revenue to remain under pressure.

33.     As a result of this news, the price of Avon stock dropped $0.36 per share to close at $3.00 per share on August 3, 2017, a decline of nearly 11%.  On the following day, August 4, 2017, the price of Avon stock dropped again, falling over 4% to close at $2.87 per share.  This closing price on August 4, 2017 was 40% below the closing price of the Company's shares on August 2, 2016, the start of the Class Period, and nearly 60% below the stock's Class Period high.

## NO SAFE HARBOR

34.     Avon's "Safe Harbor" warnings accompanying its reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.  Because most of the false and misleading statements related to existing facts or conditions,

the Safe Harbor has no applicability.  To the extent that known trends should have been included in the Company's financial reports prepared in accordance with Generally Accepted Accounting Principles, they are excluded from the protection of the statutory Safe Harbor.  15 U.S.C. §78u-5(b)(2)(A).

35.     The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer and/or director of Avon who knew that the FLS was false.  In addition, the FLS were contradicted by existing, undisclosed material facts that were required to be disclosed so that the FLS would not be misleading.  Finally, most of the purported "Safe Harbor" warnings were themselves misleading because they warned of "risks" that had already materialized or failed to provide any meaningful disclosures of the relevant risks.

## ADDITIONAL SCIENTER ALLEGATIONS

36.     As alleged herein, defendants acted with scienter in that they knew or recklessly disregarded that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly or recklessly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents and actions intended to manipulate the market price of Avon common stock as primary violations of the federal securities laws.  Defendants, by virtue of their receipt of information reflecting the true facts regarding Avon, their control over, and/or receipt or modification of Avon's allegedly materially misleading misstatements and/or their associations with the Company that made them privy to confidential proprietary information concerning Avon, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

37.     At all relevant times, the market for Avon common stock was an efficient market for the following reasons, among others:

(a)     Avon stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     According to the Company's Form 10-Q filed on November 2, 2018, the Company had approximately 442 million shares outstanding as of the date of the filing, demonstrating a very active and broad market for Avon common stock;

(c)     Avon filed periodic public reports with the SEC;

(d)     Avon regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on the national circuits of major newswire services, the Internet and other wide-ranging public disclosures; and

(e)     Unexpected material news about Avon was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

38.     As a result of the foregoing, the market for Avon common stock promptly digested current information regarding Avon from publicly available sources and reflected such information in Avon's stock price.  Under these circumstances, all purchasers of Avon common stock during the Class Period suffered similar injury through their purchase of Avon common stock at artificially inflated prices, and a presumption of reliance applies.

## LOSS CAUSATION

39.     During the Class Period, as detailed herein, defendants made false and misleading statements and/or omitted material information concerning Avon's business and prospects and engaged in a scheme to deceive the market and manipulate the market price of Avon common stock.

By artificially inflating and manipulating the price of Avon stock, defendants deceived plaintiff and the Class (as defined below) and caused them losses when the truth was revealed.  When defendants' prior misrepresentations and fraudulent conduct became apparent to the market, this caused Avon's stock price to fall precipitously as the prior artificial inflation came out of the stock price.  As a result of their purchases of Avon stock during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

40.     This is a class action on behalf of all purchasers of Avon common stock during the Class Period (the "Class").  Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

41.     Common questions of law and fact predominate and include: (a) whether defendants violated the Exchange Act; (b) whether defendants omitted and/or misrepresented material facts; (c) whether defendants knew or recklessly disregarded that their statements were false; (d) whether defendants manipulated the market price of Avon common stock; (e) whether the price of Avon common stock was artificially inflated during the Class Period; and (f) the extent of and appropriate measure of damages.

42.     Plaintiff's claims are typical of those of the Class.  Prosecution of individual actions would create a risk of inconsistent adjudications.  Plaintiff will adequately protect the interests of the Class.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### For Violation of §10(b) of the Exchange Act
### and Rule 10b-5 Against All Defendants

43.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

44.     During the Class Period, defendants carried out a plan that was intended to, and did: (a) deceive the investing public, including plaintiff and the Class; and (b) artificially manipulate the price of Avon common stock.

45.     Defendants: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (c) engaged in acts, practices and a course of conduct that operated as a fraud and deceit upon purchasers of Avon common stock in violation of §10(b) of the Exchange Act and Rule 10b-5.  Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.

46.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal the adverse material information as specified herein.

47.     Defendants' liability arises from the fact that they developed and engaged in a scheme to manipulate the price of Avon common stock and were aware of the dissemination of information to the investing public that they knew or recklessly disregarded was materially false and misleading.

48.     Defendants had actual knowledge of the misrepresentations, omissions and deceptive conduct alleged herein, or acted with reckless disregard for the truth.  Defendants' acts were done for the purpose and effect of concealing the scheme alleged herein from the investing public, and to artificially manipulate the market price of Avon common stock.

49.     By virtue of the foregoing, defendants have violated §10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

50.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and members of the Class suffered damages in connection with their respective purchases and sales of Avon common stock during the Class Period.

## COUNT II

### For Violation of §20(a) of the Exchange Act
### Against All Defendants

51.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

52.     The Individual Defendants had control over Avon and made the materially false and misleading statements and omissions on behalf of Avon within the meaning of §20(a) of the Exchange Act as alleged herein.   By virtue of their executive positions, and their culpable participation, as alleged above, the Individual Defendants had the power to influence and control and did, directly or indirectly, influence and control the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends were false and misleading.   The Individual Defendants were provided with or had unlimited access to the Company's internal reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause them to be corrected.

53.     In particular, the Individual Defendants had direct involvement in and responsibility over the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein.   Avon, in turn, controlled the Individual Defendants and all of its employees.

54.     By reason of such wrongful conduct, defendants are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  February 14, 2019                    ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                             SAMUEL H. RUDMAN


                                             */s/ Samuel H. Rudman*
                                             SAMUEL H. RUDMAN

- 14 -

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

JOHNSON FISTEL, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY  10016
Telephone:  212/802-1486
212/602-1592 (fax)
scotth@johnsonfistel.com

Attorneys for Plaintiff

I:\Admin\CptDraft\Securities\Cpt Avon.docx

DocuSign Envelope ID: 20B3564A-EA16-4744-83EB-208E61195FEC

### CERTIFICATION OF PLAINTIFF PURSUANT
### TO THE FEDERAL SECURITIES LAWS

I, Manzoor Bevinal, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      I have reviewed the complaint with my counsel and authorize its filing.

2.      I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.      I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 11/2/16 | 1500 | 6.4299 |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| 11/7/16 | 1500 | 6.17 |

5.      I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.      I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of February 2019.

DocuSigned by:

23DA38FF024E4C0...

Manzoor Bevinal