UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

IN RE AVON SECURITIES LITIGATION

No. 19-cv-01420-CM

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
CORRECTED CONSOLIDATED AMENDED COMPLAINT**

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendants Avon Products, Inc.,
Sherilyn S. McCoy, James S. Wilson and James
S. Scully*

September 13, 2019

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT...................................................................................................................................2

I.    Failure To Plead Scienter Is Fatal to All of Plaintiffs' Claims. .............................................2

    A.    Even Taken As True, The CW Allegations Do Not Establish that Defendants Had Access to Contrary Information *at the Time* They Made Their Statements. .................2

    B.    The Core Operations Doctrine Cannot Replace the Pleading Deficiencies..................5

    C.    The February 16, 2017 Statement Is Not Evidence of Scienter....................................6

    D.    The Allegations of Post-Class Period Statements Cannot Establish Scienter. ..............7

    E.    Ms. McCoy's Resignation Does Not Evidence Scienter. .............................................7

II.   Plaintiffs Do Not Adequately Plead Falsity..........................................................................8

CONCLUSION................................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
381 F. Supp. 2d 192 (S.D.N.Y. 2004)......................................................................................3

*In re Aratana Therapeutics, Inc. Sec. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018).....................................................................................10

*ECA Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
553 F. 3d 187 (2d Cir. 2009).....................................................................................................8

*Gagnon v. Alkermes PLC*,
368 F. Supp. 3d 750 (S.D.N.Y. 2019)....................................................................................2, 4

*Galestan v. OneMain Holdings, Inc.*,
348 F. Supp. 3d 282 (S.D.N.Y. 2018).....................................................................................10

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011).......................................................................................5

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12 Civ. 8557(CM), 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013).......................................6

*Lipow v. Net1 UEPS Techs. Inc.*,
131 F. Supp. 3d 144 (S.D.N.Y. 2015).......................................................................................6

*Lorenzo v. SEC*,
139 S. Ct. 1094 (2019)...............................................................................................................2

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd* 604 F. App'x 62 (2d Cir. 2015)........................8, 9

*Meyer v. JinkoSolar Holdings Co., Ltd.*,
761 F.3d 245 (2d Cir. 2014)......................................................................................................9

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
455 F. App'x 10 (2d Cir. 2011) .................................................................................................6

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000).......................................................................................................7

*Okla. Firefighters Pension and Ret. Sys. v. Lexmark Int'l, Inc.*,
367 F. Supp. 3d 16 (S.D.N.Y. 2019).......................................................................................3, 8

*In re OSG Sec. Litig.*,
  12 F. Supp. 3d 622 (S.D.N.Y. 2014)........................................................................................8

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
  268 F. Supp. 3d 526 (S.D.N.Y. 2017)......................................................................................8

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 16 Civ. 6728 (CM), 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) .................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..................................................................................................................1

*In re Tempur Sealy Int'l, Inc. Sec. Litig.*,
  No. 17-cv-2169 (LAK), 2019 WL 1368787 (S.D.N.Y. Mar. 26, 2019)...................................9

*Tyler v. Liz Claiborne, Inc.*,
  814 F. Supp. 2d 323 (S.D.N.Y. 2011).......................................................................................6

*In re Vivendi Universal, S.A. Sec. Litig.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003).....................................................................................10

*Wilbush v. Ambac Fin. Grp., Inc.*,
  271 F. Supp. 3d 472 (S.D.N.Y. 2018)...................................................................................5, 9

## PRELIMINARY STATEMENT

Plaintiffs' Opposition is missing the same thing as their Complaint: any plausible, cogent theory as to why Defendants would defraud investors for 22 months only to disclose—on their own initiative—the very scheme they purportedly designed. (*See* ECF Nos. 1, 25, 32 and 40.)[1]  As Plaintiffs tell it, Defendants hired "unsophisticated women" to serve as sales representatives, failed to train them, burdened Avon with avoidable bad debt and then, one day, without any gain for themselves, disclosed it all to the market.  Such a scheme makes no sense and is not "cogent and compelling, thus strong in light of other explanations." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

