# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Avon Products Inc. Securities Litigation | No. 19-cv-01420-CM<br><br>CLASS ACTION |

## MEMORANDUM OF LAW  IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT AS CLASS REPRESENTATIVES, <u>AND APPOINTMENT OF CLASS COUNSEL</u>

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky (EK-8989)
Gregory Mark Nespole (GN-6820)
Sebastiano Tornatore (ST-0304)
55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: ek@zlk.com
           gnespole@zlk.com
           stornatore@zlk.com

*Counsel for Lead Plaintiff, Additionally Named Plaintiff, and the Proposed Class*

**LABATON SUCHAROW LLP**
Carol C. Villegas (CV-7950)
Christine M. Fox (CF-2910)
140 Broadway
New York, New York 10005
Telephone: 212-907-0700
Facsimile: 212-818-0477
Email: cvillegas@labaton.com
           cfox@labaton.com

*Additional Counsel for Lead Plaintiff, Additionally Named Plaintiff, and the Proposed Class*

Dated: February 14, 2020

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

STATEMENT OF FACTS COMMON TO THE CLASS ............................................. 4

THE PROPOSED CLASS SATISFIES RULE 23 AND SHOULD BE CERTIFIED ................. 6

I.      The Proposed Class Satisfies Rule 23(a) ................................................. 7

        A.      The Class is So Numerous that Joinder is Impracticable ...................... 7

        B.      Questions of Law and Fact Are Common to the Class ......................... 8

        C.      Plaintiffs' Claims Are Typical of the Class' Claims ........................... 9

        D.      Plaintiffs Will Fairly and Adequately Protect the Class' Interests ....... 10

II.     The Proposed Class Satisfies the Requirements of Rule 23(b)(3) ................. 11

        A.      Common Factual and Legal Issues Predominate ................................. 11

                1.      Plaintiffs Are Entitled to the Fraud-on-the-Market Presumption of
                        Reliance .................................................................................... 13

                        a.      Avon's NYSE Listing is Strong Evidence of Market
                                Efficiency ..................................................................... 14

                        b.      The *Cammer* and *Krogman* Factors Support a Finding of
                                Market Efficiency .......................................................... 15

                        c.      Additional Factors and Analyses Support a Finding of
                                Market Efficiency .......................................................... 20

                2.      Reliance is Presumed for All Class Members Under *Affiliated Ute* ......... 21

                3.      Damages May Be Calculated on a Class-Wide Basis, Supporting a
                        Finding of Predominance ............................................................ 22

        B.      A Class Action is Superior to Other Methods of Adjudication ........................... 23

III.    The Court Should Appoint Levi Korsinsky as Class Counsel ........................................... 25

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591, 117 S. Ct. 2231 (1997)......................................................................................... 11

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)................................................................................ 6, 12, 13, 21

*Baffa v. Donaldson, Lyfkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000).......................................................................................... 10

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)................................................................................ 3, 12, 13

*Billhofer v. Flamel Techs., S.A.*,
    281 F.R.D. 150 (S.D.N.Y. 2012) .................................................................. passim

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ................................................................ passim

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
    310 F.R.D. 69 (S.D.N.Y. 2015) .................................................................. passim

*Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)............................................................................................ 7

*City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.*,
    2017 WL 3608298 (S.D.N.Y. Aug. 22, 2017)................................................................ 8

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ................................................................................................ 22, 23

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)................................................................................................ 7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804, 131 S. Ct. 2179 (2011) ....................................................................... 12

*Fogarazzao v. Lehman Bros. Inc.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) .................................................................... 8, 22

*Gross v. GFI Grp., Inc.*,
    2017 WL 3668844 (S.D.N.Y. Aug. 23, 2017)......................................................... 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)................................................................................................ 12

*In re Alstom SA Sec. Litig.*,
  253 F.R.D. 266 (S.D.N.Y. 2008) ........................................................................ 20

*In re Currency Conversion Fee Antitrust Litig.*,
  224 F.R.D. 555 (S.D.N.Y. 2004) ........................................................................ 24

*In re Facebook, Inc., IPO & Sec. & Derivative Litig.*,
  986 F. Supp. 2d 428 (S.D.N.Y. 2013).................................................................. 21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  245 F.R.D. 147 (S.D.N.Y. 2007), *aff'd*, 574 F.3d 29 (2d Cir. 2009).................................. 8, 10

*In re Initial Pub. Offering Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006).................................................................................. 7

*In re JPMorgan Chase & Co. Sec. Litig.*,
  2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015)............................................... passim

*In re NYSE Specialists Sec. Litig.*,
  260 F.R.D. 55 (S.D.N.Y. 2009) ........................................................................... 8

*In re Petrobras Sec. Litig.*,
  862 F.3d 250 (2d Cir. 2017).................................................................. 14, 15, 18, 25

*In re Pfizer Sec. Litig.*,
  282 F.R.D. 38 (S.D.N.Y. 2012) .......................................................................... 24

*In re Sanofi-Aventis Sec. Litig.*,
  293 F.R.D. 449 (S.D.N.Y. 2013) ........................................................................ 25

*In re SCOR Holding (Switz.) AG Litig.*,
  537 F. Supp. 2d 556 (S.D.N.Y. 2008).................................................................. 24

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2019 WL 3001084 (S.D.N.Y. July 10, 2019) .................................................. passim

*In re SLM Corp. Sec. Litig.*,
  2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) ......................................................... 1

*In re Smith Barney Transfer Agent Litig.*,
  290 F.R.D. 42 (S.D.N.Y. 2013) ........................................................................... 9

*In re Virtus Inv. Partners, Inc.*,
  2017 WL 2062985 (S.D.N.Y. May 15, 2017) ........................................ 8, 9, 13, 24

*In re Warner Chilcott Sec. Litig.*,
  2008 WL 344715 (S.D.N.Y. Feb. 4. 2008)........................................................... 24

*In re Winstar Commc'ns Sec. Litig.*,
    290 F.R.D. 437 (S.D.N.Y. 2013) ............................................................. 15, 16, 17

*Katz v. Image Innovations Holdings, Inc.*,
    2010 WL 2926196 (S.D.N.Y. July 22, 2010) ........................................... 1, 2, 10, 12

*Krogman v. Sterritt*,
    202 F.R.D. 467 (N.D. Tex. 2001) ........................................................... passim

*McIntire v. China MediaExpress Holdings, Inc.*,
    38 F. Supp. 3d 415 (S.D.N.Y. 2014)......................................................... 8, 19, 20

