# Exhibit A

# LEVI&KORSINSKY LLP

55 Broadway, 10th Floor
New York, NY 10006
T: 212-363-7500
F: 212-363-7171
www.zlk.com

Gregory M. Nespole
gnespole@zlk.com

February 4, 2020

**VIA E-MAIL**

Karin DeMasi, Esq.
KDeMasi@cravath.com
Andrew Huynh, Esq.
ahuynh@cravath.com
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019

Dear Karin and Andrew:

This letter concerns the issues we discussed during the January 27, 2020 "meet and confer" regarding Plaintiffs' First Set of Document Requests (the "Requests") and Defendants' Objections and Responses to Plaintiffs' First Set of Document Requests (the "Responses"). The parties have come to an agreement on many of the Requests and Plaintiffs appreciate Defendants' efforts to continue to work through the outstanding issues.

During the call, you stated that many of Defendants' objections to the Requests are intended to reserve all rights and are not intended to limit Defendants' production under the Requests. Accordingly, unless otherwise noted below, it appears that the only limitations on Defendants' production will be imposed by: (i) the custodians selected; (ii) the search terms employed; and (iii) the Relevant Time Period (once agreed upon) controlling each Request.

Plaintiffs reserve all rights to seek further documents pursuant to the Requests or move to compel notwithstanding the agreements reached by the parties concerning Defendants' production.

**Relevant Time Period**: Defendants' position is the Relevant Time Period ("RTP") should be the same as the Class Period – 1/21/16 to 11/1/17. Plaintiffs' position is that the RTP should be 1/1/15 to 6/30/18. Plaintiffs' position is supported by: (i) allegations in the Complaint demonstrating that the lowered or weakened credit standards for Representatives in Brazil, in effect during the Class Period, were discussed and likely implemented, in 2015, before the Class Period begins, (ii) significant case law that pre and post Class Period discovery is relevant and appropriate, and (iii) Judge McMahon's decision denying the motion to dismiss in this case.

First, as you know, the Court sustained the Complaint in its entirety. The Complaint's allegations are supported by information provided to counsel by confidential witnesses. Several of these witnesses relayed information concerning circumstances and practices on the issue of recruitment in Brazil *that began in 2015*. For example:

- CW-2 stated that the very aggressive recruiting policy, which was referred to as a "recruiting crusade," began in the *second half of 2015*. ¶62.  It is logical then to assume that if the practice began in the middle of the year, plans were underway to implement the practice *earlier in 2015,* if not in late 2014.

- CW-2 stated that an inventory buildup "spiked" in 2015 and that both Messrs. Ribiero and Legher were aware of that fact. ¶85. Thus, if inventory in Brazil spiked at the end of 2015, it was likely growing prior to that *in mid to early 2015*.  Plaintiffs are entitled to probe whether the changes in recruitment standards for Representatives in Brazil were effectuated, even in part, to address the burgeoning inventory problems in Brazil.

- CW-4 likewise stated that *in 2015* during either hiring Campaign 14 or 17, a manager hired 900 Representatives and that her sector was soon "shut down" in 2016 because her delinquency rates reached 45%.  She also said that *in 2015* there was "massive pressure" for results.  ¶71.  CW-4 further stated that the relaxing of hiring standards lasted at least six months and was most prevalent in Avon Campaign Nos. 9, 14, and 17 (*May 2015, July 2015, and October 2015*). ¶73.

- CW-6 confirmed that Avon had loosened its credit standards in Brazil by *September 2015*. ¶79.

Moreover, the Complaint alleges that 4th quarter 2015 results (released in January 2016) and the 2015 Annual Report (released on February 23, 2016) were false and misleading because *during 2015* the Company aggressively loosened its hiring standards, offered minimal to no training for its representatives, and failed to increased bad debt allowances. ¶¶145-47.

Second, Judge McMahon acknowledged the significance of 2015 to the case: "Sometime during 2015 – perhaps as early as May (before the start of the Class Period on January 21, 2016) and certainly by the end of the year – a decision was made to lower the standards for new hires, in particular the credit standards. (*Id.* ¶¶ 60-62.)  Avon understood that by pursuing applicants with worse credit histories, it could increase its Representative numbers more quickly." [*See* ECF 46; page 9].

Third, case law supports Plaintiffs' position that a relevant time period can exceed a class period on both ends.  First, "[a] class period is delimited in order to identify the individuals who claim membership in the class, not to identify the conduct that injured them" and "this is why it is called the '***Class*** Period,' not the 'Liability Period.'" *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 643 n.27 (S.D.N.Y. 2007) (emphasis in original).

