UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Avon Products Inc. Securities Litigation | No. 19-cv-01420-MKV<br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS
<u>ACTION SETTLEMENT</u>**

LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
(212) 363-7500

*Plaintiffs' Lead Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................... 2

I.     LEAD PLAINTIFF'S INVESTIGATION AND PROCEDURAL HISTORY ................. 2

     A.    Appointment of Lead Plaintiff and Investigation .................................... 2

     B.    The Amended Complaint is Filed ........................................................... 3

     C.    Judge McMahon Sustained the Amended Complaint ............................... 5

     D.    The Parties Mediated the Claims and Achieved a Settlement ................... 6

II.    NEGOTIATION OF THE SETTLEMENT AND ITS TERMS ......................................... 6

ARGUMENT ........................................................................................................ 7

I.     Preliminary Approval of the Settlement is Warranted ........................................ 7

     A.    Standards for Preliminary Approval of a Proposed Class Action Settlement ......................................................................................... 7

     B.    Rule 23(e)(2)(A): Zealous Representation ............................................. 8

     C.    Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel .................. 9

     D.    Rule 23(e)(2)(C): The Settlement Significantly Benefits the Settlement Class ............................................................................................. 10

          1.    Despite Strong Claims, Many Risks to a Recovery Remained ................. 10

          2.    The Claims Processing and Distribution Process is Effective ................. 13

          3.    The Settlement Does Not Excessively Compensate Lead Counsel .......... 14

     E.    Rule 23(e) (2)(D): Settlement Class Members Are Treated Equitably ................ 15

II.    PRELIMINARILY CERTIFICATION OF THE SETTLEMENT CLASS ..................... 16

     A.    The Settlement Class Meets the Requirements of Rule 23(a) .............................. 17

          1.    Rule 23(a): Numerosity .......................................................................... 17

2. Rule 23(a)(2): Questions of Law or Fact Are Common ......................... 17

3. Rule 23(a)(3): Lead Plaintiff's Claims Are Typical .................................. 18

4. Rule 23(a)(4): The Lead Plaintiff is Adequate .......................................... 19

B. The Requirements of Rule 23(b)(3) Are Satisfied ................................................ 20

1. Common Legal and Factual Questions Predominate............................... 20

2. A Class Action Is Superior to Other Methods of Adjudication ............... 22

III. THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ......................... 22

IV. PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ......................... 25

CONCLUSION ................................................................................................................ 25

## TABLE OF AUTHORITIES

### CASES

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972) ..................................................................................... 21

*Amchem Prods,. Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................... 21

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
  568 U.S. 455 (2013) ..................................................................................... 21

*Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) ..................................................................... 15

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ................................................................................ 21, 22

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006) .................................................................. 17

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) .......................................................................... 18

*City of Providence v. Aeropostale, Inc.*,
  No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................... 15

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ............................................................................ 17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ...................................................................................... 21

*Granada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ........................................................................ 12

*In re "Agent Orange" Product Liability Litigation*,
  597 F.Supp. 740 (E.D.N.Y.1984) ................................................................... 11

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
  271 F. App'x. 41 (2d Cir. 2008) ..................................................................... 24

*In re Advanced Battery Techs. Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................ 9, 11

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................ 11

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  293 F.R.D. 459 (S.D.N.Y. 2013) ..................................................................... 7

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) ..................................................................... 7

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992) ...................................................................................... 20

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................... 13

*In re Globalstar Sec. Litig.*,
   No. 01-1748, 2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ...................................... 18

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................... 17

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................................... 9

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) ................................................................................. 17

*In re Marsh & McLennan Cos., Sec. Litig.*,
   No. 04 civ 8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)................................ 19

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................... 16

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ....................................................................... 11

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015) ............................................................................... 18

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................................... 9

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................... 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................... 1

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ................................................................................. 18

*In re Platinum & Palladium Commodities Litig.*,
   No. 10 cv 3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ................................... 9

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................................. 20

*In re Priceline.com, Inc. Sec. Litig.*,
   No. 3:00CV1884AVC, 2007 WL 2115592 (D. Conn. July 20, 2007) ...................... 13

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ............................................................................... 17

*In re Schering-Plough Corp. Sec. Litig.*,
   No. 01-CV-0829 (KSH/MF), 2009 WL 5218066 (D.N.J. Dec. 31, 2009) ............... 13

*In re Synthroid Mktg. Litig,*
  264 F.3d 712 (7th Cir. 2001) ............................................................................. 12

*In re Twinlab Corp. Sec. Litig.,*
  187 F. Supp. 2d 80 (E.D.N.Y. 2002) ................................................................... 19

*In re Union Carbide Consumer Prods. Bus. Sec. Litig.,*
  718 F. Supp. 1099 (S.D.N.Y. 1989) .................................................................... 11

*In re Veeco Instruments, Inc., Sec. Litig.,*
  235 F.R.D. 220 (S.D.N.Y. 2006) .................................................................. 19, 21

*In re Vivendi Univ., S.A. Sec. Litig.,*
  242 F.R.D. 76 (S.D.N.Y. 2007) ........................................................................... 18

*Lizondro-Garcia v. Kefi LLC,*
  300 F.R.D. 169 (S.D.N.Y. 2014) ........................................................................... 9

*Lomeli v. Sec. & Inv. Co. Bahrain,*
  546 F. App'x. 37 (2d Cir. 2013) ......................................................................... 24

*Mullane v. Cent. Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950) ............................................................................................ 23

*n re Giant Interactive Grp., Inc. Sec. Litig.,*
  279 F.R.D. 151 (S.D.N.Y. 2001) ......................................................................... 15

