UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Avon Products Inc. Securities Litigation | No. 19-cv-01420-MKV<br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND PLAN OF ALLOCATION**

LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
(212) 363-7500

*Plaintiffs' Lead Counsel*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ......................................................................................................1

ARGUMENT ..............................................................................................................................4

I.      The Proposed Settlement is Fair, Reasonable, and Adequate, and Warrants Final Approval ........................................................................................................................4

      A.      The Law Favors and Encourages Settlement of Class Action Litigation ...............4

      B.      The Standards for Final Approval...........................................................................4

      C.      The Settlement Was Reached After Robust Arm's-Length Negotiations, is Procedurally Fair, and is Entitled to a Presumption of Reasonableness.................6

      D.      Application of the Second Circuit's *Grinnell* Factors Supports Approval of the Settlement as Substantively Fair, Reasonable, and Adequate ..........................7

            1.      The Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement ............................................................7

            2.      The Reaction of the Settlement Class to the Settlement .............................9

            3.      The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of the Settlement........................10

            4.      The Risks of Establishing Liability and Damages Support Approval of the Settlement .................................................................................12

            5.      The Risks Related to Class Certification ...................................................15

            6.      The Ability of Defendants to Withstand a Greater Judgment....................16

            7.      The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and all the Attendant Risks of Litigation Support Approval of the Settlement ..........................................................17

      E.      Application of the Factors Identified in the Amendments to Rule 23(e)(2) Support Approval of the Settlement as Fair, Reasonable, and Adequate .............19

            1.      Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class...................................................................................19

            2.      The Settlement is the Result of Arm's-Length Negotiations....................20

            3.      The Relief Provided to the Settlement Class is Adequate ........................20

II.     The Plan of Allocation for the Proceeds of the Settlement is Fair and Reasonable
        and Should be Approved......................................................................................22

III.    Notice to the Class Satisfied the Requirements of Rule 23 and Due Process....................23

CONCLUSION...................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ................................................................ 9

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).......................................................... passim

*City of Providence v. Aeropostale Inc. et al.*,
  No. 11 civ. 7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd*,
  *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015) ............................ 6

*Ebbert v. Nassau Cty.*,
  No. CV 05-5445 AKT, 2011 WL 6826121 (E.D.N.Y. Dec. 22, 2011) ................... 15

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)............................................................... 5

*IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of
  Scotland Grp. PLC*,
  783 F.3d 383 (2d Cir. 2015)............................................................ 12

*In re Advanced Battery Techs. Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................ 5

*In re Alloy, Inc. Sec. Litig.*,
  No. 03-1597, 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ............................. 12

*In re AOL Time Warner Inc.*,
  No. 02 cv 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).......................... 12

*In re Apollo Grp., Inc. Sec. Litig.*,
  No. CV-04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008),
  *rev'd*, No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010) ................. 9

*In re Bear Stearns, Inc. Sec. Derivative & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)............................................ passim

*In re Citigroup Inc. Sec. Litig.*,
  No. 09 MD 2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ................... 4

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007).................. 7

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
   *aff'd*, 674 F. App'x. 37 (2d Cir. 2016) .................................................................. 6, 7

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .................. 8, 9, 22

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................ 23

*In re Gilat Satellite Networks*, *Ltd.*,
   No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ............................... 8

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................ 7, 14, 16

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................. 4, 14, 22

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ............................................................... 8, 22

*In re Marsh & McLennan Cos. Sec. Litig.*,
   No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................... 25

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................ 23

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007) ........................................................................ 18

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ...................... 18

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................. 18

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ..................... 17, 22

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................................ 19

*In re Telik, Inc. Sec. Litig.,*
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ......................................................... 8, 13, 14

*In re Veeco Instruments Inc. Securities Litigation*,
   2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...................................................... 9

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515, 2009 WL 2025160 (S.D.N.Y. July 10, 2009) ........................................... 10

*Ingles v. Toro*,
    438 F. Supp. 2d 203 (S.D.N.Y. 2006) ........................................................................ 15

*Int'l Bhd of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    No. 3:09-cv-00419, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ........................................... 18

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................................ 11

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ................................................................................. 17

*Prasker v. Asia Five Eight LLC*,
    No. 08 Civ. 5811(MGC), 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010) ........................................ 16

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ............................................................................... 9

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 Civ. 8331, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................................... 6

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ......................................................................... 8

*Teachers Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    No. 01-Civ-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ............................. 11, 16

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ............................................................................... 7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ........................................................................ 4, 5, 6, 23

*White v. First Am. Registry, Inc.*,
    No. 04 Civ. 1611 (LAK), 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007) ...................................... 7

**Statutes**

15 U.S.C. § 78u-4(a)(7) ........................................................................................ 24

**Rules**

Federal Rule of Civil Procedure 23(e) ....................................................... 4, 15, 16, 25

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiff Holly Ngo ("**Lead Plaintiff**"), by her undersigned Court-appointed Lead Counsel Levi & Korsinsky, LLP ("**Lead Counsel**"), on behalf of herself and all other members of the proposed Settlement Class,[1] respectfully submits this memorandum of law in support of her motion for final approval of the proposed Settlement of the above-captioned securities class action (the "**Action**"), approval of the proposed plan of allocation for the proceeds of the Settlement (the "**Plan of Allocation**"), and final certification of the Settlement Class.