Plaintiffs concede that they cannot show actual intent, but instead rely on allegations of "conscious misbehavior or recklessness" in failing to disclose sooner that Avon Brazil's bad debt levels would spike.  But even under that theory, Plaintiffs fail to show that Defendants knew or had access to information suggesting that bad debt levels were increasing at abnormal levels *at the time* they made the challenged statements.  At most, Plaintiffs have pleaded non-actionable errors in business judgment made during the height of Brazil's economic crisis—not fraudulent scienter.  Plaintiffs' falsity allegations likewise fail because, even taken as true, Plaintiffs' allegations do not establish that Defendants' statements were false based on the information available to them at the time.  Finally, although the Complaint baldly asserts GAAP allegations, Plaintiffs make no make any attempt to connect those allegations to either scienter or falsity (nor could they).  The Court should, therefore, disregard those allegations.  For all of these reasons, as well as those set forth in the Motion, the Complaint should be dismissed in full and with prejudice.

---

[1] Citations to prior filings include:  the Complaint, ECF No. 32 – (¶ __); Defendants' Motion to Dismiss Brief, ECF No. 34 – (Mot. at __); Plaintiffs' Opposition, ECF No. 40 – (Opp. at __).

**ARGUMENT**

**I.     Failure To Plead Scienter Is Fatal to All of Plaintiffs' Claims.**

Plaintiffs argue that scienter may be inferred from five pieces of evidence:
(i) confidential witnesses ("CWs") who alleged certain meetings and reports (Opp. at 12-14);
(ii) the "core operations" doctrine (*id.* at 15-17); (iii) the February 16, 2017 disclosure (*id.*
at 18-19); (iv) a single post-Class Period remark by Avon's current CEO, Jan Zijderveld (*id.*
at 18); and (v) Ms. McCoy's departure as Avon's CEO (*id.* at 17-18).  But taken individually or
together, none of these allegations creates an inference that any defendant—much less *each*
defendant—"knew facts or had access to information suggesting that their public statements
were not accurate."  *Gagnon v. Alkermes PLC,* 368 F. Supp. 3d 750, 774 (S.D.N.Y. 2019).[2]

   A.     Even Taken As True, The CW Allegations Do Not Establish that Defendants Had
          Access to Contrary Information *at the Time* They Made Their Statements.

Like the Complaint, Plaintiffs' Opposition relies heavily on "interviews with
seven former employees," which they claim demonstrate "that in 2015 the Company made a
uniform, undisclosed decision to loosen credit standards for Representatives in Brazil."  (Opp.
at 2, 4-9, 12-15.)  But merely repeating those allegations does not make them adequate.  Rather,
"[t]o determine whether a plaintiff has 'specifically alleged defendants' knowledge of facts or
access to information contradicting their public statements,' 'Second Circuit cases uniformly rely
on allegations that [1] *specific* contradictory information was available to the defendants [2] *at
the same time* they made their misleading statements.'"  *Gagnon*, 368 F. Supp. 3d at 774 (citation

---

[2] In an effort to create a "gotcha" moment, Plaintiffs assert that Defendants moved to dismiss
only a subset of Plaintiffs' claims.  (Opp. at 11.)  That is wrong, and belied by the motion to
dismiss itself.  (Mot. at 25.)  Failure to plead either scienter or falsity is independently fatal to all
of Plaintiffs' Section 10(b) and Rule 10b-5 claims.  *See Lorenzo v. SEC*, 139 S. Ct. 1094, 1104
(2019) (Section 10(b) *and* Rule 10b-5 require "disseminat[ing] false statements with intent to
defraud").

omitted); *see also Okla. Firefighters Pension and Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 37 (S.D.N.Y. 2019) (same).  Here, the CW allegations do neither.