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*,
    328 F.R.D. 86 (S.D.N.Y. 2018) ................................................................... 18

*Pennsylvania Ave. Funds v. Inyx, Inc.*,
    2011 WL 2732544 (S.D.N.Y. July 5, 2011) .................................................. 8

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
    327 F.R.D. 38 (S.D.N.Y. 2018) ........................................................... 14, 15, 18, 23

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)....................................................................... 22

*Stoneridge Inv. Partners, LLC v. Sci.—Atlanta*,
    552 U.S. 148, 128 S. Ct. 761 (2008).......................................................... 12

*Strougo v. Barclays PLC*,
    312 F.R.D. 307 (S.D.N.Y. 2016) ........................................................... 14, 19

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015).......................................................................... 22

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017)................................................................. 12, 14, 17, 23

*Wilson v. LSB Industries, Inc.*,
    2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) ............................................. 16, 20

**Statutes**

17 C.F.R. §239.13 ......................................................................................... 17

**Rules**

Fed. R. Civ. P. 23 ...................................................................................... passim

iv

Lead Plaintiff Holly Ngo and additionally named plaintiff David Klungle ("Plaintiffs") respectfully submit this memorandum of law in support of their Motion for Class Certification, requesting that, pursuant to Federal Rule of Civil Procedure ("Rule") 23(a), (b)(3), and (g), the Court: (i) certify this case as a class action; (ii) appoint Plaintiffs as Class Representatives; and (iii) appoint Levi & Korsinsky, LLP ("Levi Korsinsky") as Class Counsel.

## **INTRODUCTION**

This is a federal securities action against Defendants Avon, Inc. ("Avon" or the "Company"),[1] Sherilyn S. McCoy, James S. Scully, James S. Wilson, and David Legher for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a). As other courts in this District and Circuit have recognized, "claims alleging violations of Sections 10(b) and 20(a) of the Exchange Act are especially amenable to class certification." *In re SLM Corp. Sec. Litig.*, 2012 WL 209095, at *3 (S.D.N.Y. Jan. 24, 2012); *see also Katz v. Image Innovations Holdings, Inc.*, 2010 WL 2926196, at *3 (S.D.N.Y. July 22, 2010) (same). "Indeed, courts have acknowledged that '[b]ecause of the usefulness of class actions in addressing allegations of securities fraud, the class certification requirements of Rule 23 are to be construed liberally.'" *Image Innovations*, 2010 WL 2926196 at *3.

Because this case is no exception and is well-suited for class treatment, Plaintiffs respectfully request certification pursuant to Rule 23 on behalf of a class (the "Class") consisting of: all persons and entities who purchased or otherwise acquired the publicly traded common stock of Defendant Avon during the period from January 21, 2016 to November 1, 2017, inclusive (the "Class Period"), and who were damaged thereby. Excluded from the Class are

---

[1] Unless otherwise defined, all Capitalized terms shall have the same meaning as set forth in Plaintiffs' Corrected Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint") (ECF No. 32). All emphasis in any citation is added and all internal citations omitted.

1

Defendants, the officers and directors of Avon, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

"Before certifying a class, the Court must determine that the party seeking certification has satisfied the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation." *Image Innovations*, 2010 WL 2926196 at *1. "The Court must also find that the party qualifies under one of the three sets of criteria set forth in Rule 23(b)(1), (2), or (3)." *Id*. Rule 23(b)(3), in particular, permits certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Each of these requirements is readily met here.

*First*, with more than 435 million shares of Avon common stock outstanding throughout the Class Period, during which time an average of nearly 30.5 million shares traded weekly, there are likely thousands of Class members, satisfying the numerosity requirement.

*Second*, the commonality prerequisite is met because this action involves several class-wide issues of law and fact, including whether: (1) Defendants made material misrepresentations and omissions in the Company's Securities and Exchange Commission ("SEC") filings and other public disclosures; (2) Defendants acted with scienter; (3) the price of Avon's common stock was artificially inflated by Defendants' fraudulent conduct; (4) Class members suffered damages; and (5) the Individual Defendants were control persons of Avon.

*Third*, the typicality prerequisite is met where Plaintiffs' injuries and those of Class members arise from the same alleged fraudulent conduct. Plaintiffs and Class members

purchased Avon common stock at prices artificially inflated by Defendants' material misrepresentations and omissions. When the information Defendants concealed from investors during the Class Period was finally revealed, the price of Avon's common stock dropped, injuring Plaintiffs and the Class.

**Fourth**, the adequacy requirement is met here because Plaintiffs have demonstrated that they will vigorously prosecute this case and protect the Class' interests, and because no antagonism exists between Plaintiffs and the Class. Additionally, Plaintiffs' choice of counsel, Levi Korsinsky, is experienced in securities class actions and is well-suited for appointment as Class Counsel under Rule 23(g).

**Fifth**, this action satisfies the predominance requirement of Rule 23(b)(3). Several issues of fact and law – including falsity, materiality, scienter, loss causation, and damages – are subject to common proof and predominate over any individual issues. The same is true with the issue of reliance, which may be presumed using the "fraud-on-the-market" presumption under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), or the presumption of reliance for omissions under *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972). Indeed, *Basic* permits the presumption in this case because, as established in the accompanying Expert Report of Chad Coffman, CFA, the market for Avon common stock, which traded on the New York Stock Exchange ("NYSE"), was efficient throughout the Class Period. *See* Ex. A[2] ("Coffman Rpt."), ¶¶6, 25, 82. And *Affiliated Ute* permits a presumption of reliance since Plaintiffs' claims are based, in part, on Defendants' material omissions.

**Sixth**, the superiority requirement of Rule 23(b)(3) is satisfied because: (1) thousands of geographically-dispersed investors were harmed by Defendants' misconduct; (2) due to litigation

---

[2] All citations to "Ex. ___" are to exhibits to the Declaration of Gregory M. Nespole in Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith.

costs, it is highly unlikely that investors who lost relatively small amounts of money would file individual actions; (3) it is desirable to hear all such claims in one court; and (4) there is no difficulty in maintaining this case as a class action.

For the reasons detailed herein, Plaintiffs' motion should be granted.

## STATEMENT OF FACTS COMMON TO THE CLASS

Avon is one of the world's largest direct sellers of beauty and personal care products, using a direct-selling model in which Representatives purchase products directly from Avon *on credit* that they then sell to consumers. ¶37. Thus, the growth and sustainability of Avon's business is wholly dependent on the ability of its Representatives to generate recurring sales and Avon's ability to hire, train, and retain those Representatives. ¶2. Avon also provides thousands of dollars of merchandise to its Representatives on credit, exposing the Company to the risk of bad debt. ¶¶7, 11. To be hired, candidates must meet Avon's country-specific credit standards. Upon approval, Representatives can purchase products on credit extended by Avon. ¶4. As of December 31, 2016, Avon had more than 6 million Representatives in 57 countries. ¶37.