A broader relevant time period for discovery than the class period is aligned with the principle that "[a]ny information that sheds light on whether class period statements were false or materially misleading is relevant," and that both pre- and post-class period information is relevant in determining what defendants knew or should have known during the class period. *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001); *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 236-37 (S.D.N.Y. 2006) (pre-class-period statements were "relevant in

determining whether defendants had a duty to make a corrective disclosure during the Class Period" and that post-Class Period statements may be relied upon to confirm what a defendant should have known during the Class Period). *See also Upton v. McKerrow*, 1996 WL 193807 at \*4 (N.D.Ga. Feb.20, 1996) (relevant time period for discovery was six months prior to and six months after close of proposed class period); *In re Seagate Technology II Sec. Litig.*, 1993 WL 293008 at \*2 (N.D.Cal. Jun. 10, 1993) (defendant's request to cut off discovery three weeks after its fraud is "artificial, arbitrary and designed to avoid the production of relevant documents"; ordering four months of discovery after class period); *In re Grand Casinos, Inc.*, 181 F.R.D. 615, 618 (D.Minn. 1998) (allowing discovery for time period beginning one year prior to proposed class period).

Moreover, "post-class period facts may be relied upon to confirm what a defendant should have known during the class period." *In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922 DSF (AJWx), 2012 U.S. Dist. LEXIS 124438, at \*21 (C.D. Cal. Mar. 9, 2012). *See also Brody v. Zix Corp.*, No. 04-CV-1931, 2007 WL 1544638, at \*2 (N.D. Tex. May 25, 2007) (ordering discovery for period of eight months after securities fraud class period ended).

Notwithstanding the weight of authority in support of Plaintiffs' position, we are mindful that discovery in complex cases, such as this one, can be both burdensome and expensive for all parties. In the spirit of compromise, Plaintiffs would be willing to modify the requested start date of the RTP to begin on June 1, 2015. Plaintiffs are not prepared to shorten the end date of the RTP. Thus, Plaintiffs propose a RTP of 6/1/15 – 6/30/18.

Plaintiffs reserve the right to seek additional documents from outside the RTP if, during the course of discovery, it is determined that a different time period is necessary to obtain relevant information.

**Brazilian Locus Limitation**: Certain of the Requests seek corporate level Avon documents not restricted to the Company's operations in Brazil. Defendants have interposed relevance and burden objections to these Requests and assert that Documents will only be searched and produced as they relate to activities in Brazil. *See, e.g.,* Obj. Nos. 11, 21 and Resp. to RFPs Nos. 1, 2, 14, 18, 19, 21, 31. For the purposes of this letter and the M&C process, Plaintiffs refer to this objection as the "*Brazilian Locus Limitation*." This objection will be discussed below as it relates to Defendants' Responses to Specific Requests. Notwithstanding the *Brazilian Locus Limitation*, Defendants have stated that they will not redact comparative information relating to sales regions outside of Brazil if relevant data or information concerning Brazil in such Documents is deemed responsive and not privileged.

**Custodians**: In early December 2019, Defendants provided Plaintiffs with a list of 14 potential custodians based on their research to date. The parties discussed these individuals and Plaintiffs proposed an additional 9 custodians based on our research and investigative efforts. The parties will continue to discuss and finalize the list of custodians once Defendants have had an opportunity to research the additional individuals Plaintiffs proposed on the December 11, 2019 meet and confer. Plaintiffs suggested that the early exchange of organization charts requested by RFP No. 31 may aid the discussion of appropriate custodians for the Requests. Defendants will endeavor to search for and produce certain org charts relating to the Individual Defendants, Avon's Executive Committee and direct-reporting departments, and Avon Brazil's: (i) executive

management; (ii) sales; and (iii) finance divisions during the Class Period.  With respect to the custodians the parties ultimately agree upon, Plaintiffs reserve the right to request additional custodians during the course of discovery, if it becomes apparent that such custodians are necessary to obtain relevant information.

**Senior Management**: Defendants object to Plaintiffs' definition of Avon's "Senior Management" as it relates to certain of the Requests.  Defendants have proposed an alternate definition of Avon's Senior Management that encompasses only (1) the Individual Defendants; and (2) the Avon Executive Committee members during the alleged Class Period who had direct management or oversight responsibility for sales or accounting issues for Avon Brazil.  Responses, at p. 6-7.  During the M&C, Defendants did not identify the size, member names or positions of Avon's Executive Committee who "had direct management or oversight responsibility for sales or accounting issues for Avon Brazil," so the parties did not reach resolution on this issue which affects Defendants' search and production under RFP Nos. 26, 29-31, and 37.

**Specific Requests:**

**RFP Nos. 1-7, 9, 11-16, 18, 19, 21-26, 28, 30-32, 46-47, 50, 51**: With the below exceptions, the only limitations on Defendants' search and production will be imposed by the list of custodians and search terms employed and the ultimate agreed-upon RTP.

a) For **RFP Nos. 1, 2, 14, 18, 19, 21, 31**, Defendants also assert the *Brazilian Locus Limitation*. With respect to RFP Nos. 1, 2, 14, 18, 19, 21, 31, Plaintiffs agree, without limitation, that production under these Requests can be limited to Brazil.

b) For **RFP No. 2**, Plaintiffs object to Defendants' limitation that only Documents "sufficient to show" actuals for each fiscal quarter will be produced.  Documents, including emails and any periodic reports, concerning actual or realized churn, Retention Rates, declining or increasing number of Brazilian Reps, delinquency rates, and ability to collect Representative debt in Brazil *during the fiscal quarters* of the RTP is highly relevant and should be produced.  Among other reasons, the timeliness of Defendants' knowledge of, or access to, information concerning these issues is probative of both falsity and scienter.

c) For **RFP Nos. 26, 29-31, 37**, the parties are still discussing Defendants' proposed definition of "Senior Management" as it relates to these Requests.

d) For **RFP No. 15,** Defendants represented that the language "sufficient to show" in Defendants' Response is not intended to limit production which will include Documents concerning any exceptions (except on an individual Representative level) to Avon's policies regarding the ordering of product by Representatives in Brazil with delinquent accounts.