*Priddy v. Edelman,*
  883 F.2d 438 (6th Cir.1989) ............................................................................... 12

*Roach v. T.L. Cannon Corp.,*
  778 F.3d 401 (2d Cir. 2015) ............................................................................... 21

*Robidoux v. Celani,*
  987 F.2d 931 (2d Cir. 1993) ............................................................................... 19

*Shapiro v. JPMorgan Chase & Co.,*
  No. 11 Civ8331, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ......................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) ....................................................................... 7, 23, 24

*Weinberger v. Kendrick,*
  698 F.2d 61 (2d Cir. 1982) ................................................................................. 16

*West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd,* 440 F.2d
  1079 (2d Cir. 1971) ............................................................................................ 12

*Yang v. Focus Media Holding Ltd.,*
  No. 11-9051, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ................................... 7

## STATUTES

15 U.S.C. § 78u-4(a)(4) ........................................................................................... 15

15 U.S.C. §78u-4 ..................................................................................................... 23

## OTHER AUTHORITIES

Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements – 2019 Review and
    Analysis at 1 (Cornerstone Research 2020) ............................................................................. 12

William B. Rubenstein,
    Newberg on Class Actions §13:12 (5th Ed. 2015) ................................................................. 7

## RULES

Fed. R. Civ. P. 23(a) ............................................................................................................. passim

Fed. R. Civ. P. 23(b) ............................................................................................................. passim

Fed. R. Civ. P. 23(c) ............................................................................................................... 7, 23

Fed. R. Civ. P. 23(e) ............................................................................................................. passim

Court-appointed Lead Plaintiff Holly Ngo ("**Lead Plaintiff**"), on behalf of herself, additional named plaintiff David Klungle and all other members of the proposed Settlement Class, submits this memorandum of law in support of her unopposed motion for preliminary approval of the proposed settlement (the "**Settlement**") of the above-captioned litigation (the "**Action**").[1]

## PRELIMINARY STATEMENT

On August 21, 2020, Plaintiffs and defendants Avon Products, Inc. ("**Avon**" or the "**Company**"), Avon's former Chairman and CEO Sherilyn S. McCoy ("**McCoy**"), COO James S. Scully ("**Scully**"), James S. Wilson, and David Legher (together with Avon, "**Defendants**") entered into a Stipulation and Agreement of Settlement (the "**Stipulation**"), which sets forth the terms and conditions of the Settlement of the Action. *See* Exhibit 1 to the Declaration of Gregory M. Nespole ("**Nespole Decl.**"), filed herewith.

The Settlement provides a $14.5 million cash recovery to resolve the Action against Defendants. Lead Plaintiff respectfully submits that the Settlement warrants preliminary approval given that it is the result of vigorous arm's-length negotiations by experienced counsel, represents a favorable recovery well within the range of reasonableness, and is likely to meet all of the approval factors required by Fed. R. Civ. P. 23(e) and Second Circuit precedent. Preliminary approval is, therefore, appropriate. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 60 (E.D.N.Y. 2019).

The proposed Preliminary Approval Order, submitted herewith and attached as Ex. A to the Stipulation, will preliminarily approve the Settlement and approve the forms and methods for providing notice of the Settlement to potential Settlement Class members. A Final Approval Hearing will then be held so that the Parties and Settlement Class members may present arguments

---

[1] Capitalized terms not otherwise defined herein have the same meanings as in the Stipulation. Unless otherwise noted, citations to ¶__ are to the Amended Complaint (ECF 32), which is incorporated herein by reference.

and evidence for and against the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate.

To facilitate this process, the proposed Preliminary Approval Order will, *inter alia*: (i) preliminarily approve the Settlement on the terms in the Stipulation; (ii) preliminarily certify the Action as a class action and the Lead Plaintiff as class representative and preliminarily appoint Lead Counsel as class counsel, for purposes of the Settlement; (iii) approve the form and content of the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("**Notice**"), the Summary Notice, and Proof of Claim form ("**Claim Form**") attached as Exhibits A-1, A-2 and A-3 thereto; (iv) find that the procedures for distributing the Notice and Claim Form and publishing the Summary Notice, as provided in the Preliminary Approval Order, are the best notice practicable under the circumstances and comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("**PSLRA**"); (v) set a date and time for the Final Approval Hearing, at which the Court will consider final approval of the Settlement, the proposed Plan of Allocation for distributing the proceeds of the Settlement, and Lead Counsel's application for attorneys' fees and expenses, including reimbursement of costs and expenses to Plaintiffs pursuant to the PSLRA; and (vi) appoint Epiq Global as the Claims Administrator.

## **FACTUAL AND PROCEDURAL BACKGROUND**

## I. **LEAD PLAINTIFF'S INVESTIGATION AND PROCEDURAL HISTORY**

### A. **Appointment of Lead Plaintiff and Investigation**

On February 14, 2019, plaintiff Manzoor Bevinal filed a class action complaint in the United States District Court for the Southern District of New York (the "**Court**") against Defendants on behalf of himself and all persons or entities who purchased or otherwise acquired the publicly traded common stock of Avon Products, Inc. between January 21, 2016 and November

1, 2017 inclusive (the "**Class Period**"), alleging violations of 15 U.S.C. §§ 78j(b) and 78t(a) of the Securities Exchange Act of 1934 and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder. Nespole Decl., ¶ 4; ECF 1.