## PRELIMINARY STATEMENT

As detailed in the Stipulation, Lead Plaintiff and additional named plaintiff David Klungle (together referred to as "**Plaintiffs**" where it is appropriate to do so), Avon Products, Inc. ("**Avon**" or the "**Company**") and Sherilyn S. McCoy, James S. Scully, James S. Wilson, and David Legher (together with Avon, the "**Defendants**") have agreed to a settlement of the claims in the Action, and the release of all Released Plaintiffs' Claims, in exchange for a payment of $14,500,000 in cash (the "**Settlement**") on the terms set forth in the Stipulation. This recovery is a favorable result for the Settlement Class and avoids the substantial risks and expenses of continued litigation, including the risk of recovering less than the amount of the Settlement Amount, or nothing at all.

---

[1] Capitalized terms which are not defined in this memorandum have the same meaning as in the Stipulation and Agreement of Settlement dated and filed on August 21, 2020 (ECF 77-1, the "**Stipulation**"). Reference is made to the accompanying Declaration of Gregory M. Nespole (the "**Nespole Declaration**").

The Nespole Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation.

The Court is also respectfully referred to the accompanying Declaration of Holly Ngo, the Lead Plaintiff (the "**Ngo Declaration**"), and the accompanying Declaration of David Klungle, the additional named plaintiff (the "**Klungle Declaration**"), both in support of this motion.

The Settlement was reached only after Lead Plaintiff and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims. As more fully described in the accompanying Nespole Declaration at ¶ 14, by the time the Settlement was agreed to, Lead Counsel had engaged in a thorough factual investigation of the claims, defenses and underlying events and transactions that are the subject of the Action. This process included analyzing, among other things, publicly filed documents and records, investigative reports, and news stories; and reviewing and corroborating the allegations and developments in the case. Lead Plaintiff, through counsel, also contacted more than 60 potential witnesses, who were former employees, independent contractors, and outside sales representatives ("**Representatives**") of Avon and interviewed 40 of them. Seven Representatives became cooperating witnesses, who provided additional information supporting the allegations. In addition, Lead Counsel consulted with certain experts regarding issues of market efficiency and damages suffered by Lead Plaintiff and the class resulting from the claims in the Action. Plaintiffs also reviewed and analyzed over 15,000 pages of fact discovery produced by Defendants, including Avon board minutes and other materials relating to the Company's debt, representatives, and operations in Brazil.[2] Nespole Decl. ¶ 27.

The Settlement is the product of months of arm's-length negotiations between the Parties, which culminated in an in-person mediation session under the auspices of a respected and experienced mediator, Robert A. Meyer, Esq. of JAMS (the "**Mediator**"). After the Parties were unable to reach a resolution following a full day of intensive negotiation, the Mediator helped continue negotiations over the following days until the Parties reached an agreement to settle this

---

[2] The production was made pursuant to a confidentiality agreement that remains in effect. Accordingly, Lead Counsel's discussion of the documents is circumscribed. If the Court is so inclined, Lead Counsel is prepared to discuss the documents in detail *in camera*.

Action, subject to the execution of a Memorandum of Understanding followed by a customary stipulation and agreement of settlement. Nespole Decl. ¶¶ 28-29.

The Settlement is a favorable result in light of the risks of continued litigation. While Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants are strong, they recognize that this Action presented a number of substantial risks, with respect to class certification, establishing liability, loss causation, market efficiency and damages. *Id.* ¶ 35. A particularly complicated challenge was the issue of disaggregation, *i.e.,* determining how much of the decline in the price of Avon's stock was attributable to the alleged fraud and how much was attributable to factors wholly independent of the alleged fraud. *Id.* In addition, there was the practical challenge of taking significant discovery in Brazil and London during the COVID-19 pandemic, with no guarantees that third parties located there would be willing or allowed to cooperate or travel and few if any means to cost effectively compel their compliance. *Id.* ¶ 36. While Lead Plaintiff was confident in her motion for class certification, she nonetheless recognizes a substantial risk that it might have been denied in whole or in part. *Id.* ¶ 42-44. Even if Lead Plaintiff's motion for class certification were granted in its entirety, Defendants likely would have continued to press their arguments at summary judgment, at trial, and through appeals. These risks are in addition to the genuine risk of a much smaller recovery, or no recovery at all.

In light of the recovery for the Settlement Class and the risks to continued litigation, as discussed further below and in the Nespole Declaration, Lead Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate, and warrants final approval by the Court. *See also* Ngo Decl. ¶¶ 8 and 11 (setting forth Lead Plaintiff's support for final approval of the Settlement); Klungle Decl. ¶ 7 (setting forth his support for final approval of the Settlement).