*First,* the CWs do not identify *any specific* contradictory information that was available to any defendant.  While Plaintiffs assert that CW-1, CW-3, CW-4, CW-6 and CW-7 show that Defendants had information that contradicted their public statements (Opp. at 12-14), they actually do no such thing.  CW-1 alleges only that the Individual Defendants "convened monthly performance meetings" and "were the decision-makers 'in charge' of charting the direction of Avon's Brazilian business . . . ."  (Opp. at 12; ¶¶ 60, 107.)  CW-1 says nothing specific—not at which meeting any delinquency spikes were realized, not what information alerted any Individual Defendant to that issue, and not whether any Individual Defendant ever discussed any rise in Avon Brazil's bad debt levels.[3]  Indeed, CW-1 actually revised his/her allegations *to remove any specificity* alleged in the prior amended complaint, forcing Plaintiffs to file yet another amendment the day before Defendants' Motion.[4]  Importantly, CW-1's revised allegations no longer state that *any* senior executives ever reviewed or discussed the delinquency reports that underlie Plaintiffs' scienter allegations.  CW-3 is likewise vague, asserting only that delinquency data were available on an internal system, and that a "Daily" report with those

---

[3] This is in stark contrast to *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.* (cited in Opp. at 12-13), where the court found scienter adequately pleaded because the individual defendant was shown to be *at the meetings* at which the problems at issue were discussed, *and then* went out and made the public statements at issue.  381 F. Supp. 2d 192, 221-22 (S.D.N.Y. 2004).
[4] *Compare* ECF No. 25, at ¶ 107 *with* ECF No. 32, at ¶ 107 ("~~According to CW-1, the bad debt situation was discussed at regional Company performance meetings held by video conference and attended by top Avon executives including Defendants McCoy, Scully, and Legher.~~  CW-1 confirmed that there were regional monthly performance meetings held between the Company's executive management during which they would review each regional market~~.  CW-1 confirmed that the topics discussed in those meetings—which included Brazil's bad debt and loosened credit standards—would be relayed to CW-1 by CW-1's boss, the Vice President of Global FP&A, who attended the meetings~~ . . . .").

3

figures were circulated to Defendant Legher.  (Opp. at 14; ¶¶ 111-12.)  There is no allegation that Mr. Legher knew this information *at the time* he made his one and only alleged misstatement on January 21, 2016.  Similarly, nowhere in the Complaint do the CWs allege that any Individual Defendant was aware that training of new Representatives had ceased in Brazil; instead, the only allegation is that such information was known by local managers in Brazil—not enough to plead scienter for any named defendant.  (*See* Opp. at 14, 20-21; ¶¶ 122-26; *see also* Mot. at 23-24.)

*Second,* the CWs do not assert that even this vague information was available to each defendant *at the same time* of the alleged misstatements.  *Gagnon,* 368 F. Supp. 3d at 774. Although Plaintiffs allege a Class Period of January 21, 2016 to November 1, 2017 (Opp. at 1), they make no effort to match the information CWs claim was available with the statements alleged to be false within that class period.  For example, Plaintiffs point to CW-4's assertion that the credit policy change was communicated via video conference (¶ 70) and separately that Mr. Legher was present "in one meeting in 2016" (¶ 108)—but there is no connection between the policy change and any statement by Mr. Legher or Avon.  (Opp. at 13.)  Indeed, it is not even apparent when in the twelve months of 2016 Mr. Legher was alleged to have known such information—and no allegation that Ms. McCoy, Mr. Scully or Mr. Wilson knew such information at all.  Likewise, CW-6 alleges there were quarterly video conference meetings where delinquencies were discussed, and that Mr. Legher participated in some of these conferences.  (Opp. at 13; ¶ 109.)  Again—there is no allegation of *when* such information was known relative to any alleged misstatement.  And, similarly, Plaintiffs cite CW-7, who "advised that monthly forecasts of current and projected bad debt, sales and inventory were sent to Avon's headquarters and posted on Avon's system, Hyperion, in the middle of each month," and that Mr. Legher "saw reports on bad debt 'at least' once a month."  (Opp. at 8-9, 13-14; ¶¶ 112, 114.)

4

But Plaintiffs ignore that CW-7 also alleged that the bad debt "'spiked' or 'burst' *at the end of 2016*." (¶ 88 (emphasis added).) This cannot support scienter since, upon learning of this information, Mr. Wilson promptly disclosed it on February 16, 2017, and explained the timing:

> As we went through the year, there was some closing of the information there because of the bank strike in Brazil in September. So as we came out of quarter 3, some of that information was not as obvious because I think there was approximately around 1 month bank strike that meant it was difficult for the representatives to post cash. So I think that, that came as the slightly unexpected issue in quarter 4, and we expect that to clean up as we go forward.