Avon traditionally sold beauty products in the United States. ¶35. By 2010, however, Brazil surpassed the United States as Avon's largest market, measured by revenue and number of Representatives. ¶¶35, 40. In 2016, revenue from Avon's Brazilian market was $1.2 billion, or approximately 21% of Avon's 2016 consolidated revenue. ¶40. No other country accounted for more than 10% of total revenues at the end of 2016, making Brazil a key international market.

Needing to reverse a declining revenue trend and lack of profitability in its key market, in 2015, Defendants McCoy, Scully, Wilson, and Legher decided to lower the credit requirements for new Avon Representatives in Brazil. ¶60. This opened the door to a new crop of candidates who carried with them higher default risks. ¶¶58-62. While the newfound strategy led to a temporary increase in Company revenue, the real-world impact would soon reverberate

throughout Brazil and Avon, as credit delinquencies among Representatives skyrocketed, with the Company going to great lengths in an attempt to collect on these debts. *See, e.g.*, ¶¶89, 90, 97.

Seeking to offset these rising delinquencies and further inflate revenue, Avon dispensed with policies preventing delinquent Representatives from ordering more product and instead *encouraged* these individuals to order more at discounted rates in exchange for entering into a payment plan. ¶94. Though Avon recognized this additional revenue, it failed to accurately revise its "Allowance for Doubtful Accounts" disclosures to account for the increased likelihood that shipping product to delinquent Representatives would result in a greater proportion of uncollectible revenue. ¶261. Additionally, throughout the Class Period, the Company engaged in the widespread process of shipping unrequested products, simulating sales in order to offset inventory buildups and recognizing revenue despite the fact that these shipments would ultimately be returned. ¶¶101-04.

As alleged in the Complaint, and as set forth in Judge McMahon's Decision and Order Denying Defendants' Motion to Dismiss (ECF No. 46), throughout the Class Period Defendants made myriad false and misleading statements concerning: (i) Avon's recruitment practices (*see, e.g.*, ¶¶135, 140, 141), the ongoing credit crisis (*see, e.g.*, ¶¶199-202), and the resulting increase in bad debt (*see, e.g.*, ¶¶138, 145, 152, 160, 164, 178, 181, 192, 207, 216); (ii) Avon's accounting practices, including the Company's failure to increase its allowance for bad debts to account for the changes to its credit terms (*see, e.g.*, ¶¶138, 145, 152, 160, 164); and (iii) Avon's training and support systems for new Representatives (*see, e.g.*, ¶¶132, 211, 232-36).

The truth regarding these false statements and the state of affairs at Avon in Brazil was revealed to the market through a series of partial corrective disclosures on February 16, 2017

(causing an 18.6% decline in the Company's stock price); May 4, 2017 (causing a 22.2% decline in the Company's common stock price); and August 3, 2017 (causing a 10.7% decline in the Company's common stock price). ¶298. On each of these days, the market learned progressively more about how: Avon's Brazilian business was struggling; Defendants loosened credit terms in their most important market to hide these struggles; and the Company was dealing with uncollectable debt as a result. ¶¶182-205, 213-14. Then, on November 2, 2017, before the market opened, the full impact of Defendants' fraud was revealed when the Company reported weak financial results for the third quarter of 2017, driven by what Defendant Wilson described as "self-inflicted" higher bad debt levels. ¶¶223-25. The market reacted swiftly, sending the Company's stock price down an additional 18.1% over the following two trading days to close at $1.94 per share—a new all-time low. ¶¶223, 298.

## THE PROPOSED CLASS SATISFIES RULE 23 AND SHOULD BE CERTIFIED

Certification is appropriate where a putative class meets all four requirements of Rule 23(a) and one requirement of Rule 23(b). *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 73 (S.D.N.Y. 2015). Though "a court's class-certification analysis must be 'rigorous' . . . Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013). "A motion for class certification should not become a mini-trial on the merits; the question before the Court is whether Plaintiff[s] meets Rule 23's requirements, not whether Plaintiff[s] will prevail on the merits." *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *7 (S.D.N.Y. July 10, 2019).

"If the Court finds that the requirements of Rule 23 have been met, the Court may, in its discretion, certify the [C]lass." *Id.* "The Second Circuit has construed Rule 23 liberally and directed district courts to err on the side of granting class certification." *In re JPMorgan Chase*

*& Co. Sec. Litig.*, 2015 WL 10433433, at *2 (S.D.N.Y. Sept. 29, 2015); *see also In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41-42 (2d Cir. 2006) (instructing courts to "assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met," but cautioning against "assess[ing] any aspect of the merits unrelated to a Rule 23 requirement").

## I.   THE PROPOSED CLASS SATISFIES RULE 23(a)

### A.   The Class is So Numerous that Joinder is Impracticable

Rule 23's numerosity prong requires that a class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Numerosity "does not mandate that joinder of all parties be impossible – only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007). The Second Circuit has recognized that "numerosity is presumed at a level of 40 members." *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *Signet*, 2019 WL 3001084, at *8.

Here, the Class is so numerous that joinder would be impracticable. During the Class Period, there were approximately 435.4 million shares of Avon stock outstanding, and the average weekly trading volume of Avon stock on the NYSE was 30.47 million shares, representing 6.96% of all outstanding shares. Coffman Rpt. ¶¶25, 69. In addition, more than 500 institutional investors owned Avon common stock during the Class Period. *Id*. at ¶74. The numerosity requirement is therefore easily met. *See Signet*, 2019 WL 3001084, at * 8 (finding numerosity satisfied where defendant corporation had between 60.5 and 80.5 million shares

outstanding and an average of 1.34 million shares traded daily); *In re Virtus Inv. Partners, Inc.*, 2017 WL 2062985, at *2 (S.D.N.Y. May 15, 2017) (numerosity established where the daily trading volume averaged approximately 65,000 shares and the proposed class was likely comprised of thousands of geographically dispersed class members); *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 153, 156 (S.D.N.Y. 2012) (demonstrating numerosity where defendant corporation had 23 million ADRs outstanding and between 71 and 82 institutional investors).