**RFP No. 8**: The parties agreed that Defendants will search for blank application forms for Representatives in Brazil, including any modifications to such forms.

**RFP No. 10:** Plaintiffs are willing to limit this Request to training materials for representatives and Documents concerning how to better retain Representatives and hire/engage qualified Representatives in Brazil.

**RFP No. 17:** With respect to subsection (d), Defendants have agreed to search for Documents concerning any Avon employee(s) assigned to address, even in part, issues surrounding shipment of unrequested product in Brazil.

**RFP No. 20:** Defendants have agreed to look into the types of reports available at the end of sales campaigns, including but not limited to the "Daily."

**RFP No. 29:** Plaintiffs are willing to limit this Request to Documents concerning the average or median: (i) overall debt loads, (ii) gender or sex; (iii) education, and (iv) age of Avon's Representatives in Brazil, and any material changes in any of these "demographics" during the RTP.

**RFP No. 33**: Plaintiffs are willing to limit this Request to Documents concerning Avon's compliance with GAAP and IFRS as it relates to bad debt expense for Avon Brazil.

**RFP No. 34**: Plaintiffs are willing to limit this Request to Documents concerning any SOX sub-certifications for Avon Brazil.

**RFP No. 35**: Plaintiffs are willing to limit this Request to Documents sent or received by a private investor or potential private investor relating to Avon's operations, finances, management, or business development with respect to the issues in the Complaint.

**RFP No. 36**: Plaintiffs are willing to limit this Request to Documents between Avon and any stock market analysts, stock brokers, reporters for any news media, or other securities industry representatives, Concerning Avon's activities, financial results, or performance, Including any presentation or speeches given by Avon concerning Brazil and the issues in the Complaint. Publicly available documents need not be produced.

**RFP No. 37**: Plaintiffs are willing to limit this Request to Documents Concerning the voluntary or involuntary termination, retirement, discipline, discharge, resignation, reassignment, transfer, or suspension  Including Communications Concerning such resignation or terminations resignation or termination letters, and any severance or separation agreements, for the following individuals: 1) Sherilyn McCoy, 2) James Scully, 3) David Legher, and 4) Gustavo Barreto.

**RFP No. 38:** Plaintiffs are willing to postpone production under this Request but reserve the right to seek production later during discovery after reasonable notice to Defendants and discussion between the parties.

**RFP No. 39:** Plaintiffs are willing to limit this Request to the Individual Defendants excluding: 1) Defendants' families and interested entities; and 2) excluding the production of publicly available reports filed with the SEC such as Form 4s and 144s.

**RFP No. 40**:  Plaintiffs are willing to limit this Request to the trading plans, if any, of the Individual Defendants effective during the Class Period even if entered before the Class Period.

**RFP No. 41**:  Plaintiffs are willing to postpone production under this Request but reserve the right to seek production at any time during discovery after reasonable notice to Defendants and discussion amongst the parties.

**RFP No. 42**:  Plaintiffs contend that this Request as drafted is reasonable and not burdensome because it is limited only to those persons who will be deposed in this case. Accordingly, Plaintiffs stand on this request as drafted: "Human resources and custodial files for all current and former Avon employees or independent contractors who will be deposed in this action."  Plaintiffs agree that production pursuant to this Request can be postponed until fact depositions are noticed.  But responsive non-privileged Documents must be produced no later than at least 10 days prior to the deposition(s) at issue.

**RFP No. 43**:  Plaintiffs are willing to limit this Request to all Documents Concerning discussion, evaluation, or analysis of any changes in Avon's share price *on the alleged corrective disclosure dates*.

**RFP No. 44:**  Plaintiff explained during the M&C that this Request encompasses Documents received pursuant to non-party subpoenas issued in this case and Documents received informally from any non-parties concerning issues in the Complaint.

**RFP No. 45:**  Defendants assert that there are no non-privileged Documents responsive to this Request.

**RFP No. 48:**  Plaintiffs propose that Defendants produce responsive non-privileged Documents no later than 14 days before Plaintiffs' reply on class certification is due.

**RFP Nos. 49, 52**:  Plaintiffs are willing to postpone production under these Requests but reserve the right to seek production at any time during discovery after reasonable notice to Defendants and further discussion amongst the parties.

Please let me know if you disagree with any of the above. Plaintiffs remain available to meet and confer about the search terms, custodians, Relevant Time Period, and remaining outstanding issues at your earliest convenience.

Sincerely yours,

Gregory M. Nespole

cc:    Christine Fox, Esq.; Carol Villegas, Esq.; Ross Kamhi, Esq.; Sebastian Tornatore, Esq.