Pursuant to the PSLRA, on February 14, 2019, counsel for plaintiff Bevinal published notice informing other potential class members of their right to move for appointment as lead plaintiff for the putative Class. Nespole Decl. ¶ 5. On April 15, 2019, Holly Ngo moved to be appointed lead plaintiff and moved for her attorneys, Levi & Korsinsky, LLP ("**Levi & Korsinsky**"), to be appointed Lead Counsel. On June 3, 2019, the Court appointed Lead Plaintiff as such, and appointed Levi & Korsinsky as Lead Counsel. *Id.* ¶ 6; ECF 16 .

Thereafter, Lead Plaintiff, through counsel, diligently investigated the claims, defenses, and underlying events and transactions that are the subject of the Action. The investigation included analyzing, among other things, publicly filed documents and records, investigative reports, and news stories; and reviewing and corroborating the allegations and developments. Lead Plaintiff, through counsel, also contacted over 60 potential witnesses and ultimately interviewed 40 of them. Of the witnesses interviewed, Plaintiffs used seven (7) as Confidential Witnesses – all former employees, independent contractors, and outside sales representatives ("**Representatives**") of Avon who provided additional information supporting the allegations. In addition, Lead Counsel consulted with certain experts regarding issues of market efficiency and damages suffered by Lead Plaintiff and the class resulting from the claims in the Action. Nespole Decl., ¶ 7.

**B.     The Amended Complaint is Filed**

Avon is one of the world's largest direct sellers of beauty and personal care products, using a direct-selling model in which Representatives purchase products directly from Avon on credit and then sell the products to consumers. ¶ 37. Thus, the growth and sustainability of Avon's business is wholly dependent on the ability of its Representatives to generate recurring sales and

Avon's ability to hire, train, and retain those Representatives. ¶ 2. To be hired, candidates must meet Avon's country-specific credit standards. ¶ 4.

On July 24, 2019, based on an extensive investigation aided by Plaintiffs' Counsel, Lead Counsel filed the operative Corrected Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (the "**Amended Complaint**") on behalf of Lead Plaintiff Ngo and additionally named plaintiff David Klungle. Nespole Decl. ¶ 8; ECF 32. The Amended Complaint alleges that during the Class Period, Avon and the individual defendants tried to create the illusion that Brazil was still a growth center for Avon by, among other things, dramatically lowering credit standards for their Representatives in Brazil. Thus, during the Class Period, Defendants concealed that they dramatically loosened credit standards for Brazilian Representatives to mask declining performance. Defendants also stopped training Avon's Brazilian Representatives during the Class Period another critical fact Defendants allegedly affirmatively misrepresented. Nespole Decl. ¶ 8.

Indeed, in the second half of 2015, there was a Company-wide decision to lower credit standards to attract new Representatives in Brazil. Amended Complaint ¶ 79. To accelerate growth in Brazilian Representatives and associated sales, the Company allegedly materially lowered its credit standards for new Representative approval and began extending credit to individuals already in debt with lower credit scores. ¶ 58.

The reduced credit standards for new Representatives continued throughout most of 2016 and the result was predictable although hidden from the market. The massive onboarding of uncreditworthy, or reduced creditworthy, Representatives nominally increased the amount of product purchased (Avon's "sales"), but was inevitably accompanied by significantly increased delinquencies and, ultimately, the need to write off bad debt. ¶ 11 *et seq.*

Instead of disclosing this material information, Defendants allegedly falsely assured the market that both sales and Representative growth were increasing because of robust recruitment. When Avon's new Brazilian Representatives predictably fell heavily into debt and could not pay for the merchandise they purchased on credit, Defendants allegedly continued to misrepresent Avon's business practices and used aggressive debt collection tactics on their own Representatives to further hide the scope of the problem.

Avon's securities ultimately plunged in value when the truth was allegedly revealed to the market through a series of partial corrective disclosures beginning on February 16, 2017, May 4, 2017 and August 3, 2017, and culminating in a final disclosure on November 2, 2017. On each of these dates, the market allegedly learned progressively more about how: (i) Avon's Brazilian business was struggling; (ii) Defendants had loosened credit terms in its most important market to hide these struggles; and (iii) as a result, the Company was dealing with mounting uncollectable debt. ¶¶ 182-205, 213-14. On November 2, 2017, Defendants allegedly disclosed that higher bad debt was "driven by more relaxed credit policies for incoming representatives [in 2016]." ¶ 223.

### C.      Judge McMahon Sustained the Amended Complaint

Following full briefing by the Parties, on November 18, 2019, Judge Colleen McMahon entered her Decision and Order Denying Defendants' Motion to Dismiss. ECF 46. Judge McMahon's decision held that the Complaint credibly pled that, throughout the Class Period, Defendants issued false and misleading statements concerning: (i) Avon's recruitment practices (*see, e.g.*, ¶¶ 135, 140, 141), the ongoing credit crisis (*see, e.g.*, ¶¶ 199-202), and the resulting increase in bad debt (*see, e.g.*, ¶¶ 138, 145, 152, 160, 164, 178, 181, 192, 207, 216); (ii) Avon's accounting practices, including the Company's failure to increase its allowance for bad debts to account for the changes to its credit terms (*see, e.g.*, ¶¶138, 145, 152, 160, 164); and (iii) Avon's training and support systems for new Representatives (*see, e.g.*, ¶¶132, 211, 232-36). *See* ECF 46.

On December 12, 2019, the Court entered a Rule 26(f) Civil Case Management Plan and Scheduling Order, ECF 50, and fact discovery commenced.

On February 5, 2020, the Action was reassigned from Judge McMahon to Judge Mary Kay Vyskocil upon her appointment to the bench from the U.S. Bankruptcy Court. Nespole Decl. ¶ 10.