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to Settlement Class members. The Plan of Allocation, which was developed by Lead Counsel with the assistance of its damages expert, *see* Nespole Decl. ¶¶ 49-55, provides a reasonable and equitable method for allocating the Net Settlement Fund among Settlement Class members who submit valid claims. The Plan of Allocation is fair, reasonable, and should likewise be approved.

## ARGUMENT

### I.  The Proposed Settlement is Fair, Reasonable, and Adequate, and Warrants Final Approval

#### A.  The Law Favors and Encourages Settlement of Class Action Litigation

Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*") ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.").[3] This policy would be well-served by approval of the Settlement of this complex securities class action, that absent resolution, would consume years of this Court's time.

#### B.  The Standards for Final Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval. The Settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In ruling on final approval of a class settlement, courts in the Second Circuit have held that a court should examine both the negotiating process leading to the settlement, and the settlement's substantive terms. *See Visa*, 396 F.3d at 116; *In re Citigroup Inc. Sec. Litig.*, No. 09 MD 2070 (SHS), 2014 WL 2112136, at *2-3 (S.D.N.Y. May 20, 2014); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012).

---

[3] All internal quotations and citations are omitted unless otherwise stated.

The standards governing approval of class action settlements are well established in the Second Circuit. In *City of Detroit v. Grinnell Corp.*, the Second Circuit held that the following factors should be considered in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), *see also Visa*, 396 F.3d at 117; *In re Advanced Battery Techs. Inc. Sec. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. 2014); *In re Bear Stearns, Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265-66 (S.D.N.Y. 2012).

Additionally, pursuant to the amendments to Rule 23(e)(2) effective December 2018, a court may approve a settlement as "fair, reasonable, and adequate" after considering the following four factors, most of which overlap with the *Grinnell* factors:

(A)     whether the class representatives and class counsel have adequately represented the class;

(B)     whether the proposal was negotiated at arm's length;

(C)     whether the relief provided for the class is adequate, taking into account:

       i.     the costs, risks, and delay of trial and appeal;

      ii.     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

     iii.     the terms of any proposed ward of attorneys' fees, including timing of payment; and

iv.      any agreement required to be identified under Rule 23(e)(3); and

(D)      whether the proposal treats class members equitably relative to each other.

For the reasons discussed herein, the proposed Settlement meets the criteria set forth by the Second Circuit and the federal rules.

### C.    The Settlement Was Reached After Robust Arm's-Length Negotiations, is Procedurally Fair, and is Entitled to a Presumption of Reasonableness

A settlement is entitled to a "presumption of fairness, adequacy, and reasonableness" when "reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116; *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x. 37 (2d Cir. 2016).

The Settlement here merits such a presumption of fairness because it was achieved after thorough arm's-length negotiations between well-informed and experienced counsel, under the supervision of an experienced Mediator, and an extensive investigation into the claims as well as discovery. As a result, Lead Plaintiff and Lead Counsel had a well-informed basis for assessing the strength of the Settlement Class's claims and Defendants' defenses when they agreed to settle the Action.

The judgment of Lead Counsel – a law firm that is highly experienced in securities class action litigation, *see* <u>Exhibit B</u> to the Nespole Declaration – that the Settlement is in the best interests of the Settlement Class is entitled to "great weight." *City of Providence v. Aeropostale Inc. et al.*, No. 11 civ. 7132, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014); *accord, In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts consistently give "'great weight' . . .

to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"). Moreover, Lead Plaintiff took an active role in supervising this litigation, as envisioned by the PSLRA, and endorses the Settlement. *See* Ngo Decl. ¶¶ 3 – 5, 8 and 11. A settlement reached with the support of an appropriately selected Lead Plaintiff "is entitled to an even greater presumption of reasonableness." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Accordingly, the Settlement is entitled to a presumption of reasonableness.

**D.    Application of the Second Circuit's *Grinnell* Factors Supports Approval of the Settlement as Substantively Fair, Reasonable, and Adequate**

The Settlement is also substantively fair, reasonable, and adequate. "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)). Additionally, in deciding whether to approve a settlement, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another." *White v. First Am. Registry, Inc.*, No. 04 Civ. 1611 (LAK), 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007). Here, the Settlement fully satisfies the criteria for approval articulated in *Grinnell*.

**1.    The Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement**

Securities class actions like this one are by their nature complicated, and district courts in this Circuit have long recognized that "[a]s a general rule, securities class actions are 'notably difficult and notoriously uncertain' to litigate." *In re Facebook,* 2015 WL 6971424, at *3; *Bear Stearns,* 909 F. Supp. 2d at 266; *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400

(CM)(PED), 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010); *In re Gilat Satellite Networks, Ltd*., No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute.").

This case was no exception. As discussed in the Nespole Declaration, this case involved complicated and intricate issues related to scienter, loss causation, the existence, measure and amount of damages, and particularly, disaggregation. *See In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (finding that the complexity, expense and duration of continued litigation supports final approval where, among other things "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable").