(Mot. at 16.) The more—and only—plausible inference to be drawn from CW-7s allegations is that Defendants realized the "spike" in Q4 2016 and promptly disclosed it in Q1 2017.

Thus, none of the CWs can establish that any defendant had knowledge of facts or access to information contradicting their public statements—a result that is not surprising given that *none* of CWs had any direct contact with any Individual Defendant, and therefore lack any personal knowledge to establish scienter. Courts in this district have rejected CW allegations on this ground alone, and the Court should do so here. *See, e.g.*, *Wilbush v. Ambac Fin. Grp., Inc.*, 271 F. Supp. 3d 472, 473, 497 (S.D.N.Y. 2018) (discounting CWs used to allege scienter where they did not have direct contact with individual defendants); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 595 (S.D.N.Y. 2011) (discounting allegations made by the CW employed by the defendant because there was no indication of "what kind of access CW4 had to [the individual defendant], in what form and context [the individual defendant] made his alleged statement, or how CW4 was privy to that statement").

B.     The Core Operations Doctrine Cannot Replace the Pleading Deficiencies.

Plaintiffs next rely on the core operations doctrine to impute knowledge or recklessness on the Individual Defendants regarding Representative training and debt delinquency rates. (Opp. at 16.) The "core operations" doctrine "standing alone, is insufficient

5

to support strong circumstantial evidence of scienter" but rather "bolsters the strength of the inference of scienter when plaintiff has already adequately alleged facts indicating that defendants might have known their statements were false." *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 343 (S.D.N.Y. 2011); *Lipow v. Net1 UEPS Techs. Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015) (citing *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 n.3 (2d Cir. 2011)).  Because, as discussed above, Plaintiffs have failed to sufficiently allege that any defendant acted with scienter, the core operations doctrine cannot help them.

Plaintiffs' reliance on *In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013), is also misplaced.  In *Hi-Crush*, the plaintiffs established scienter by showing that Hi-Crush failed to disclose that one of its "four key customers," Baker Hughes, "flat out rejected the agreement [between the parties], which meant that Hi-Crush was in danger of losing 18.2% of its revenue." *Id.* at *2, 23.  Thus, the court found that defendants "acted recklessly by publicly touting the company's relationship with Baker Hughes in Hi-Crush's investor presentation with knowledge that this key customer had repudiated its contract." *Id.* at *26.  Nothing of the sort is alleged here.  Far from the failure to disclose a specific, known event (the repudiation of a large contract) as in *Hi-Crush*, Plaintiffs here rely on local segment data and operations that Plaintiffs' seek to impute based solely on Defendants' position.  And nowhere do the Plaintiffs allege that Avon stood to lose *all* of the revenue in Avon Brazil, as was the case for the missing contract in *Hi-Crush*.  The Court should reject Plaintiffs' "core operations" theory.

C.    The February 16, 2017 Statement Is Not Evidence of Scienter.

Plaintiffs contend that Mr. Wilson's February 16, 2017 disclosure of rising debt issues and its revised Representative credit terms "provide strong evidence of scienter with respect to all of Defendants' false and misleading statements between February 16, 2017 and the

6

end of the Class Period." (Opp. at 18.) But for each subsequent earnings call transcript to which Plaintiffs refer—and quote—in the Complaint, Avon *reiterated* the same disclosure of its prior adjustment of credit terms for Brazilian Representative recruitment during 2016. (¶¶ 199-200, 203, 213, 223.) Plaintiffs make no effort to explain how this disclosure—on the very subject-matter at issue—was somehow insufficient, nor do they explain how *disclosing* this information (the result Plaintiffs themselves claim to have wanted) shows an intent to defraud. Indeed, the Opposition concedes that Defendants offered this information as "admissions" of what they had learned *the prior quarter*. (Opp. at 18.) A prompt disclosure can hardly be evidence of scienter.