### B.  Questions of Law and Fact Are Common to the Class

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." All that is required is that plaintiff "identify some unifying thread among the members' claims that warrants class treatment." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 158 (S.D.N.Y. 2007), *aff'd*, 574 F.3d 29 (2d Cir. 2009); *see also City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.*, 2017 WL 3608298, at *5 (S.D.N.Y. Aug. 22, 2017) (commonality requirement "met if plaintiffs' grievances share a common question of law or of fact."). "Even a single common legal or factual question will suffice." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009). "[W]here putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied." *Fogarazzao v. Lehman Bros. Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005). The commonality requirement has therefore been characterized as a "low hurdle." *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 424 (S.D.N.Y. 2014). In Section 10(b) cases, "[c]ommon questions of law and fact include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues." *Pennsylvania Ave. Funds v. Inyx, Inc.*, 2011 WL 2732544, at *4 (S.D.N.Y. July 5, 2011).

Here, there are many questions of law and/or fact common to all Class members, whose

claims for redress all arise from "(1) Defendants' failure to disclose Avon's relaxed credit policies for new Representatives in Brazil, which exposed the Company to a greater risk of bad debt; (2) Defendants' misrepresentations and omissions in connection with Avon's estimated bad debt in light of the changes to the credit terms; and (3) Defendants' failure to disclose that Avon stopped training its Representatives in Brazil, which further exposed the Company to a greater risk of inefficient and/or disengaged Representatives." (ECF No. 46 ORDER at 25 (citing ¶138)). These questions entail additional common questions—including whether: (1) the foregoing misrepresentations and/or omissions were material; (2) Defendants acted knowingly or recklessly; (3) Defendants violated Section 10(b) and Section 20(a); and (4) investors suffered resulting damages—and the commonality prong is therefore satisfied. *See Virtus*, 2017 WL 2062985, at *2 ("Courts in this Circuit find commonality satisfied where there are common issues relating to violations of federal securities laws, misrepresentations of material fact, scienter, and damages.").

### C.  Plaintiffs' Claims Are Typical of the Class' Claims

Rule 23 requires that a representative plaintiff's claims be typical of the claims of the class. FED. R. CIV. P. 23(a)(3). A plaintiff satisfies the typicality requirement by demonstrating that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 45 (S.D.N.Y. 2013). When "the same unlawful conduct was directed at or affected both" the class and its representative, typicality "is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Smith Barney*, 290 F.R.D. at 45-46. "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar" to the proposed class representative." *Id.* at 46.

Here, typicality is established because Plaintiffs' claims arise out of the same alleged

facts and legal theories as the claims of other Class members, i.e., Plaintiffs allege that Defendants made materially false and misleading public statements and omissions, in violation of Sections 10(b) and 20(a) of the Exchange Act. In addition, the injury Plaintiffs suffered is alleged to be the same as the injury suffered by the proposed Class as a whole, i.e., Plaintiffs purchased Avon shares at artificially inflated prices during the Class Period, suffering losses when the truth about Defendants' common course of conduct was revealed to the market, just like all other Class members. ¶¶129-298. Thus, their claims are typical of—if not identical to— those of other members of the Class. *See Signet*, 2019 WL 3001084, at *9 ("In other words, all Class members' claims arise from the same course of events and will be resolved based on similar legal arguments. The typicality requirement is satisfied.").

### D.  Plaintiffs Will Fairly and Adequately Protect the Class' Interests

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "This requirement consists of two elements: (1) the qualification, experience and ability of the plaintiffs' attorneys; and (2) the absence of any substantial antagonism between the named plaintiffs and the class members." *Image Innovations*, 2010 WL 2926196, at *4; *see also Baffa v. Donaldson, Lyfkin & Jenrette Sec. Corp*., 222 F.3d 52, 60 (2d Cir. 2000). "The purpose of this inquiry is to uncover conflicts of interest between the named parties and the class they seek to represent." *Gross v. GFI Grp., Inc.*, 2017 WL 3668844, at *2 (S.D.N.Y. Aug. 23, 2017). "[H]ypothetical conflict[s] of interest, without more," are not enough to warrant denial of class certification on "adequacy grounds." *Id*. at *3; *Flag Telecom*, 574 F.3d at 35 (noting that conflict "must be fundamental" to defeat class certification). The adequacy requirement is satisfied here.

First, Plaintiff has engaged competent Lead Counsel that is "qualified, experienced and able to conduct the litigation." *Baffa*, 222 F.3d at 60. Levi Korsinsky has extensive experience

litigating securities class actions in courts throughout the country, including this one, having successfully prosecuted hundreds of securities class actions on behalf of injured investors. *See* Ex. B . Plaintiffs are additionally represented by Labaton Sucharow LLP, a firm well known for successfully representing investors in securities class actions.  *See* Ex. C.

Second, none of Plaintiffs' interests are antagonistic to those of the proposed Class. Plaintiffs, like all Class members, purchased Avon common stock at market prices during the Class Period and were injured by the same material misrepresentations and omissions, and subsequent stock price decline. Plaintiffs' interests in establishing Defendants' liability and maximizing recovery are aligned with those of absent Class members. *Billhofer*, 281 F.R.D. at 157 (stating "the interests of the other members of the proposed class will be adequately protected by [p]laintiff" in securities case where all claims arose from the same conduct).

Finally, Plaintiffs have already proven their willingness and ability to serve as Class Representatives by, *inter alia*, actively supervising and monitoring this litigation; participating in discussions with counsel concerning case developments; and reviewing Court filings. Plaintiffs also understand their duty to the Class and are committed to vigorously prosecuting this Action to maximize the recovery of all Class members. The Class' interest are therefore protected.

## II.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(3)

The proposed Class also satisfies Rule 23(b)(3)'s requirements that common questions of law or fact predominate and that a class action be the superior method to adjudicate this dispute. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S. Ct. 2231 (1997).

### A.  Common Factual and Legal Issues Predominate

"Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to

11

individualized proof." *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017). "Predominance is a test readily met in certain cases alleging consumer or securities fraud." *Image Innovations*, 2010 WL 2926196, at *5.

The analysis of whether common questions predominate "begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 809-810, 131 S. Ct. 2179 (2011) *("Halliburton I")*. The elements of Plaintiffs' claims under Section 10(b) and Rule 10b-5 of the Exchange Act are: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.[3] *Stoneridge Inv. Partners, LLC v. Sci.—Atlanta*, 552 U.S. 148, 157, 128 S. Ct. 761 (2008).