On February 14, 2020, Plaintiffs moved for certification of a class of purchasers of Avon common stock during the period from January 21, 2016 to November 1, 2017, inclusive (*i.e.,* the Class Period), and who were damaged thereby. ECF 52.

On May 13, 2020, Defendants filed a Motion to Approve Request for International Judicial Assistance, ECF 59, which the Court subsequently denied without prejudice..

On June 9, 2020, pursuant to the Court's request, the Parties filed letter briefs concerning Defendants' Motion to Compel Discovery of Confidential Witnesses, ECF No. 64, which the Court subsequently granted.

### D.   The Parties Mediated the Claims and Achieved a Settlement

On June 18, 2020, the Parties participated in a Zoom mediation session held before mediator Robert A. Meyer, Esq. of Judicial Arbitration and Mediation Services. Following additional discussions occurring over the next several days among the Parties with the assistance of the Mediator, the Parties reached an agreement to settle this Action and signed a Memorandum of Understanding (the "**MOU**") on July 2, 2020. Nespole Decl. ¶ 12.

## II.   NEGOTIATION OF THE SETTLEMENT AND ITS TERMS

Following the Parties' entry into the MOU, the Parties negotiated the Stipulation. The Stipulation, which sets forth the final terms and conditions of the Settlement, includes, among other things, a release of all claims asserted against Defendants in the Action, and related claims, in return for a cash payment by, or on behalf of, the Defendants in the amount of $14,500,000 into a Settlement Fund for the benefit of the Settlement Class. Nespole Decl. ¶ 13. Given the significant

6

risks of proceeding with further litigation, including the risks that Defendants would be successful at summary judgment or trial, Lead Plaintiff and Lead Counsel determined that the proposed Settlement represents the best possible result for the Settlement Class. *Id.* ¶¶ 15-19.

## ARGUMENT

## I.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.   Standards for Preliminary Approval of a Proposed Class Action Settlement

Public policy favors settlement of class action litigation. *Yang v. Focus Media Holding Ltd.,* No. 11-9051, 2014 WL 4401280, at *3 (S.D.N.Y. Sept. 4, 2014) ("[W]hen exercising discretion to approve a settlement, courts are mindful of the strong judicial policy in favor of settlements") (All internal quotations and citations in this Memorandum are omitted unless otherwise noted). This is especially so in securities class actions. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the court for approval, and the settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Citigroup Inc. Bond Litig.,* 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.,* 293 F.R.D. 459, 464 (S.D.N.Y. 2013). District Court review of a class action settlement proposal is a two-step process. WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS §13:12 (5th Ed. 2015). The first step is a preliminary, pre-notification determination of whether "notice of the proposed settlement should be sent to the class." *Id.* at §13:13.

Rule 23(e) was recently amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the

likelihood that the court will be able to finally approve the settlement, after considering the required factors enumerated in Rule 23(e)(2), and certify the class. Rule 23(e)(1)(B). Rule 23 was previously silent as to how courts were to evaluate whether a proposed settlement was fair, adequate, and reasonable, but with the recent amendment, Rule 23(e)(2) now provides that the Court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

    (A)    class representatives and counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, considering:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Rule 23 amendment has not changed the overall standard for approving a settlement, *i.e.* whether the settlement is fundamentally fair, adequate, and reasonable.

    **B.**    <u>**Rule 23(e)(2)(A): Zealous Representation**</u>

    Lead Plaintiff and Lead Counsel have zealously prosecuted this Action on behalf of the class since their appointment as such and will continue to do so throughout the administration of the Settlement to secure and deliver its benefits. Ms. Ngo sought appointment as lead plaintiff, filed the Amended Complaint, and has overseen counsel during the course of Lead Counsel's investigation and negotiations with Defendants. Nespole Decl. ¶¶ 6-9. Lead Counsel likewise conducted a comprehensive investigation that resulted in the Amended Complaint. *Id.*, ¶¶ 7-8.

Lead Counsel also evaluated the discovery produced to date, the risks in continuing to litigate the Action, and negotiated vigorously to secure the recovery for the Class. *Id.,* ¶¶ 11-15. Lead Plaintiff was consulted on the terms of the Settlement and has expressed her support and continued willingness to protect the Class. *Id.,* ¶ 15; *see also* Declaration of Holly Ngo at ¶¶ 3-8. Accordingly, the Settlement Class has been, and remains, well represented.

### C. Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

"Where the proposed settlement appears to be the product of serious, informed, non–collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *accord, In re Initial Pub. Offering Sec. Litig.,* 243 F.R.D. 79, 87 (S.D.N.Y. 2007). Thus, in considering preliminary approval, courts look to both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10 cv 3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014). Thus, "[p]reliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014).

A strong presumption of fairness attaches where a settlement is "reached by experienced counsel after arm's length negotiations." *In re Advanced Battery Techs. Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014). The Settlement is entitled to this presumption because it was achieved after arm's-length negotiations by well-informed and experienced counsel on both sides[2] who were

---

[2] Defendants were represented by sophisticated counsel at Cravath Swaine & Moore LLP.

knowledgeable about the strengths and weaknesses of the case prior to finalizing the Stipulation. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts give "great weight … to the recommendations of counsel[.]"). Here, Plaintiffs are represented by Levi & Korsinsky, an experienced firm skilled in securities litigation with a long and successful track record in such cases. Nespole Decl., Ex. 2. Lead Counsel believes that the achieved Settlement is an excellent result for the Class given the attendant risks in the ongoing litigation and recommends that the Settlement be preliminarily approved. *Id.,* ¶¶ 16-19. Levi & Korsinsky was aided by Labaton Sucharow LLP, which assisted with the investigation and contributed to the prosecution of the claims at the request of Lead Counsel. *Id.*, ¶ 8; www.labaton.com.