Trying this Action would have required extensive expert testimony on numerous contested issues, including falsity, scienter, loss causation and damages. Expert testimony also would be required about the issue of market efficiency. Courts routinely observe that these sorts of disputes – requiring dueling testimony from experts – are particularly difficult for plaintiffs to litigate. *See, e.g.*, *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited").

Of course, even if Lead Plaintiff had prevailed at trial, it is virtually certain that appeals would be taken, which would have, at best, substantially delayed any recovery for the Settlement Class. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery."). At worst, there is always a risk that the verdict could be reversed by the

trial court or on appeal. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice in securities action); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *cf. In re Apollo Grp., Inc. Sec. Litig.*, No. CV-04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd*, No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010) (trial court overturned unanimous verdict for plaintiffs, later reinstated by the Ninth Circuit Court of Appeals, and judgment re-entered after denial of *certiorari* by the U.S. Supreme Court).

### 2.    The Reaction of the Settlement Class to the Settlement

The reaction of the class to a proposed settlement is a significant factor to be weighed in considering its fairness and adequacy. *See, e.g.*, *Bear Stearns*, 909 F. Supp. 2d at 266-67; *FLAG Telecom*, 2010 WL 4537550, at *16; *In re Veeco Instruments Inc. Securities Litigation*, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007).

Pursuant to the Court's Order Granting Preliminary Approval of Settlement (ECF 74, the "**Preliminary Approval Order**"), the Court-appointed Claims Administrator, Epiq Global ("**Epiq**"), has mailed copies of the Notice and Proof of Claim form to potential Settlement Class members and beneficial purchasers holding Avon common stock in street name on behalf of potential Settlement Class members. *See* the accompanying Declaration of Jessie Mahn Regarding (I) Mailing of Notice and Proof of Claim Form; (II) Publication of Summary Notice; (III) Call Center Services; (IV) The Settlement Website; and (V) Requests for Exclusion and Objections Received to Date (the "**Mahn Decl.**") at ¶¶ 4 – 6. As of December 15 , 2020, Epiq has mailed 63,091 copies of the Notice and Proof of Claim Form to potential Settlement Class members. Mahn Decl. ¶ 10. In addition, on September 28, 2020 Epiq published the Summary Notice on the *PR Newswire*, a nationwide wire service, and in *Investor's Business Daily*. *Id.* ¶ 12. The Notice and

other documents are also posted on a website maintained by Epiq dedicated to this Action (www.AvonSecuritiesLitigation.com) to assist potential Settlement Class members, which will continue to be maintained and updated as appropriate. *Id.* ¶ 15 – 16. Epiq also maintains a toll-free telephone number allowing Settlement Class members to call and speak with a live operator regarding the status of the Settlement and/or obtain answers to any questions they may have. *Id.* ¶¶ 13 – 14.

The Notice set out the essential terms of the Settlement, Lead Counsel's Fee and Expense Application, and the proposed Plan of Allocation and informed potential Settlement Class members of, among other things, their right to object to any aspect of the Settlement, as well as the procedure for submitting Proof of Claim Forms, and for requesting exclusion from the Settlement Class. While the deadline set by the Court for Settlement Class Members to object or request exclusion (December 30, 2020) has not yet passed, to date, no objections have been received and there have been only five (5) requests for exclusion. Mahn Decl. ¶¶ 18 – 20; Nespole Decl. ¶ 54. This further supports granting final approval of the proposed Settlement. *See, e.g., In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515, 2009 WL 2025160, at *2 (S.D.N.Y. July 10, 2009) (no objections by class members following preliminary approval supports granting final approval). Lead Counsel will respond to any objections received in reply papers.

### 3. The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of the Settlement

In considering this factor, "the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267. To satisfy this factor, parties

need not have even engaged in formal or extensive discovery. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 363 (S.D.N.Y. 2002).

As detailed in the Nespole Declaration at ¶ 14, Lead Counsel conducted a robust investigation that included analyzing, among other things, publicly filed documents and records, investigative reports, and news stories; and reviewing and corroborating the allegations and developments in the case. Through counsel, Lead Plaintiff also contacted more than 60 potential witnesses, who were former Avon employees, independent contractors, and outside sales Representatives and interviewed 40 of them. Seven Representatives became cooperating witnesses, who provided additional information supporting the allegations. Lead Counsel also consulted with experts regarding issues of market efficiency and damages. Plaintiffs also reviewed and analyzed over 15,000 pages of fact discovery produced by Defendants, including Avon board minutes and other materials relating to the Company's debt, Representatives, and operations in Brazil. Nespole Decl. ¶ 27.

Armed with this substantial base of knowledge, Lead Plaintiff was in a position to balance the proposed settlement amount with a well-educated assessment of the likelihood of overcoming the risks of litigation. Accordingly, Lead Plaintiff and Lead Counsel respectfully submit that they had "a clear view of the strengths and weaknesses of their case[]" and of the range of possible outcomes at trial. *Teachers Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-Civ-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004). The Court thus should find that this factor also supports approval.