D. The Allegations of Post-Class Period Statements Cannot Establish Scienter.

Unable to put forth contemporaneous allegations of scienter, Plaintiffs next try to infer scienter based on a post-Class Period statement by Avon's new CEO, Jan Zijderveld. (Opp. at 18.) Notably, Mr. Zijderveld is not a defendant and nowhere in his statements does he discuss or profess to be knowledgeable about the state of mind of any Individual Defendant—indeed, he was not even at the Company during the putative Class Period. Not surprisingly, the past-tense statement Plaintiffs point to—"we basically stopped all training"—says nothing about what was known by any defendant *at the time* of the prior statements. As such, it does not (and cannot) establish anyone's state of mind at the time any alleged misstatement was made. It is for this very reason that the Second Circuit has "refused to allow plaintiffs to proceed with allegations of 'fraud by hindsight.'" *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (citation omitted).

E. Ms. McCoy's Resignation Does Not Evidence Scienter.

Plaintiffs continue to mischaracterize Ms. McCoy's departure as an "ouster" that somehow supports her scienter. That is wrong—and unsupported by the materials Plaintiffs themselves cite. As set forth in Defendants' Motion, Ms. McCoy's departure was in no way

7

sudden or suspicious.  (Mot. 17-18.)  Moreover, unlike the executives in the two cases to which

Plaintiffs cite,[5] Ms. McCoy departed nearly eight months after it was announced she would step

down, during which time she remained CEO until Mr. Zijderveld was appointed and then stayed

on as an advisor for another month.  These facts do not support any inference of "ouster" or

wrongdoing; it is precisely the opposite.  (Mot. at 17-18.).[6]

## II.       Plaintiffs Do Not Adequately Plead Falsity.

Plaintiffs make two points with respect to falsity.  *First*, Plaintiffs argue that they

"need only offer sufficient evidence of a 'statement or omission that a reasonable investor would

have considered significant in making investment decisions.'"  (Opp. at 23 (quoting *Lexmark*,

367 F. Supp. 3d at 30-31).)  That is wrong:  that standard applies to pleading *materiality*, not

falsity, which requires that a statement be false based on information available *at the time of the*

*statement.*  (Mot. at 20.)  Plaintiffs further confuse the issue by attempting to distinguish *In re*

*Lululemon Securities Litigation*, 14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd* 604 F. App'x 62 (2d

Cir. 2015), on scienter grounds.[7]  (Opp. at 23.)  But Defendants relied on *Lululemon* for its

---

[5] *Cf. Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 542 (S.D.N.Y. 2017) (defendant Wesley departed *within a month* of disclosed accounting issues; defendants Abraham and Matta departed from board positions *within a month* of further disclosed internal control problems); *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 627, 632-33 (S.D.N.Y. 2014) (defendant Arntzen resigned *the same day* the IRS increased its owed tax demand from $48 million to $463 million; defendant Itkin departed for pretextual "reduction in force").

[6] Although Plaintiffs conclusorily allege GAAP violations, they correctly decline to base any argument on them.  Indeed, nowhere do Plaintiffs assert that these allegations establish either scienter or falsity.  Nor could they, as this Circuit is clear that "[a]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim." *ECA Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F. 3d 187, 200 (2d Cir. 2009) (internal quotation marks omitted).  Those allegations (¶¶ 242-68; Opp. at 9-10) should be disregarded.

[7] *In re Lululemon* does, indeed, underscore the absence of adequate scienter allegations here.  In *Lululemon*, "no witnesses . . . provided meaningful evidence of knowledge or recklessness" and "no CW attested that the defendants knew about this issue before it was disclosed."  (Opp. at 23.) The same is true here:  Plaintiffs' CWs claim that the "issue had been 'acknowledged

holding on falsity: a "statement believed to be true when made, but later shown to be false, is insufficient. In such a circumstance, there is a *lack of actionable falsity*." *Id.* at 571 (citation omitted) (emphasis added).[8] As detailed above, Plaintiffs fail to plead that any Defendant had contemporaneously available information indicating that any public statement was untrue. And as explained in the Motion, the statements at issue are not actionably false. (*See* Mot. at 21-24.)