Because the Supreme Court has held that falsity, materiality, and loss causation are common issues to a class, *Amgen*, 568 U.S. at 474-75, whether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance. *See Haliburton I*, 563 U.S. at 810. Here, Plaintiffs and the Class are entitled to a presumption of Class-wide reliance under the fraud-on-the-market theory set forth in *Basic Inc. v. Levinson* and reaffirmed in *Halliburton II*, 573 U.S. at 276. As set forth below, damages will also be determined on a class-wide basis using the same formula and measure of artificial inflation attributable to Defendants' conduct. Accordingly, the predominance requirement is satisfied.

---

[3] Plaintiffs' Section 20(a) claim also presents common issues of law and fact, "as the method for demonstrating whether Defendants exerted control over [Avon] varies only based on Defendants' identities, not the Plaintiff[s']." *Signet*, 2019 WL 3001084, at *10, n.2.

### 1. Plaintiffs Are Entitled to the Fraud-on-the-Market Presumption of Reliance

In *Basic Inc. v. Levinson*, the Supreme Court held that investors could satisfy the reliance element of Section 10(b) by invoking a rebuttable presumption of reliance. 485 U.S. at 245-47. The *Basic* presumption of reliance is premised on the fact that "the price of a security traded in an efficient market will reflect all publicly available information about a company; accordingly, a buyer of the security may be presumed to have relied on that information in purchasing the security." *Amgen*, 568 U.S. at 458; *Basic*, 485 U.S. at 229-30 (concluding that anyone who buys or sells stock at the market price may be considered to have relied on material misstatements).

Plaintiffs may invoke the presumption by establishing that "the alleged misrepresentations were public, that [Avon's] stock traded on an efficient market, and that the relevant transaction took place between the time the misrepresentations were made and the time the truth was revealed." *Virtus*, 2017 WL 2062985, at *4. "Once [P]laintiffs establish the applicability of *Basic*'s presumption of reliance, the burden then shifts to the [D]efendants, who 'bear the burden of persuasion [under *Halliburton II*] to rebut the *Basic* presumption by a preponderance of the evidence.' To meet their burden, [D]efendants must 'do more than merely produce evidence that *might* result in a favorable outcome; they must demonstrate that the misrepresentations did not affect the [Company's] stock's price by a preponderance of the evidence.'" *Signet*, 2019 WL 3001084, at *11.

*First*, on publicity, Plaintiffs allege that Defendants made material misrepresentations and omissions in their public statements to investors via Avon's SEC filings and press releases, and during earnings calls and investor conferences, that artificially inflated or maintained the market price of Avon stock. ¶¶130-228. *Second*, on market timing, Plaintiffs allege that they, like other members of the proposed Class, bought stock during the Class Period at artificially

inflated prices and suffered losses when that inflation was removed upon the disclosure of the truth. ¶¶28, 296-98. *Third*, as detailed below and in the accompanying Coffman Report, the market for Avon common stock was efficient at all relevant times.

Under Second Circuit law, the burden to show market efficiency at class certification "is not an onerous one." *In re Petrobras Sec. Litig.*, 862 F.3d 250, 278 (2d Cir. 2017); *see also Waggoner*, 875 F.3d at 97. Instead, it is a flexible inquiry for which the Second Circuit has declined to adopt any particular test, instead directing "a holistic analysis based on the totality of the evidence presented." *Waggoner*, 875 F.3d at 94, 96-97. As detailed herein and in the accompanying Coffman Report, Plaintiffs have established that the market for Avon stock was efficient at all relevant times, triggering the presumption of reliance.

### a. Avon's NYSE Listing is Strong Evidence of Market Efficiency

Avon's common stock traded on the NYSE during the Class Period. For many courts, this alone supports a presumption of efficiency. *See Billhofer*, 281 F.R.D. at 159 (stating that a security listed on NASDAQ, American Stock Exchange or NYSE is presumed efficient at class certification stage); *Carpenters*, 310 F.R.D. at 81 (collecting cases noting that some courts presume securities traded on national markets to be efficient and most courts agree that NYSE listing "is a good indicator of efficiency"); *Pirnik v. Fiat Chrysler Automobiles, N.V.*, 327 F.R.D. 38, 44 (S.D.N.Y. 2018) (referring to the NYSE as a "paradigmatic efficient market"). At a minimum, Avon's trading on a national exchange provides "a strong indication" of efficiency. *JPMorgan*, 2015 WL 10433433, at *7; *accord Strougo v. Barclays PLC*, 312 F.R.D. 307, 318 (S.D.N.Y. 2016) ("most courts in this Circuit agree that such listing is a good indicator of efficiency"), *aff'd, Waggoner*, 875 F.3d at 79. *See also* Coffman Rpt. ¶40.

**b. The *Cammer* and *Krogman* Factors Support a Finding of Market Efficiency**

When analyzing market efficiency courts often look to the factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989) and *Krogman v. Sterritt*, 202 F.R.D. 467, 474 (N.D. Tex. 2001), "the prevailing tests" for doing so. *Signet*, 2019 WL 3001084, at *11.

> The five *Cammer* factors are: (1) the average weekly trading volume of the stock, (2) the number of securities analysts following and reporting on it, (3) the extent to which market makers traded in the stock, (4) the issuer's eligibility to file an SEC registration Form S-3, and (5) the demonstration of a cause and effect relationship between unexpected, material disclosures and changes in the stock's price. The three "*Krogman*" factors are: (1) the market capitalization of the company; (2) the bid-ask spread of the stock; and (3) the percentage of stock not held by insiders.

*Id*. The Second Circuit has instructed that the *Cammer* and *Krogman* factors should be used as analytical tools, not as a checklist, and should be analyzed holistically "based on the totality of the evidence presented." *Petrobras*, 862 F.3d at 275, 277 (affirming district court's finding of market efficiency); *Billhofer*, 281 F.R.D. at 160.

As set forth below and in the accompanying report of Mr. Coffman, a holistic consideration of the *Cammer* and *Krogman* factors overwhelmingly supports a finding that the market for Avon common stock was efficient during the Class Period.

***Cammer* One – Weekly Trade Volume**: "Average weekly trading volume of 2% or more of outstanding securities justifies a strong presumption of an efficient market for that security." *In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 447 (S.D.N.Y. 2013). High trading volume suggests efficiency "because it implies significant investor interest in the company" which, "in turn, implies a likelihood that many investors are executing trades on the basis of newly available or disseminated corporate information." *Carpenters*, 310 F.R.D. at 79 (certifying securities class). Here, Avon's average weekly trade volume of 6.96% of outstanding shares easily exceeds the 2% threshold established in *Cammer*. Coffman Rpt. ¶28; *Pirnik*, 327

F.R.D. at 44 (finding that average weekly trading volume of 2% justified "a strong presumption of efficiency"); *JPMorgan*, 2015 WL 10433433, at *5 (finding that average weekly trading volume of 6.5% of shares outstanding weighed in favor of market efficiency).