Second, Lead Plaintiff and Lead Counsel only agreed to the Settlement after a number of discussions between Lead Counsel and Defendants' Counsel about their respective positions, and Lead Counsel's rigorous investigation of the merits and risks to the Action. *Id.,* ¶¶ 7, 15-19. Lead Plaintiff and Lead Counsel entered into the Settlement after engaging in mediation and upon the recommendation of a highly regarded mediator experienced in securities class actions. *Id.*, ¶¶ 11-12. The procedurally fair manner in which this Settlement was reached weighs strongly in favor of granting approval.

### D. Rule 23(e)(2)(C): The Settlement Significantly Benefits the Settlement Class

#### 1. Despite Strong Claims, Many Risks to a Recovery Remained

To determine whether a proposed settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits to class members and the immediacy and certainty of a substantial recovery. Although Lead Plaintiff and Lead Counsel believe the claims are strong, they acknowledge that Defendants will advance substantial arguments about liability and damages. Indeed, pursuing the Settlement Class' claims through a contested motion

for class certification, summary judgment, trial, and appeals would pose significant challenges and uncertainty. It is well known that "[s]ecurities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet." *In re Advanced Battery*, 298 F.R.D. at 177.

Lead Plaintiff would have faced significant hurdles in proving her case on liability. Litigation of the claims alleged in this case was expected to raise a number of complex questions concerning scienter, loss causation, and damages that would require substantial efforts by Lead Plaintiff and Lead Counsel. Assuming the claims survived a motion for summary judgment, a jury trial would have required substantial factual and expert testimony, which is always uncertain. *See, e.g., In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants."). Whatever the outcome at trial, it was virtually certain that an appeal would have been taken. All of the foregoing would have posed considerable expense to the Parties and would have delayed any potential recovery for several years.

Lead Plaintiff and Lead Counsel are cognizant of the fact that assuming success on all issues of liability and damages would be imprudent. Nespole Decl., ¶ 16. Accordingly, the "dollar amounts are judged not in comparison with possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of Plaintiff's case." *In re Union Carbide Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (quoting *In re "Agent Orange" Product Liability Litigation*, 597 F. Supp. 740, 762 (E.D.N.Y.1984). Thus, the arguable possibility that the Settlement Class "might have received more if the case had been fully litigated

[is] no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (quoting *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir.1989); *see also In re Synthroid Mktg. Litig*, 264 F.3d 712, 716-17 (7th Cir. 2001) (affirming settlement over objection that "the settlement should have been larger" where the plaintiffs "would have had a headache trying to get any judgment on the merits"). If this Action was fully litigated, Settlement Class members might have received substantially less than the proposed Settlement, or even nothing at all. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). Lead Counsel, as a fiduciary to the Settlement Class, must always be mindful of that possibility in considering whether or not to recommending the acceptance of a settlement and so too should the Court in considering its approval.

Through the Settlement, Lead Plaintiff has achieved a significant and real recovery for the Settlement Class at an early stage of litigation. The proposed $14,500,000 cash settlement is well within the range of approval in light of the significant risks that Lead Plaintiff and the Settlement Class would face in establishing liability and damages. First, it is greater than the median settlement value in securities class action settlements in 2019, which was reported by Cornerstone Research to be $11.5 million. *See* Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements – 2019 Review and Analysis at 1 (Cornerstone Research 2020). During the period from 1996 to 2018, essentially since the passage of the PSLRA, the median settlement value of securities class actions has been $8.8 million. *Id.*

A major challenge in establishing liability is that Avon's operations with respect to the claims alleged herein were in Brazil and London. Prosecuting this Action would have required significant discovery from both locations during the pandemic, with no guarantees that third parties located there would be willing or allowed to cooperate or travel. Nor, as a practical matter, is there

any way for Lead Plaintiff to cost effectively compel such compliance from third parties.

"[W]ithout the proposed settlement, class members might well receive far less than the settlement would provide to them, even if they could prevail on their claims." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (finding settlement reasonable despite fact that settling defendants assets "do not come close" to the amount of liability alleged and noting that the main available source for funding the settlement would likely be consumed by the defense costs if litigation continued); *In re Priceline.com, Inc. Sec. Litig.,* No. 3:00CV1884AVC, 2007 WL 2115592, at *3 (D. Conn. July 20, 2007) (finding proposed settlement amount reasonable, in part, given the available amount of insurance policies to fund settlement and the fact that current liabilities exceeded Priceline's current assets). Moreover, as demonstrated in filings made by Defendants in connection with a proposed schedule extension jointly sought by the Parties, Avon had suffered significant business disruption as a result of the pandemic.

Lead Plaintiff and Lead Counsel thus believe that the Settlement is a favorable outcome for the Settlement Class as it secures a certain benefit in light of the risks to proving liability and the costs and difficulties in litigating this case. Notably, the litigation could go on for years with no improvement while at the same time depleting any available funds that could be used to compensate investors. Even if a judgment was to be ultimately achieved, enforcement and collection of any judgment would likely be complicated and carry substantial expenses. Thus, although Avon could "arguably could pay more, pushing for more in the face of risks and delay would not be in the interests of the class." *In re Schering-Plough Corp. Sec. Litig.*, No. 01-CV-0829 (KSH/MF), 2009 WL 5218066, at *5 (D.N.J. Dec. 31, 2009).