     **4.**     **The Risks of Establishing Liability and Damages Support Approval of the Settlement**

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463.

The principal claims in the Action are based on Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. To establish a claim under the Exchange Act, "a plaintiff must prove: (1) the defendant made a material misrepresentation or omission; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp. PLC*, 783 F.3d 383, 389 (2d Cir. 2015). Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet. *See In re AOL Time Warner Inc.*, No. 02 cv 5575, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *In re Alloy, Inc. Sec. Litig.*, No. 03-1597, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (finding that issues present in securities action presented significant hurdles to proving liability).

Here, in particular, Defendants would have vigorously challenged Lead Plaintiff on scienter, damages and loss causation.

     **(a)**     **Risks to Proving Liability**

The central allegations of the Action are that Defendants tried to create the illusion that Brazil, Avon's largest market accounting for over 20% of the Company's 2016 consolidated revenue with no other country accounting for over 10%, was still a growth center by dramatically lowering credit standards for their Representatives in Brazil and ceasing to train them. The loosened credit standards lack of training resulted in a vicious circle, with new Representatives

quickly falling into debt with Avon, which Avon offered to partially forgive if they continued to purchase more product on credit. This led to the fraudulent inflation of the Company's revenues and the number of active Representatives in the Company's largest market, which caused Avon's common stock to trade at artificially inflated prices, reaching a high of nearly $7 per share. As the truth about the Company's problems in Brazil trickled out, the price of the Company's stock precipitously declined to under $2 per share. *See generally,* Amended Complaint at ¶¶ 1-24 *et seq.*

Lead Plaintiff would have faced significant hurdles in proving her case on liability. Litigation of the claims alleged in this case was expected to raise several complex questions concerning scienter, loss causation, and damages that would require substantial efforts by Lead Plaintiff and Lead Counsel. Nespole Decl. ¶ 35. Establishing scienter would have been challenging because "[p]roving a defendant's state of mind is hard in any circumstances." *Telik,* 576 F. Supp. 2d at 579. Assuming the claims survived a motion for summary judgment, a jury trial would have required substantial factual and expert testimony, which is always uncertain, particularly about the complex and challenging issue of disaggregation. Whatever the outcome at trial, it was virtually certain that an appeal would have been taken. All the foregoing would have posed considerable expense to the Parties and would have delayed any potential recovery for several years.

Apart from Defendants' arguments, establishing liability would have been further complicated because many of the key fact witnesses were former Avon employees located in Brazil. Securing their cooperation under ordinary circumstances would have been challenging enough, and all the more so because of the COVID-19 Pandemic. Because there is no cost effective way of compelling them to appear for a deposition, Lead Plaintiff may very well have had to rely solely on documentary evidence to prove her case. *Id.* ¶ 7.

### (b)     Risks Related to Loss Causation, Damages and Market Efficiency

Even if Defendants' liability were established, loss causation and damages remains a "complicated and uncertain process, typically involving conflicting expert opinion about the difference between the purchase price and the [shares] 'true' value absent the alleged fraud." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004). In order to resolve most of the disputed issues regarding loss causation and damages, among others, the Parties would have had to rely heavily on expert testimony. *See IMAX*, 283 F.R.D. at 193 ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."); *Telik,* 576 F. Supp. 2d at 579-80 (in this "'battle of experts', it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found…"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury.").

As to loss causation, Lead Plaintiff anticipates that Defendants would have argued that Lead Plaintiff's event study would be unable to disaggregate for only fraud-related inflation. In other words, Defendants were expected to argue that Plaintiff's damages model did not adequately distinguish between a drop in Avon's stock price attributable to Defendants' allegedly false and misleading statements, and a drop caused by factors wholly unrelated to any wrongdoing by Defendants, such as the record macroeconomic downturn in Brazil, the tightening of recruiting terms for new Representatives, or other factors such as the announcement of lower-than-expected revenues due to lower sales and higher tax rates. Nespole Decl. ¶ 38. Lead Plaintiff would have also had to overcome issues surrounding market efficiency, namely that Avon securities suffered

at least four declines during the Class Period stemming from several causes, not just Representative retention and debt. *Id.* ¶ 39.

Given all of these risks with respect to liability, loss causation, damages, and market efficiency, Lead Plaintiff and Lead Counsel respectfully submit that it is in the best interests of the Settlement Class to accept the certain and substantial benefit conferred by the Settlement.