*Second*, Plaintiffs wrongly rely on several cases where, unlike here, defendants *knew* information that contradicted their public statements. (Opp. at 20-25.) For example, in claiming that Defendants had a duty to disclose earlier the Company's Representatives' credit requirements, Plaintiffs rely on *Meyer v. JinkoSolar Holdings Co., Ltd.*, 761 F.3d 245 (2d Cir. 2014). But in *JinkoSolar*, the Second Circuit found a duty to disclose because the defendants' public statements detailing with specificity their efforts to comply with environmental regulations were undermined by known and undisclosed failures of those efforts. *See id.* at 247-49. Here, Plaintiffs fail to allege that Defendants *knew* that there were burgeoning bad debt issues for most of the Class Period (*see supra* Section I). As such, there was no disclosure obligation in the instant case because the law "does not mandate disclosure of all facts that 'would be interesting' in light of and in relation to the disclosed fact. Nor does it automatically render statements of fact on a certain topic misleading due to the omission of another fact concerning the same topic." *In re Tempur Sealy Int'l, Inc. Sec. Litig.*, 2019 WL 1368787, at *12 (S.D.N.Y. Mar. 26, 2019).

---

internally'" (Opp. at 23; *e.g.*, ¶¶ 112-113) but fail to allege that any Individual Defendant was aware of the issues during any public statements prior to their disclosure on February 16, 2017.
[8] Plaintiffs likewise confuse their elements in trying to distinguish *Wilbush* because (according to Plaintiffs) the district court did not find actionable falsity. (Opp. at 15.) But the district court in *Wilbush assumed falsity "arguendo,"* dismissing the case instead because it rejected plaintiffs' scienter allegations. *Wilbush*, 271 F. Supp. 3d at 495. *Wilbush* is instructive on scienter, not falsity. (*See infra* at 5; Mot. at 14-16.)

Plaintiffs' reliance on *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018), is likewise misplaced.  In *Signet Jewelers*, this Court found a duty to disclose because defendants were "convey[ing] to the market with dogged insistence" the quality of their investment portfolio *while knowing* their representations were false.  *Id.* at *3-4, *11-12. Here, the statements Plaintiffs challenge do not "conve[y] to the market with dogged insistence" that all was well; rather, the statements reflected both positive *and* negative Representative headcount trends and optimistic hopes for the efficacy of Avon's Transformation Plan against the backdrop of Brazil's widely-reported macroeconomic crisis.  *Id.* at *12; (*see also* Mot. at 23). Finally, as stated above, Plaintiffs fail to sufficiently allege that Defendants knew or had access to information about the bad debt issues, which were promptly disclosed when learned. [9]

**CONCLUSION**

For the foregoing reasons, Defendants respectfully move that the Court dismiss the Complaint in whole and with prejudice.

---

[9] Plaintiffs' remaining arguments regarding statements about the bad debt issues are similarly misplaced.  (Opp. at 22-24.)  Plaintiffs admit that (i) Avon ordinarily had bad debt expenses on its books (¶ 186), and (ii) there were multi-month lag times for ongoing debt collection efforts (¶ 90).  Putting aside that they fail to plead that their examples of defaulting Representatives were even recruited under the adjusted credit terms (¶¶ 93-98), Plaintiffs do not allege how Defendants' projections about resolving Avon's bad debt arising from the adjusted credit terms were misleading based on the information available to Defendants at the time, nor do Plaintiffs allege that Defendants' beliefs as to those projections were not genuinely held as of that time. *See In re Aratana Therapeutics, Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 758 (S.D.N.Y. 2018); (Mot. at 24-25); *cf. Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 303 (S.D.N.Y. 2018) (opinion statements rejected because of *known* decreases in productivity and increased delinquencies).  And Defendants' cautionary language concerning its forward-looking statements was specific compared to the language cited in *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 183 (S.D.N.Y. 2003) (rejecting "actual results may differ" as boilerplate, insufficient cautionary language).  (*See* Mot. at 24-25 ("Avon's expectations could be affected by a 'recession . . . [in] Brazil'" or its "'ability to . . . effectively manage doubtful accounts'").) Finally, Plaintiffs do not meaningfully challenge Defendants' puffery arguments, and those statements should likewise be dismissed.  (Mot. at 25.)

Date:  September 13, 2019

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by

*/s/Karin A. DeMasi*

Karin A. DeMasi
Andrew D. Huynh

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
kdemasi@cravath.com
ahuynh@cravath.com

*Attorneys for Defendants Avon Products, Inc.,*
*Sherilyn S. McCoy, James S. Wilson and*
*James S. Scully*