*Cammer* **Two – Number of Analysts**:  Analyst coverage "supports a finding of market efficiency" because it shows that "investment professionals" are "inject[ing] their views on the . . . security into the market." *Winstar*, 290 F.R.D. at 446. Here, analysts from approximately 22 separate firms (including major financial firms like Barclays, UBS, and Deutsche Bank) issued at least 215 reports on Avon during the Class Period. Coffman Rpt. ¶34. The extensive analyst coverage of Avon easily satisfies *Cammer* two and supports a finding of market efficiency. *Winstar*, 290 F.R.D. at 446 (finding market efficient with three analysts); *Wilson v. LSB Industries, Inc.*, 2018 WL 3913115, at *11 (S.D.N.Y. Aug. 13, 2018) (finding 45 reports by 5 analysts supportive of efficiency and noting that it well surpassed the 15 research reports in *Cammer*).

Courts also recognize that widespread media coverage supports a finding of efficiency. *See Carpenters*, 310 F.R.D. at 92 ("regular press coverage throughout the Class Period" weighed in favor of finding market efficiency); *Billhofer*, 281 F.R.D. at 153-54 (noting the publication of over two dozen press releases and articles supported finding of efficiency). Here, more than 1,700 unique news articles concerning Avon were published during the Class Period, further supporting the efficiency of the market for Avon common stock. Coffman Rpt. ¶36.

*Cammer* **Three – Market Makers**: The third *Cammer* factor, the number of market makers and arbitrageurs, is additional evidence of market efficiency for Avon common stock. "Market makers promote efficiency by reacting quickly to new information by buying or selling

securities in order to drive their price to the market-clearing level." *Winstar*, 290 F.R.D. at 446.[4] Courts in the Second Circuit "have found that anywhere between six and twenty market makers is sufficient to support a finding of market efficiency." *Carpenters*, 310 F.R.D. at 92 (citing cases). Here, there were 121 market makers for Avon common stock, according to *Bloomberg* – satisfying a finding of efficiency. Coffman Rpt. ¶42; s*ee Winstar*, 290 F.R.D. at 449 (six market markers evidenced market efficiency); *Carpenters*, 310 F.R.D. at 92 (holding 51 market makers sufficient).

    *Cammer* **Four – SEC Registration Form S-3**: "The ability to file [a Form S-3 registration statement] indicates that the company is easily able to issue new securities," and is evidence of market efficiency. *Winstar*, 290 F.R.D. at 447. A company is eligible to file a Form S-3 registration statement if it has filed SEC reports for 12 consecutive months and possesses a market capitalization of at least $75 million. *See* 17 C.F.R. §239.13. Based on his analysis, Mr. Coffman found no evidence that Avon was not S-3 eligible during the Class Period and, in fact, it did file a Form S-3ASR[5] on October 11, 2016. Coffman Rpt. ¶45. This factor therefore supports a finding of market efficiency.

    *Cammer* **Five – Price Reaction**: The final *Cammer* factor allows, but does not require, plaintiffs to submit "direct evidence" demonstrating a "cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price." *Waggoner*, 875 F.3d at 94. The Second Circuit has confirmed that "a plaintiff seeking to demonstrate market efficiency need not always present direct evidence of price impact through event studies," particularly where the "indirect" *Cammer* and *Krogman* factors provide

---

[4] The NYSE does not have market makers as the term was used in *Cammer*, and instead relies on "a computerized system to match orders and provide quotes" and minimum requirements for listing that "virtually guarantee a liquid market for the security." Coffman Rpt. ¶41.

[5] A Form S-3ASR is a type of Form S-3 reserved for "well-known seasoned issuers." *Id.* at ¶45.

compelling evidence of market efficiency. *Waggoner*, 875 F.3d at 96-98. Here, the first four *Cammer* factors, and all of the *Krogman* factors discussed below, support market efficiency, obviating the Court's need to analyze the fifth *Cammer* factor. *Pirnik*, 327 F.R.D. at 45 n.3 ("As Plaintiffs easily satisfy the first four *Cammer* factors, the Court need not and does not analyze the fifth *Cammer* factor, which asks for direct evidence of price impact."); *Carpenters*, 310 F.R.D. at 86 ("In the usual case of common or other highly traded and analyzed stock, there is no reason to burden the court with review of an event study and the opposing expert's attack of it."); *Signet*, 2019 WL 3001084, at *13 (finding market efficiency on basis of  first four *Cammer* factors and three *Krogman* factors).

Nevertheless, Mr. Coffman conducted an event study to "determine whether Avon Common Stock reacted to earnings announcements in a manner significantly different from how the stock moved on days with no Avon-related news."[6] Coffman Rpt. ¶49.  After controlling for market and industry factors. Mr. Coffman's event study found "***a clear cause-and-effect relationship between new public information about Avon and the market price of Avon Common Stock***." *Id*. at ¶49. As detailed in his report, Mr. Coffman has shown through empirical analyses based on the results of his event study that Avon's stock price reacted in an efficient manner to new information about the Company. *See id*. at ¶¶46-67; *see Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 328 F.R.D. 86, 98 (S.D.N.Y. 2018) (finding efficiency even where defendants were able to "poke[] some holes" in plaintiffs' expert's conclusions, as "the event study goes to the basic premise of *Cammer* 5"). This further establishes that Avon common stock traded in an efficient market during the Class Period.

---

[6] "'[A]n event study that correlates the disclosures of unanticipated, material information about a security with corresponding fluctuations in price has been considered *prima facie* evidence of the existence of such a causal relationship.'" *Petrobras*, 862 F.3d at 278 (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 207-08 (2d Cir. 2008)).

**Krogman** **One – Market Capitalization**: During the Class Period, Avon had an average market capitalization of $1.88 billion, based on 435.4 million shares of Avon common stock outstanding. Coffman Rpt. ¶69. This market capitalization ranged from the 52nd to 72nd percentile of the combined NYSE and NASDAQ markets for the applicable quarters during the Class Period, meaning Avon's market capitalization was higher than at least 52% of companies listed on the two largest domestic exchanges (*id*.), supporting a finding of market efficiency. *See, e.g.*, *Carpenters*, 310 F.R.D at 92 (quarterly market capitalization ranging from $0.5 to $3.2 billion indicated market efficiency); *McIntire*, 38 F. Supp. 3d at 433 (market capitalization of $292 to $585 million supported market efficiency); *Billhofer*, 281 F.R.D. at 154 ($288 million to $717 million market capitalization supported efficiency).