### 2.   The Claims Processing and Distribution Process is Effective

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced Claims Administrator, Epiq Global. The Claims

Administrator will employ the simple and well-established methodology for the processing of claims in a securities class action such as in this Action. Namely, potential class members will submit the Court-approved Proof of Claim form that provides simple and specific instructions concerning the necessary information they must present to the Claims Administrator in order for it to accurately process their claim and the deadline by which they must do so. Based on the information provided by the Class Members, the Claims Administrator will confirm each Class Member's eligibility to participate in the recovery by calculating their respective "Recognized Claim" based on the Court-approved Plan of Allocation, and ultimately determine each Class Member's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶34, Notice at 10-16.

After receiving final approval of the Settlement, the passing of all applicable deadlines, and Court approval to begin the distribution process, the Authorized Claimants will be issued their checks based on their *pro rata* allocation of the Net Settlement Fund based on their Recognized Claims. If after the initial distribution unclaimed funds remain in the Net Settlement Fund and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of the remaining funds (less the estimated expenses for the additional distribution). Additional distributions will proceed in the same manner until it is no longer feasible or economical to conduct further distributions. In such an event, the remainder of the Net Settlement Fund will be issued to a Court-approved non-sectarian, §501(c)(3) non-profit organization as a *cy pres* recipient. Stipulation ¶ 16.

### 3.     The Settlement Does Not Excessively Compensate Lead Counsel

The proposed Settlement does not grant excessive compensation to Lead Counsel. As an initial matter, the reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for attorneys' fees and expenses, on behalf of Plaintiffs' Counsel. The Settlement does not contemplate any specific award to Plaintiff's Counsel.  Lead Counsel will seek

compensation out of the Settlement Fund under the common fund doctrine, and will not be compensated by Defendants.  The Notice explains that Lead Counsel will seek no more than 30% of the Settlement Fund as fees and no more than $210,000 in litigation expenses, including awards to Plaintiffs pursuant to the PSLRA.

A 30% fee award would be well within the percentages that courts in the Second Circuit approve in securities class actions with comparable recoveries. *See, e.g., City of Providence v. Aeropostale, Inc.,* No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at \*20 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015) (awarding 33% of $15 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.,* 279 F.R.D. 151, 165 (S.D.N.Y. 2001) (awarding 33% of $13 million settlement). Counsel will also seek payment of litigation expenses incurred during the prosecution of the Action, estimated at no more than $210,000, plus interest. Pursuant to the Stipulation, the awarded fees and expenses will not be dispersed to the Lead Counsel until the Court finally approves the Settlement. These facts further support preliminarily approving the Settlement.

**E.      Rule 23(e) (2)(D): Settlement Class Members Are Treated Equitably**

The Settlement does not improperly grant preferential treatment to either Plaintiffs or any segment of the Settlement Class. Rather, all members of the Settlement Class, including Plaintiffs, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[3] The proposed Settlement fairly and reasonably allocates benefits amongst the Class Members. All Settlement Class members that were allegedly harmed as a result of the alleged fraud, and that have an eligible claim pursuant to the Plan of Allocation, will receive their

---

[3] Plaintiffs seeking reimbursement of their reasonable costs and expenses (including lost wages) directly related to participating in the Action would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of Plaintiffs' costs and expenses is explicitly contemplated by the PSLRA in addition to receiving their *pro rata* portion of the recovery).  Thus, this factor also weighs in support of granting preliminary approval of the Settlement.

*pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. Notice at 9-16. *See, e.g., In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").[4]

## II.   PRELIMINARILY CERTIFICATION OF THE SETTLEMENT CLASS

In seeking preliminary approval, Lead Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class, which has been stipulated to by the Parties, is "all persons and entities who purchased or otherwise acquired the publicly traded common stock of Avon during the period from January 21, 2016 to November 1, 2017, inclusive, and were allegedly damaged thereby" *See* Stipulation at ¶ 1(pp).[5]

The Second Circuit has long acknowledged the propriety of certifying settlement classes. *See, e.g., Weinberger v. Kendrick*, 698 F.2d 61, 72-73 (2d Cir. 1982) ("The hallmark of Rule 23 is the flexibility it affords to the courts to utilize the class device in a particular case to best serve the ends of justice for the affected parties and to promote judicial efficiencies."). "Certification of a settlement class 'has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re*

---

[4] Respecting Rule 23(e)(2)(C)(iv), the only settlement-related agreements between Lead Plaintiff and Lead Counsel, on the one hand, and Defendants or Defendants' Counsel, on the other hand, are the Memorandum of Understanding, the Stipulation, and the confidential Supplemental Agreement, dated August 21, 2020, concerning the circumstances under which Defendants may terminate the Settlement based on the amount of requests for exclusion from the Settlement Class. *See* Stipulation at ¶ 46. It is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class. The Supplemental Agreement can be provided to the Court in camera or under seal.

[5] Excluded from the Settlement Class are: (i) Defendants; (ii) members of the immediate family of any Defendant who is an individual; (iii) any person who was an officer or director of Avon during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person or entity, in their respective capacity as such; and (vi) any persons or entities who or which exclude themselves by submitting a timely and valid request for exclusion that is accepted by the Court. *Id.*

*IMAX Sec. Litig.,* 283 F.R.D. 178, 186 (S.D.N.Y. 2012). As demonstrated below, the proposed Settlement Class satisfies Rule 23(a) and 23(b)(3).

### A.     The Settlement Class Meets the Requirements of Rule 23(a)

Pursuant  to Rule 23(a), Lead Plaintiff must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. The Settlement Class satisfies these requirements.