### 5.    The Risks Related to Class Certification

Although class certification had not yet been fully briefed in this case, Defendants would undoubtedly have raised vigorous challenges to class certification, and such disputes "could well devolve into yet another battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268. Additionally, class certification can be reviewed and modified at any time by the Court before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Although Lead Counsel believes there are strong grounds for certifying a litigation class, discussed in the Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel (ECF 53) and the Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement (ECF 72, the "**Preliminary Approval Brief**") at Point II, the Settlement avoids any uncertainty with respect to class certification and risks of maintaining certification of the Settlement Class through trial and on appeal. *See Ebbert v. Nassau Cty.*, No. CV 05-5445 AKT, 2011 WL 6826121, at *12 (E.D.N.Y. Dec. 22, 2011) (risk of de-certification of the certified class supported approval of Settlement); *Ingles v. Toro*, 438 F. Supp. 2d 203, 214 (S.D.N.Y. 2006).[4]

---

[4] The Court preliminarily certified the Settlement Class solely for settlement purposes in the Preliminary Approval Order (ECF 74). There have been no subsequent developments that would undermine that determination and, for all the reasons stated in the Preliminary Approval Brief, incorporated herein by reference, Lead Plaintiff now requests that the Court reiterate its prior

### 6.      The Ability of Defendants to Withstand a Greater Judgment

The ability of a defendant to pay a judgment greater than the amount offered in settlement is relevant to whether the settlement is fair. *Grinnell*, 495 F.2d at 463. Avon's financial condition weighs in favor of final approval of the Settlement. *See, e.g., Global Crossing*, 225 F.R.D. at 460 (ability to withstand a greater judgment supports final approval where the "main settlement funds available to the individuals are the insurance proceeds" which "would be largely consumed by defense costs if this litigation were to continue"); *Teachers' Ret. Sys. of La.,* 2004 WL 1087261, at *4 (likely depletion of Director and Officer insurance supports settlement approval). Avon's business model revolves around in-person direct selling. Amended Complaint ¶ 3. It is therefore particularly vulnerable to the disruptions caused by the COVID-19 pandemic. As the Company noted in its most recent quarterly report for the period ended September 30, 2020 filed with the SEC on Form 10-Q, "COVID-19 had a significant impact on our operations as many markets were subject to lockdown restrictions which limited our ability to recruit and enroll Representatives…."[5] It is entirely unpredictable how Avon's direct selling business model will fare given the unprecedented challenges that it is facing. In contrast, pursuant to the Stipulation, the $14,500,000 Settlement Fund is deposited into escrow and earning interest. *See Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811(MGC), 2010 WL 476009, at *5 (S.D.N.Y. Jan. 6, 2010) (approving settlement and noting that "[t]he settlement eliminated the risk of collection by requiring Defendants to pay the Fund into escrow…"). Accordingly, this factor weighs in favor of granting final approval of the Settlement.

---

certification of the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3), for settlement purposes, and the appointment of Lead Plaintiff as Class Representative and Levi & Korsinsky, LLP as Class Counsel.

[5] *See* https://www.sec.gov/ix?doc=/Archives/edgar/data/8868/000000886820000025/avp-20200930.htm (last accessed December 12, 2020).

7.     **The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and all the Attendant Risks of Litigation Support Approval of the Settlement**

The last two substantive factors courts consider are the range of reasonableness of the settlement fund in light of (i) the best possible recovery and (ii) litigation risks. In analyzing these factors, the issue for the Court is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case. The court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462. Courts agree that the determination of a "reasonable" settlement "is not susceptible of a mathematical equation yielding a particularized sum." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Instead, "in any case there is a range of reasonableness with respect to a settlement…." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Lead Counsel and Lead Plaintiff believe the $14.5 million Settlement Amount presents a favorable recovery for the Settlement Class. As noted in the Nespole Declaration, Lead Plaintiff's damages expert has estimated that if liability were established with respect to all of the claims, including in connection with the four alleged corrective disclosures, the most reasonable estimate of aggregate damages likely recoverable at trial was $148.7 million, taking into account the exclusion of gains on pre-Class Period purchases and the "parsing out" or disaggregation of the impact of non-fraud related information from the alleged stock price declines in reaction to the corrective disclosures. (Without disaggregation, estimated damages excluding pre-Class Period gains are approximately $309 million.). Nespole Decl. ¶ 40. Accordingly, the Settlement represents approximately 9.4% of aggregate damages likely recoverable at trial. *Id*. Moreover, Defendants had argued that the Class Period should end with the first corrective disclosure on February 16,

2017 (before the market opened). *Id*. Had the Court agreed with Defendants and shortened the Class Period, on class certification or summary judgment, to end on February 15, 2017, estimated damages, including netting and disaggregation would have fallen to as low as $58.7 million. *Id.*[6]

A settlement for almost 10% of the likely recoverable damages falls well within the range of reasonableness that courts regularly approve in similar circumstances. *See, e.g.*, *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (approving settlement representing approximately 6.25% of estimated damages and noting was at the "higher end of the range of reasonableness of recovery in class actions securities litigation"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages [and] within the range of reasonableness for recovery in the settlement of large securities class actions"); *In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (settlement yielding 6% of potential damages was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *Int'l Bhd of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement recovering 3.5% of maximum damages and noting that the amount is within the median recovery in securities class actions settled in the last few years). Depending on the measure of damages, the Settlement is certainly within the median percentage recovery for securities class actions and very possibly well in excess of it.