**Krogman** **Two – Bid/Ask Spread**: The bid-ask spread is the difference between the prices at which investors are willing to buy and current stockholders are willing to sell shares. *See Krogman*, 202 F.R.D. at 478. "[A] small bid-ask spread indicate[s] that trading in the stock [is] inexpensive, suggesting efficiency." *Strougo*, 312 F.R.D. at 316. Avon's common stock had a bid-ask spread during the Class Period in each month during the Class Period between 0.07% and 0.43%. Coffman Rpt. ¶72. This is well within what courts have found indicative of market efficiency. *See Signet*, 2019 WL 3001084, at *12 (noting that "the average bid-ask spread for all stocks trading on the NYSE and NASDAQ was .68%"); *McIntire*, 38 F. Supp. 3d at 433 (bid-ask spread of 0.27% "indicative of efficient market"); *see also* Coffman Rpt. ¶72 (during October 2017, Avon had a monthly average bid-ask spready of 0.39%, as compared to 1.59% for a randomly selected group of 100 other common stocks on the NYSE and NASDAQ).

**Krogman** **Three – Public Float**: A stock's float is the number of shares outstanding, excluding shares held by insiders and affiliated corporate entities. Coffman Rpt. ¶73. Here,

Avon's public float averaged 99.7% of shares outstanding. *Id*. The large size and high percentage of Avon's float is indicative of the efficiency of the market for Avon's stock. *Id*.; *see also Signet*, 2019 WL 3001084, at *12 (finding public float ranging from 99.4 and 99.8% to "weigh heavily in favor of a finding of market efficiency"); *Billhofer*, 281 F.R.D. at 160 (concluding that a "substantial market capitalization with a narrow bid-ask spread, and a large public float" supported market efficiency); *McIntire*, 38 F. Supp. 3d at 433 (finding that float between 57% and 69% of shares outstanding supported efficiency).

### c. Additional Factors and Analyses Support a Finding of Market Efficiency

In addition to analyzing the *Cammer* and *Krogman* factors, Mr. Coffman's report also addresses three additional points demonstrating efficiency: institutional ownership (Coffman Rpt. ¶74); autocorrelation (*id*. at ¶75); and the presence of option trading (*id*. at ¶79). High institutional ownership has been considered indicative of market efficiency. *See, e.g., In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 280 (S.D.N.Y. 2008). Here, 532 major institutions owned Avon stock during the Class Period, further supporting a finding of market efficiency. Coffman Rpt. ¶74; *see LSB Industries*, 2018 WL 3913115, at *12 (finding ownership of company stock by 251 major institutions supported efficiency). Mr. Coffman also ran accepted autocorrelation analyses, which "test[] for the presence of a statistical relationship between price changes (also known as returns) on successive trading dates," *Billhofer*, 281 F.R.D at 160, finding "no evidence of statistically significant autocorrelation," further indicating an efficient market. Coffman Rpt. ¶¶75-78. Finally, Mr. Coffman analyzed the option trading activity related to Avon – activity that academics have cited as "improv[ing] efficiency by permitting an expansion of the contingencies that are covered by the market." *Id*. at ¶79. According to Mr. Coffman, there was "considerable option trading in Avon Common Stock during the Class Period," supporting a

finding of market efficiency. *Id.*

All of the *Cammer* and *Krogman* factors, as well as additional market analyses, demonstrate here that the market for Avon's common stock was efficient during the Class Period. Plaintiffs are therefore entitled to rely on the fraud-on-the-market presumption of reliance.

### 2.   Reliance is Presumed for All Class Members Under *Affiliated Ute*

Where, as here, a claim "involv[es] primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery." *Affiliated Ute*, 406 U.S. at 153. Instead, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of [their] decision." *Id.* at 153-54. The *Affiliated Ute* presumption reflects the reality that where no positive statements exist "'reliance as a practical matter is impossible to prove.'" *In re Facebook, Inc., IPO & Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 469 (S.D.N.Y. 2013). Furthermore, because materiality itself is a common question, a plaintiff need not prove materiality in order to invoke the *Affiliated Ute* presumption at the class certification stage; it need only be alleged. *See Amgen*, 568 U.S. at 466.

Plaintiffs' Complaint is replete with allegations regarding Defendants' material omissions, as acknowledged by Judge McMahon in her Motion to Dismiss Order.  *See* ORDER at 26 (noting that Plaintiffs' theory regarding the misleading recruiting statement "turns on" Defendants' omissions – "[Plaintiffs] allege that the recruiting statements misled investors because 'Defendants *failed to disclose* Avon's bad debt problems directly resulted from the decision to lower credit standards' for new hires in Brazil."); *see also* ¶¶132, 135, 137, 139-43, 149-50, 153-57, 163, 165-69, 171, 177, 180, 182, 187, 189, 190, 204-05 (statements regarding growth of Avon's representatives were misleading because Defendants failed to disclose loosening of credit terms and its impact on the Company's bad debt problems directly related to

that strategy); ¶¶133-34, 163, 179, 211 (statements about Representative training were false where Defendants failed to disclose that Avon offered no formal training); ¶¶93-98 (statement regarding alleviation of bad debt issues in 2016 misleading Defendants failed to disclose ineffective methods to addressing long-standing bad debt issues that would continue throughout the Class Period).

Under these circumstances, a showing of reliance on the omissions is unnecessary, even if Plaintiffs also allege that Avon disseminated affirmative misstatements. *See Fogarazzao*, 232 F.R.D. at 186 ("[T]he theory behind the *Affiliated Ute* presumption . . . is not undermined simply because a defendant makes misstatements at the same time it omits material information.").

### 3. Damages May Be Calculated on a Class-Wide Basis, Supporting a Finding of Predominance

In *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), "the Supreme Court held that, 'at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case[,]' and that 'courts must conduct a rigorous analysis to determine whether that is so.'" *Signet*, 2019 WL 3001084, at *19. As the Second Circuit acknowledged, *Comcast* does not require "a finding that damages are capable of measurement on a classwide basis." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 402 (2d Cir. 2015). "All that is required at class certification is that 'the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir. 2015).