#### 1.     Rule 23(a): Numerosity

Numerosity is presumed when a class includes 40 or more members. *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995); *accord, In re Initial Pub. Offering Sec. Litig.,* 260 F.R.D. 81, 90 (S.D.N.Y. 2009). Courts do not need a "precise quantification" to find numerosity, but only a "reasonabl[e] estimate [of] the number of class members" for which "the court may 'make some common sense assumptions' and 'rely on reasonable inferences drawn from the available facts.'" *Bourlas v. Davis Law Assocs.,* 237 F.R.D. 345, 350-51 (E.D.N.Y. 2006) (alterations in original). Consequently, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.,* 269 F.R.D. 298, 304 (S.D.N.Y. 2010). Here, the Settlement Class satisfies numerosity as it likely consists of thousands of investors as Avon stock was publicly traded at all relevant times. Therefore, Rule 23(a)(1) is satisfied.

#### 2.     Rule 23(a)(2): Questions of Law or Fact Are Common

Courts consistently find that securities fraud cases alleging "putative class members have been injured by similar material misrepresentations and omissions" satisfy commonality. *In re*

*Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *see also In re Globalstar Sec. Litig.*, No. 01-1748, 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues."). "[C]ommonality requires that 'there are questions of law or fact common to the class. . . .' Not every 'issue must be identical as to each [class] member, but . . . plaintiff [must] identify some unifying thread . . . ." *In re Vivendi Univ., S.A. Sec. Litig.,* 242 F.R.D. 76, 84 (S.D.N.Y. 2007).

Here, the allegations present several questions of law and fact common to all members of the Settlement Class, including: a) whether Defendants' alleged conduct violated the federal securities laws; b) whether the Defendants' public statements during the Class Period contained material misstatements; c) whether Defendants acted with scienter; d) whether and to what extent the market price of Avon stock was artificially inflated during the Class Period; and e) whether the members of the Settlement Class sustained damages as a result of the conduct complained of, and, if so, the proper measure of damages. Courts in this district have routinely found that these types of common questions satisfy Rule 23(a)(2). *See, e.g., In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 235 (S.D.N.Y. 2015). The commonality requirement is thus met.

### 3.    Rule 23(a)(3): Lead Plaintiff's Claims Are Typical

The requirement of Rule 23(a)(3) that the claims of the class representatives be "typical" of the claims of the class is established where, as here, "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). "Typical" does not mean "identical." *In*

*re Marsh & McLennan Cos., Sec. Litig.*, No. 04 civ 8144, 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009). The critical question is whether the proposed class representatives and the class can point to a common "course of conduct" by defendants to support a claim for relief. *Id.*; *see also Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

The same conduct by Defendants injured Lead Plaintiff and the other class members in the same way. The same legal theories apply equally to both. Essentially, Lead Plaintiff alleges that they and the entire Class were damaged because Defendants made false and misleading statements during the Class Period, artificially inflating the value of Avon stock. Accordingly, Lead Plaintiff "ha[s] the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions," satisfying the typicality requirement. *In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (citation omitted); *see also*, *e.g.*, *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality where all class members were harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock"). Thus, typicality has been established.

### 4. Rule 23(a)(4): The Lead Plaintiff is Adequate

In determining whether "the representative parties will fairly and adequately protect the interests of the class," pursuant to Rule 23(a)(4), courts consider: (i) whether the interests of the proposed class representatives are antagonistic to those of other class members; and (ii) whether their counsel are qualified, experienced, and generally able to conduct the litigation. *See In re*

*Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ8331, 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014).

First, no antagonism of interests exists between Lead Plaintiff and the proposed Settlement Class. All Settlement Class members, including Lead Plaintiff, acquired Avon stock during the Class Period, when its value is alleged to have been artificially inflated by false and misleading statements. Thus, the claims of the Settlement Class would prevail or fail in unison, and the common objective of maximizing recovery aligns the interests of Lead Plaintiff and all members of the Settlement Class. *See, e.g.*, *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members." (citing *Drexel*, 960 F.2d at 291)).

Second, Lead Plaintiff has retained qualified counsel. Lead Counsel is amply qualified and experienced and has conducted the Action effectively on behalf of Lead Plaintiff and the Settlement Class. Lead Counsel is an experienced law firm in representing plaintiffs in securities class actions in courts throughout the nation. *See* Nespole Decl., Ex. 2, firm resume of Lead Counsel. Accordingly, Rule 23(a)(4) is satisfied.

### B.    The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The proposed Settlement Class meets this standard.

### 1.    Common Legal and Factual Questions Predominate

Rule 23(b)(3) does not require "an absence of individual issues," but instead that

"resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). In making this determination, "a court's inquiry is directed toward whether the issue of liability is common to the members of the class." *Veeco*, 235 F.R.D. at 240. The Supreme Court has stated that this requirement is "readily met in certain cases alleging . . . securities fraud." *Amchem Prods,. Inc. v. Windsor,* 521 U.S. 591, 625 (1997).

Here, common questions of law and fact predominate over individual questions because Defendants' alleged fraudulent statements and omissions affected all Settlement Class members in the same manner (*i.e.*, through public statements made to the market and documents publicly filed with the SEC). Materiality "is an objective [question], involving the significance of an omitted or misrepresented fact to a reasonable investor," thus "can be proved through evidence common to the class" and "is a common question for purposes of Rule 23(b)(3)." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds,* 568 U.S. 455, 467 (2013). The same is the case for loss causation, scienter, and falsity. *Erica P. John Fund, Inc.* v. *Halliburton Co.*, 563 U.S. 804, 812 (2011) (loss causation "requires a plaintiff to show that a misrepresentation that affected the integrity of the market price *also* caused a subsequent economic loss," but need not be shown at the class certification stage).