In sum, the *Grinnell* factors support approval of the Settlement.

---

[6] Under that scenario, the Settlement would represent 24.7% of the maximum possible recovery.

E.   **Application of the Factors Identified in the Amendments to Rule 23(e)(2) Support Approval of the Settlement as Fair, Reasonable, and Adequate**

The proposed Settlement also meets the criteria set forth in the amendments to Rule 23(e)(2) effective December 2018, most of which are covered by the Second Circuit factors discussed above.

1.   **Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class**

There can be little doubt that Lead Plaintiff and Plaintiffs' Counsel have adequately represented the Settlement Class.

As set forth in the previously filed motion for preliminary approval of the Settlement and her motion seeking appointment as lead plaintiff, Lead Plaintiff, like all other members of the Settlement Class, acquired Avon common stock during the Class Period, when its value was allegedly artificially inflated by false and misleading statements. Thus, the claims of the Settlement Class and Lead Plaintiff would prevail or fail in unison, and the common objective of maximizing recovery from Defendants aligns the interests of Lead Plaintiff and all members of the Settlement Class. *See, e.g., In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Additionally, throughout the Action, Lead Plaintiff had the benefit of the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases. Levi & Korsinsky has a long and successful track record in such cases. *See* Exhibit B to the Nespole Decl. (Levi & Korsinsky's firm resume) and Exhibit A to the accompanying Declaration of Christine Fox (firm resume of additional plaintiffs' counsel Labaton Sucharow LLP).

### 2. The Settlement is the Result of Arm's-Length Negotiations

As discussed above and in the Nespole Declaration at ¶ 28-29, the Settlement was reached after arm's-length negotiations between counsel and overseen by an experienced Mediator. This factor clearly supports approval of the Settlement.

### 3. The Relief Provided to the Settlement Class is Adequate

Section (i) of Rule 23(e)(2)(C), whether "the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal," has been explained above.

Rule 23(e)(2)(C)(ii) considers whether the relief is adequate, taking into account the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." As set forth below in Point II, discussing the proposed Plan of Allocation, the proceeds of the Settlement will be distributed to Settlement Class members who submit valid and timely claims. Epiq (the Claims Administrator) will calculate claimants' Recognized Loss Amounts using the transactional information provided by claimants in their Proof of Claim Forms, which can be mailed to the Claims Administrator or submitted online using the settlement website, or, for large investors, with hundreds of transactions, via e-mail to the Claims Administrator's electronic filing team. Because most securities are held in "street name" by the brokers that buy them on behalf of clients, the Claims Administrator, Lead Counsel, and Defendants do not have Settlement Class members' transactional data, and a claims process is required. Because the Settlement does not recover 100% of alleged damages, the Claims Administrator will determine each eligible claimant's *pro rata* share of the Net Settlement Fund (i.e., the "Recognized Claim") based upon each claimant's total "Recognized Loss Amount" compared to the aggregate Recognized Claims of all eligible claimants.

Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, distributions

will be made to eligible claimants in the form of checks. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution, Lead Counsel will, if feasible and economical, re-distribute the balance among eligible claimants who have cashed their checks. *See* Stipulation ¶ 16 and Notice at 14. Any balance that still remains in the Net Settlement Fund after any reallocation, or if a reallocation is not undertaken, feasible, or economical, will be contributed to a non-sectarian, §50l(c)(3) non-profit charitable organization. *Id.*

The terms of any proposed award of attorneys' fees, including timing of payment (Rule 23(e)(2)(C)(iii)), are discussed in Lead Counsel's accompanying Fee and Expense Application.

Finally, Rule 23(e)(2)(C)(iv) asks the Court to consider the fairness of the proposed Settlement in light of any agreement required to be identified under Rule 23(e)(3). The only agreements made by the Parties in connection with the Settlement are the Stipulation and the confidential Supplemental Agreement concerning the circumstances under which Defendants may terminate the Settlement based upon the number of exclusion requests as set forth in the Stipulation at ¶ 46. It is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class. The Supplemental Agreement can be provided to the Court *in camera* or under seal.

## II.     The Plan of Allocation for the Proceeds of the Settlement is Fair and Reasonable and Should be Approved

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate. *See IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270. A plan of allocation with a "rational basis" satisfies this requirement. *FLAG Telecom*, 2010 WL 4537550, at *21; *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d at 497. A plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *See IMAX*, 283 F.R.D. at 192. However, a plan of allocation does not need to be tailored to fit each and every class member with "mathematical precision." *PaineWebber*, 171 F.R.D. at 133.