While not necessary for class certification, *see Signet*, 2019 WL 3001084, at *20 ("[W]hile Plaintiff ultimately will need to disaggregate confounding factors to prove economic loss, it need not do so at this juncture to establish that common issues relating to damages predominate."), damages in this case can be calculated on a class-wide basis using a common

22

methodology, as described by Mr. Coffman in his report.

Mr. Coffman concludes that "it is clear that damages in this matter can be calculated using a methodology common to the class," premising his findings on the "out-of-pocket" method "which measures damages as the artificial inflation per share at the time of purchase less the artificial inflation at the time of sale." Coffman Rpt. ¶80. To do so, Mr. Coffman proposes the use of an "event study," (described as the "standard procedure in Section 10(b) cases"), which will "measure[] price reactions to disclosures that revealed the relevant truth concealed by the alleged material omissions and/or misrepresentations." *Id.* at ¶81. "This analysis, and the evidence supporting it, would be common to the [C]lass," allowing for the "[d]amages for any individual [C]lass member [to] be calculated formulaically based upon information collected in the claims process." *Id.* Courts agree with Mr. Coffman, declaring an event study to be "the generally accepted method for measuring damages in a securities fraud class action." *Signet*, 2019 WL 3001084, at *20 ("[T]he Court rejects the suggestion that an event study is incapable of disaggregating the effects of confounding information. Were it otherwise, nearly every securities fraud class action would fail"); *Waggoner*, 875 F.3d at 105-06 (finding similar proposal for measuring damages in a securities case in accord with *Comcast*); *JPMorgan*, 2015 WL 10433433, at *7 (concluding that individual damages issues did not predominate where plaintiffs' expert proposed calculating class-wide, per-share damages through an event study analysis of the inflation caused by the alleged misrepresentations and omissions); *Pirnik*, 327 F.R.D. at 47 (same).

### B.  A Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." "The superiority requirement asks courts to balance, in terms of fairness and efficiency, the advantages of a class action against those of

23

alternative available methods of adjudication." *Virtus*, 2017 WL 2062985, at *6. In assessing Rule 23(b)(3)'s superiority requirement, courts are instructed to consider the following "nonexclusive" factors: "(1) the class members' interests in litigating individually in separate actions; (2) the extent and nature of any related litigation already commenced by class members; (3) the desirability of concentrating litigation of the claims in a particular forum; and (4) the manageability of the litigation as a class action." *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004). In general, securities cases "easily satisfy the superiority requirement of Rule 23." *JPMorgan*, 2015 WL 10433433, at *8. This case is no different.

*First*, the proposed Class consists of hundreds if not thousands of potential claimants "who are asserting claims based on predominantly common issues" and, as a result, "[a]djudicating individual claims would be a significant waste of judicial resources." *Billhofer*, 281 F.R.D. at 164; *see also In re Warner Chilcott Sec. Litig.*, 2008 WL 344715, at *2 (S.D.N.Y. Feb. 4. 2008) (securities class action "superior to other methods for adjudication because separate actions would be inefficient and repetitive"). *Second*, Plaintiffs are unaware of any other related litigation commenced by Class members. *Third*, "concentrating the litigation in this forum would promote judicial economy." *In re Pfizer Sec. Litig.*, 282 F.R.D. 38, 53 (S.D.N.Y. 2012). *Finally*, Plaintiffs do not foresee any management difficulties that will preclude this action from being maintained as a class action. Indeed, "litigating each case separately would be wasteful, and result in delay and in inefficient expenditure of judicial resources." *In re SCOR Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 579 (S.D.N.Y. 2008). Thus, the superiority requirement of Rule 23(b)(3) is satisfied.[7]

---

[7] The proposed Class meets the implied "ascertainability requirement" of Fed. R. Civ. P. 23 because it is "defined using objective criteria that establish a membership with definite

### III.    THE COURT SHOULD APPOINT LEVI KORSINSKY AS CLASS COUNSEL

In addition to satisfying the adequacy prong of Rule 23(a)(4), consideration of Rule 23(g) supports appointing Levi Korsinsky as Class Counsel. Under Rule 23(g)(4), the Court must appoint counsel who will fairly and adequately represent the Class and, to that end, considers:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions . . . and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

*In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 459 (S.D.N.Y. 2013). As discussed in §I(D), *supra*, Levi Korsinsky has ably identified, investigated, and vigorously pursued the Class' claims in this action and will continue to do so. In detailed briefing related to Defendants' motion to dismiss, Levi Korsinsky demonstrated its knowledge of applicable law. Additionally, as supported by its firm résumé, submitted herewith as Ex. B to the Nespole Declaration, Levi Korsinsky has consistently demonstrated its ability to litigate securities cases and has proven its willingness to commit substantial time and resources to representing the Class. Plaintiffs respectfully request that the Court appoint Levi Korsinsky as Class Counsel pursuant to Rule 23(g).

### <u>CONCLUSION</u>

Plaintiffs have "affirmatively demonstrated" compliance with all of the requirements of Rule 23(a), (b)(3), and (g). Accordingly, Plaintiffs respectfully request that their motion be granted in its entirety and that the Court enter an Order: (1) certifying this case as a class action; (2) appointing Plaintiffs as Class Representatives; and (3) designating Levi Korsinsky as Class Counsel.

---

boundaries." *Petrobras*, 862 F.3d at 257, 264 (2d Cir. 2017) (declining to adopt a heightened ascertainability requirement).

Dated: February 14, 2020

**LEVI & KORSINSKY, LLP**

*/s/Gregory M. Nespole*
Eduard Korsinsky (EK-8989)
Gregory Mark Nespole (GN-6820)
Sebastiano Tornatore (ST-0304)
55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: ek@zlk.com
          gnespole@zlk.com
          stornatore@zlk.com

***Counsel for Lead Plaintiff, Additionally Named Plaintiff, and the Proposed Class***

**LABATON SUCHAROW LLP**
Carol C. Villegas (CV-7950)
Christine M. Fox (CF-2910)
140 Broadway
New York, New York 10005
Telephone: 212-907-0700
Facsimile: 212-818-0477
Email:  cvillegas@labaton.com
          cfox@labaton.com

***Additional Counsel for Lead Plaintiff, Additionally Named Plaintiff, and the Proposed Class***

**THE SCHALL LAW FIRM**
Brian Schall
1880 Century Park East, Suite 404
Los Angeles, CA 90067
brian@schallfirm.com
(424) 303-1964

***Counsel for Additionally Named Plaintiff***

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February, 14, 2020, a copy of the foregoing was filed electronically via the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties whose attorneys have appeared in this action, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

By:   */s/Gregory M. Nespole*
        Gregory Mark Nespole