Lead Plaintiff contends that reliance is established in this Action through the application of the "fraud-on-the-market" presumption of reliance detailed in *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988) or under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). Application of *Basic* or *Affiliated Ute* dispenses with the requirement that each Settlement Class Member prove individual reliance on Defendants' alleged misstatements and/or omissions. *See*

*Basic,* 485 U.S. at 241-42.

### 2.  A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets the following non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Each of the applicable factors supports certification. As to the first two factors, there is no evidence that numerous putative class members desire to bring separate individual actions under the federal securities laws. With respect to the third factor, several facts make it desirable to concentrate the claims in this Court, including that: i) Avon stock traded on the NYSE during the Class Period; and ii) this Court is already familiar with the factual and legal issues in the case.

Indeed, Lead Counsel is not aware of any individual class member interested in bringing its own action against Defendants for securities fraud. Finally, without the settlement class device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to settle. Certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of implementing the proposed Settlement.

## III.   THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The proposed Notice and Summary Notice, attached respectively as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order, satisfy due process, the federal rules, and the PSLRA.

Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Due process is satisfied if the notice "fairly apprise[s] the [prospective] members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.*, 396 F.3d at 114.

Collectively, the proposed forms of notice here describe, *inter alia*: (i) the terms of the Settlement and the recovery; (ii) the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable to all Settlement Class members; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Settlement Class and objecting; (v) the procedure for submitting a claim; (vi) the proposed Plan of Allocation for distributing the Settlement proceeds to the Settlement Class; and (vii) the date, time and place of the Final Approval Hearing. The Notice also satisfies the PSLRA's separate requirements by, *inter alia,* stating*:* (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Lead Counsel intends to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) the name, telephone number, and address of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement. 15 U.S.C. §78u-4(a)(7)(A)-(F). Thus, the proposed Notice contains all of the information required by the PSLRA and "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Lomeli v. Sec. & Inv.*

*Co. Bahrain*, 546 F. App'x. 37, 41 (2d Cir. 2013) (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 114).

The proposed notice program uses the "gold standard" method in securities cases for notifying class members: individual notification by mail, publication notice, and dissemination over the Internet using a wire service. Upon entry of the Preliminary Approval Order, the Claims Administrator will mail the Notice to all Settlement Class members who can be identified and located through reasonable effort, using information provided by Avon's transfer agent, as well as information provided by third-party banks, brokers, and other nominees about their customers who may have eligible purchases.[6] Lead Counsel will also cause the Summary Notice to be published in a national business newspaper such as *The Wall Street Journal* or *Investor's Business Daily* and to be disseminated electronically over a national wire service, such as Globe Newswire. In addition, the Notice and Claim Form will be made available for viewing and downloading on the settlement website to be created by the Claims Administrator. The manner of providing notice, *i.e.*, individual notice by mail supplemented by additional publication notice, represents the best notice practicable under the circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process. *See, e.g.*, *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x. 41, 44 (2d Cir. 2008) (notice satisfied due process where notice was "provided through individually mailed notice to all known and reasonably identified class members, publication in several newspapers, and entered on the district court's docket sheet"); *Wal-Mart Stores,* 396 F.3d at 106, 114-16 (affirming reasonableness of notice mailed to class members and published in widely-distributed publications).

Lead Plaintiff also requests that the Court appoint Epiq Global as the Claims Administrator

---

[6] Because potential class members' names and addresses are available from third parties and the Claims Administrator is able to reach class members through individual mailed notice, using social media outreach is not necessary here. Moreover, Avon's transfer agent and the majority of nominees are unlikely to readily have e-mail addresses for potential class members or, if they have them, would be unwilling to provide them given privacy concerns.

to provide all notices approved by the Court to Class Members, to process Claim Forms, and to administer the Settlement. Epiq Global is a nationally recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements.  *See* www.epiqglobal.com/en-us/experience/class-action-mass-tort.com.  For all the foregoing reasons, the notice program should be approved by the Court.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Lead Plaintiff respectfully proposes the schedule set forth below for Settlement-related events. The proposed schedule revolves around the date that the Court enters the Preliminary Approval Order and the date on which the Court schedules the Final Approval Hearing:

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (the "**Notice Date**") | No later than 10 business days after entry of Preliminary Approval Order. |
| Deadline for publishing the Summary Notice | Within 14 calendar days of the Notice Date. |
| Deadline for filing motions in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | No later than 35 calendar days before the Final Approval Hearing. |
| Deadline for receipt of requests for exclusion or objections | Received no later than 21 calendar days before the Final Approval Hearing. |
| Deadline for filing reply papers, responses to objections and proof of mailing Notice | No later than (7) calendar days before the Final Approval Hearing. |
| Deadline for submitting Claim Forms | 110 calendar days after entry of the Preliminary Approval Order. |
| Final Approval Hearing | At the Court's earliest convenience. As stated in the Preliminary Approval Order, the hearing can be held remotely at the election of the Court. |

## <u>CONCLUSION</u>

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order in its entirety.

Dated: New York, New York
      August 21, 2020

**LEVI & KORSINSKY, LLP**

*/s/ Gregory Mark Nespole*
Gregory Mark Nespole (GN 6820)
55 Broadway, 10th Floor
New York, NY 10006
T: (212) 363-7500
F: (212) 363-7171
E: Gnespole@zlk.com

*Attorneys for Lead Plaintiff and the Class*

**LABATON SUCHAROW LLP**
Christine M. Fox (CF-2910)
140 Broadway
New York, New York 10005
T: (212) 907-0700
F: (212-818-0477
E: Cfox@labaton.com

*Plaintiffs' Counsel*