Here, the proposed Plan of Allocation, which was developed by Lead Counsel with the assistance of its damages expert, provides a fair and reasonable method to allocate the Net Settlement Fund among class members who submit valid Proof of Claim Forms. The Plan is set forth in full in the Notice. *See* Exhibit A to the Mahn Declaration. The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants based on a function of (i) when a Settlement Class member purchased or otherwise acquired shares of Avon common stock, (ii) whether the Settlement Class member held his, her or its Avon stock through the date of at least one corrective disclosure made by the Company; (iii) whether the Settlement Class member held his, her or its Avon stock during the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e) (providing methodology for limiting damages in securities fraud actions), and (iv) the per share amount of artificial inflation in the price of the Company's stock. Purchases of the Company's stock fall into four periods corresponding to the dates of the corrective disclosures. Within each period, Authorized Claimants are treated on a *pro rata* basis based on their Recognized Claim, as such term is defined in the Notice, calculated according to the formulas in

the Plan of Allocation, which are consistent with Lead Plaintiff's theory of liability and alleged damages. These formulas consider the amount of alleged artificial inflation in the prices of the Company's stock, as estimated by Lead Counsel's damages expert. *See* Nespole Decl. ¶ 40. Accordingly, the proposed Plan of Allocation is designed to fairly and rationally allocate the proceeds of this Settlement among the Settlement Class.

For these reasons, Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) (same). Moreover, as noted above, as of December 15, 2020, 63,091 copies of the Notice, which contains the Plan of Allocation and advises Settlement Class members of their right to object to the proposed plan, have been sent to potential Settlement Class members and their nominees and no objections and just five (5) requests for exclusion have been received. Mahn Decl. ¶¶ 10, 18; Nespole Decl. ¶ 54.

## III.    Notice to the Class Satisfied the Requirements of Rule 23 and Due Process

Lead Plaintiff has provided the Settlement Class with notice of the proposed Settlement that satisfied all the requirements of Rule 23(e) and due process, which require that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Visa*, 396 F.3d at 114. Both the substance of the Notice and the method of its dissemination to potential members of the Settlement Class satisfied these standards.

The Notice provided all of the necessary information for Settlement Class members to make an informed decision regarding the Settlement, the Fee and Expense Application, and the Plan of Allocation. The Notice informed Settlement Class members of, among other things: (1)

the amount of the Settlement; (2) the reasons why the Parties are proposing the Settlement; (3) the estimated average recovery per affected share of Avon; (4) the maximum amount of attorneys' fees and expenses that will be sought and the possibility that Plaintiffs might seek reimbursement for their time and expenses in connection with their representation of the proposed class in accordance with the PSLRA; (5) the identity and contact information for the representatives of Lead Counsel who are reasonably available to answer questions from Settlement Class Members concerning matters contained in the Notice; (6) the right of Settlement Class Members to object to the Settlement; (7) the binding effect of a judgment on Settlement Class Members; and (8) the dates and deadlines for certain Settlement-related events. *See* 15 U.S.C. § 78u-4(a)(7). The Notice also contained the Plan of Allocation and provided Settlement Class Members with information about how to submit a Proof of Claim form in order to be eligible to receive a distribution from the Net Settlement Fund.

As of December 15, 2020, Epiq has mailed 63,091 Notices (including Proof of Claim Forms) to potential Settlement Class members or their nominees. Mahn Decl. ¶ 10. Potential Settlement Class members were identified by the Company's transfer agent as well as brokerage firms, banks, institutions and other third-party nominees holding Avon stock in street name. *Id.* ¶ 6. The Court-approved summary notice was also published on *PR Newswire*, a national wire service, and in *Investor's Business Daily*. *Id.* ¶ 12. Epiq maintains a toll-free telephone number allowing Settlement Class members to call and speak with a live operator regarding the status of the Settlement and/or obtain answers to any questions they may have. *Id.* ¶¶ 13 – 14. Finally, Epiq maintains a website dedicated to this Action (www.AvonSecuritiesLitigation.com) to assist potential Settlement Class members containing the Notice, summary notice and other important documents related to the Action and the proposed Settlement. *Id.* ¶¶ 15 - 16.

This combination of individual first-class mail to those who could be identified with reasonable effort, supplemented by notice in an appropriate publication, transmitted over a newswire, and set forth on internet websites, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *12-13 (S.D.N.Y. Dec. 23, 2009).

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement as fair, reasonable, and adequate; approve the Plan of Allocation as fair, reasonable, and adequate; and grant such other and further relief as the Court deems just and proper. The proposed Final Judgment and Order of Dismissal with Prejudice is attached to the Stipulation as Exhibit B thereto.

Dated: New York, New York
     December 16, 2020

**LEVI & KORSINSKY, LLP**

*/s/ Gregory M. Nespole*
Joseph E. Levi
Gregory Mark Nespole
55 Broadway, 10th Floor
New York, NY 10006
T: (212) 363-7500
F: (212) 363-7171
E: jlevi@zlk.com
   gnespole@zlk.com

*Plaintiffs' Lead Counsel*

**LABATON SUCHAROW LLP**
Christine M. Fox (CF-2910)
140 Broadway
New York, New York 10005
T: (212) 907-0700
F: (212-818-0477
E: Cfox@labaton.com

*Plaintiffs' Counsel*