UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Avon Products Inc. Securities Litigation | No. 19-cv-01420-MKV<br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION
FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS
PURSUANT TO 15 U.S.C. §78u-4(a)(4)**

LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
(212) 363-7500

*Plaintiffs' Lead Counsel*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ............................................................................................................6

I.      A Reasonable Percentage of the Fund Recovered is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases..................................................6

II.     A Fee of 30% is Consistent with Fees Awarded in Comparable Cases in this District..................................................................................................................8

III.    The Factors Considered Within the Second Circuit Confirm that the Requested Fee is Reasonable....................................................................................................9

        A.      Plaintiffs' Counsel has Devoted Substantial Time and Labor to the Action .........10

        B.      The Magnitude and Complexity of the Action Support the Requested Fee ..........10

        C.      The Risks of the Litigation Support the Requested Fee .......................................11

                1.      Risks Related to Liability.........................................................................12

                2.      Risks Related to Loss Causation, Damages and Market Efficiency ..........13

                3.      Risks Related to Class Certification ........................................................14

                4.      Risks Related to the Collection of a Judgment ........................................14

                5.      The Contingent Nature of Counsel's Representation ...............................15

        D.      The Quality of Plaintiffs' Counsel's Representation ...........................................16

        E.      The Requested Fee in Relation to the Settlement ...................................................17

        F.      Public Policy Considerations Support the Requested Fee ....................................17

        G.      The Requested Attorneys' Fees are Reasonable Under the Lodestar Cross-Check ..................................................................................................................18

IV.     Counsel's Expenses are Reasonable and were Necessarily Incurred to Achieve the Benefit Obtained ..............................................................................................20

V.      The Reaction of the Settlement Class to Date Supports the Requested Fee.....................21

VI.     Application for Awards to Lead Plaintiff and Additional Named Plaintiff......................22

CONCLUSION..................................................................................................................25

## TABLE OF AUTHORITIES

**CASES**

*Adelphia Commc'ns Corp. Sec. and Derivative Litig.*,
 MDL No. 03-1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ........................................ 17

*Am. Bank Note Holographics, Inc. Sec. Litig*,
 127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................................. 15

*Anixter v. Home-Stake Prod. Co.*,
 77 F.3d 1215 (10th Cir. 1996) ............................................................................................. 16

*Apac Teleservs., Inc. Sec. Litig.*,
 No. 97-cv-9145 (S.D.N.Y. June 29, 2001) ............................................................................ 8

*Apple Comput. Sec. Litig.*,
 No. C-84-20148, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................................. 16

*BankAtlantic Bancorp, Inc.*,
 No. 07-cv-61542 (S.D. Fla. 2010) ........................................................................................ 16

*Basic Inc. v. Levinson*,
 485 U.S. 224, 230-31 (1988) ............................................................................................... 17

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
 472 U.S. 299, 310 (1985) .................................................................................................... 17

*Bayer AG Sec. Litig.*,
 No. 03-cv-1546, 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) ........................................... 12

*Bentley v. Legent Corp.*,
 849 F. Supp. 429 (E.D. Va. 1994) ....................................................................................... 16

*Blech Sec. Litig.*,
 No. 94 Civ. 7696, 2000 WL 661680 (S.D.N.Y. May 19, 2000) .............................................. 7

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980) .............................................................................................................. 6

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
 2015 WL 13639234 (S.D.N.Y. Oct. 15, 2015) ..................................................................... 22

*City of Providence v. Aeropostale, Inc.*,
 No. 11-cv-7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd, Arbuthnot v.
 Pierson,* 607 F. App'x. 73 (2d Cir. 2015) ........................................................................ 7, 9

*Comverse Tech., Inc. Sec. Litig.*,
  No. 06-1825, 2010 WL 2653354 (S.D.N.Y. June 24, 2010) ................................. 20

*Denney v. Jenkins & Gilchrist*,
  230 F.R.D. 317 (S.D.N.Y. 2005) ........................................................................ 22

*Deutsche Telekom AG Sec. Litig.*,
  No. 00-CV-9475 (NRB), 2005 WL 7984326 (S.D.N.Y. June 9, 2005) ............................ 20

*Dornberger v. Metro Life Ins. Co.*,
  203 F.R.D. 118, 124 (S.D.N.Y. 2001) ................................................................ 22

*E.W. Blanch Holdings, Inc. Sec. Litig.*,
  No. 01-258, 2003 WL 23335319 (D. Minn. June 16, 2003)................................. 9

*Gierlinger v. Gleason*,
  160 F.3d 858 (2d Cir. 1998)................................................................................ 19

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)................................................................................ 6

*Heritage Bond Litig.*,
  No. 02–ML–1475 DT (RCx), 2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................ 9

*Herman v. Legent Corp.*,
  50 F.3d 6 (4th Cir. 1995) ................................................................................ 16

*Hicks v. Stanley*,
  No. 01-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................................. 18

*Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12–cv–8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)................................. 19

*IMAX Sec. Litig.*,
  No. 06 Civ 6128 (NRB), 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012) ................................. 8

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  No. 04 Civ. 8141 (DAB), 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010) ................................. 22

*In re FLAG Telecom Holdings, Ltd.*,
  No. 02-cv 3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...................................... passim

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................ 8

*Klugmann v. Am. Capital Ltd.*,
  No. 09-cv-00005-PJM (D. Md. June 12, 2012) ........................................................ 9

*LaBranche Sec. Litig*,
  No. 03-cv-8201 (S.D.N.Y. Jan. 22, 2009) ............................................................ 9

*Landy v. Amsterdam*,
  815 F.2d 925 (3d Cir. 1987)..................................................................................... 16

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................................................................... 8

*Marsh & McLennan, Co. Sec. Litig.*
  No. 04-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................................. 17

*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010)..................................................................................... 11

*MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................................... 20

*Missouri v. Jenkins*,
  491 U.S. 274 (1989).................................................................................................. 19

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
  No. 06 Civ. 4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ............... 8

*Newman v. Caribiner Int'l Inc.*,
  No. 99-cv-2271 (S.D.N.Y. Oct. 25, 2001)................................................................ 8

*Public Pension Grp. v. KV Pharm. Co.*,
  No. 08-cv-1859 (CEJ) (E.D. Mo. Apr. 23, 2014) .................................................... 9

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ............................................................................... 16

*Roberts v. Texaco*,
  979 F.Supp. 185 (S.D.N.Y. 1997) ........................................................................... 22

*Savoie v. Merchs. Bank,*
  166 F.3d 456, 460 (2d Cir. 1999)............................................................................. 7

*Schnall v. Annuity & Life Re (Holdings), Ltd.*,
  No. 02-cv-2133 (D. Conn. Jan. 21, 2005)................................................................ 8

*Shapiro v. JPMorgan Chase & Co.*,
  11 Civ. 7961(CM), 2014 WL 1224666, (S.D.N.Y. Mar. 24, 2014) ....................... 13

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*,
  2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002)............................................................ 22

*Stefaniak v. HSBC Bank USA,  N.A.*,
   No. 05-720, 2008 WL 7630102 (W.D.N.Y. June 28, 2008)....................................................8

*Taft v. Ackermans*,
   No. 02-cv-7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007).....................................8

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004).............................11

*Telik, Inc. Sec. Litig.*
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)...............................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 319 (2007)...................................................................................................17

*Veeco Instruments Inc. Sec. Litig,*
   No. 05-1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)............................................17, 23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96, 121 (2d Cir. 2005).........................................................................................7

*Wal-mart Stores, Inc. v. Visa USA, Inc.*,
   396 F. 3d 96, 123 (2d Cir. 2005)........................................................................................20

*WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................................................18

**STATUTES**

15 U.S.C. §78u-4(a)(4) ......................................................................................................22, 25

Court-appointed lead counsel, Levi & Korsinsky LLP ("**Levi & Korsinsky**" or "**Lead Counsel**"), submits this memorandum of law in support of its motion for an award of attorneys' fees in the amount of 30% of the Settlement Fund, which would calculate to $4,350,000.[1] Lead Counsel also seeks payment of $157,000 in litigation expenses that it and additional plaintiffs' counsel Labaton Sucharow LLP ("**Labaton Sucharow**" and together with Lead Counsel, "**Plaintiffs' Counsel**") reasonably incurred in prosecuting this securities class action (the "**Action**").[2] Lead Counsel also moves for awards pursuant to 15 U.S.C. §78u-4(a)(4) to Lead Plaintiff, Holly Ngo ("**Lead Plaintiff**") in the amount of $7,500, and to additional named plaintiff, David Klungle, in the amount of $1,220 (Ms. Ngo and Mr. Klungle are together referred to as the "**Plaintiffs**" when appropriate).

## PRELIMINARY STATEMENT

The proposed Settlement now before the Court provides for the full resolution of the federal securities fraud claims against Avon Products, Inc. ("**Avon**" or the "**Company**") and defendants Sherilyn S. McCoy, James S. Scully, James S. Wilson, and David Legher (the "**Individual Defendants**," and together with Avon, the "**Defendants**") in this Action, in exchange for a cash payment of $14,500,000 on the terms set forth in the Stipulation. For the

---

[1] Capitalized terms which are not defined in this memorandum have the same meaning as in the Stipulation and Agreement of Settlement dated and filed on August 21, 2020 (ECF 77-1, the "**Stipulation**"). Reference is made to the accompanying Declaration of Gregory M. Nespole (the "**Nespole Declaration**"), the Declaration of Lead Plaintiff, Holly Ngo ("**Ngo Declaration**"), and the Declaration of additional named plaintiff, David Klungle ("**Klungle Declaration**"), all in support of this motion. Reference is also made to the accompanying Declaration of Christine Fox on Behalf of Labaton Sucharow LLP in Support of Application for an Award of Attorneys' Fees and Expenses ("**Fox Declaration**") and the Declaration of Jessie Mahn Regarding (I) Mailing of Notice and Proof of Claim Form; (II) Publication of Summary Notice; (III) Call Center Services; (IV) The Settlement Website; and (V) Requests for Exclusion and Objections Received to Date (the "**Mahn Declaration**").

[2] The order appointing Lead Plaintiff and Lead Counsel in the Action authorized Lead Counsel to designate additional counsel to assist with the litigation. *See* ECF 16 at 2.

reasons below, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement represents a favorable result for the Settlement Class in light of the significant risks of continuing to litigate this Action. The Settlement will provide valuable compensation to the Settlement Class while avoiding further delay and the significant risks of continued litigation.

As alleged in the operative Corrected Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (the "**Amended Complaint**") (ECF 32) at ¶¶ 1 – 24 *et seq.*, Avon is one of the world's largest direct sellers, distributing beauty and personal care products globally through a model whereby outside sales representatives ("**Representatives**") purchase product directly from Avon and then resell it to the retail consumer. The Amended Complaint alleges that during the Class Period, Avon and the Individual Defendants tried to create the illusion that Brazil was still a growth center by (along with other practices) dramatically lowering credit standards for their Representatives in Brazil. Thus, during the Class Period, Defendants allegedly concealed that they dramatically loosened credit standards for Brazilian Representatives to mask declining performance. Defendants also stopped training Avon's Brazilian sales Representatives during the Class Period, another critical fact that Defendants allegedly affirmatively misrepresented. This led to the fraudulent inflation of the Company's revenues and the number of active Representatives in the Company's largest market, which caused Avon's common stock to trade at artificially inflated prices, reaching a high of nearly $7 per share. The Amended Complaint further alleges that Defendants violated GAAP by improperly recognizing revenue and failing to properly account for doubtful accounts as well as numerous specific false and misleading statements. The allegations in the Amended Complaint are buttressed by seven cooperating witnesses who are former Avon Representatives in Brazil. As the truth about the Company's problems in Brazil tricked out in a series of four corrective

disclosures, the price of the Company's stock precipitously declined from over $7 to under $2 per share.

The benefits of the Settlement are clear when weighed against the risk that the Settlement Class might recover less (or nothing) if litigation continued. The proposed Settlement will provide a meaningful recovery in a case where Defendants would have had substantial defenses to liability, including challenges to scienter, damages, and loss causation. Had the Action not settled, it would proceed through a contested motion for class certification and contested motions for summary judgment before trial and a likely appeal. All the while, Defendants would have advanced substantial arguments about class certification, liability, and damages. Among other things, Defendants were expected to contest: (1) whether, and the extent to which, various statements and/or omissions alleged by Plaintiffs were materially false or misleading or actionable under the securities laws; (2) whether any of the Defendants intended to mislead investors; (3) whether, and the extent to which, various statements and/or omissions alleged by Plaintiffs influenced the trading price of Avon common stock during the Class Period; (4) whether the price of Avon common stock was artificially inflated during the Class Period; (5) whether information provided by former Avon employees to Lead Counsel would be admissible at trial; (6) whether testimony from former Avon employees would be suppressed and/or excluded; (7) the method for determining whether and to what extent Avon common stock was artificially inflated during the Class Period including complicated disaggregation issues; and (8) the amount of such inflation, if any. Nespole Decl. ¶ 6.

Besides the challenges with respect to causation and damages, there were also significant risks that Defendants would be successful in defeating a motion for class certification or dismissing the action at summary judgment. There were also questions about Avon's financial

position, uncertainty surrounding the collection of a judgment, and issues surrounding discovery to be taken abroad during a pandemic. In the face of these risks – as well as the fully contingent nature of the case – Plaintiffs' Counsel devoted substantial resources to prosecuting this Action against highly skilled opposing counsel. *Id*. ¶¶ 14-27.

As detailed in the Nespole Decl. ¶¶ 15, 20-27, Lead Plaintiff filed the Amended Complaint following an extensive investigation. Defendants moved to dismiss and the Court denied their motion (ECF 46). The parties then engaged in discovery. In addition to the type of discovery generally undertaken in a complex litigation, discovery here involved issues surrounding cooperating witnesses located in Brazil who mostly spoke Portuguese. Plaintiffs drafted and served Defendants with demand for documents and requests for admissions. Plaintiffs also served Avon with a Rule 30(b)(6) deposition notice, seeking testimony about an extensive list of topics relevant to Lead Plaintiff's claims. Plaintiffs also responded to the discovery requests that Defendants served on them. The Parties engaged in numerous meet and confers concerning discovery. Complicating discovery was Avon's assertion that the requested documents were mostly in Brazil and would have to be translated to English (or possibly in London). There were also serious logistical issues given the Covid-19 Pandemic and how it was expected to affect Avon's ability to collect potentially responsive discovery as well as the general disruption to Avon's business. Nevertheless, Plaintiffs' Counsel pushed for discovery including developing search terms and identifying custodians beyond what Defendants had proposed.

Plaintiffs' use of cooperating witnesses gave rise to notable discovery issues. There was motion practice concerning the scope of the attorney work product privilege. Plaintiffs opposed a motion to compel, addressing issues concerning whether Defendants were entitled to Lead

Counsel's notes and records of meeting with the witnesses and their Brazilian counsel. Another discovery issue was whether the information provided by the witnesses could ultimately be used in the litigation to prove the allegations in the Amended Complaint if they could not travel to the United States to be deposed or be deposed in Brazil because of restrictions under Brazilian law. In that regard, Plaintiffs' Counsel took steps to retain counsel in Brazil for the cooperating witnesses located there. Plaintiffs' Counsel worked with Brazilian counsel to obtain sworn declarations from the witnesses confirming the information they previously related which had been included in the Amended Complaint. *Id.*

Plaintiffs' Counsel moved for class certification, produced the proposed class representatives' documents, and began to prepare the proposed class representatives for their depositions. Plaintiffs' Counsel further spent significant time with their retained damages expert to address the complicated disaggregation issue, how to rebut evidence of confounding events (*i.e.,* events unrelated to the alleged fraud which led to a drop in the stock price), and structure a theory of damages and liability that would support a finding that class certification was appropriate. Plaintiffs' Counsel further reviewed over 15,000 pages of documents provided by Defendants. This production, though a subset of the full production demanded, consisted of Board minutes and other reports concerning the core allegations in the Amended Complaint.[3] *Id.*

As the Parties vigorously litigated the Action, they began to test whether it was possible to reach a negotiated resolution. The Parties ultimately participated in a Zoom mediation session held before mediator Robert A. Meyer, Esq. of JAMS (the "**Mediator**"). Following additional discussions occurring over the following days among the Parties with the assistance of the

---

[3] The production was made pursuant to a confidentiality agreement that remains in effect. Accordingly, Lead Counsel's discussion of the documents is circumscribed. If the Court is so inclined, Lead Counsel is prepared to discuss the documents in detail *in camera*.

Mediator, the Parties reached an agreement to settle this Action for $14,500,000. *Id.* ¶¶ 29-30. The Settlement is the result of this mediation. *Id.*

Against this backdrop, Lead Counsel requests a fee of 30% of the Settlement Fund, which represents a modest lodestar "multiplier" of 1.63, and payment of litigation expenses in the amount of $157,000. The requested fee is made with the full support of the Plaintiffs. *See* Ngo Decl. ¶¶ 9 – 11 and Klungle Decl. ¶¶ 7 – 9. As demonstrated below, the request is well within the range of attorneys' fees typically awarded in securities class actions and is well supported by both case law and the facts of this case. Lead Counsel also moves for awards pursuant to 15 U.S.C. §78u-4(a)(4) in the amount of $7,500 to Lead Plaintiff Holly Ngo and in the amount of $1,220 to additional named plaintiff David Klungle in recognition of their significant assistance to Plaintiffs' Counsel in prosecuting this Action. Nespole Decl. ¶ 10; Ngo Decl. ¶¶ 3 – 6; Klungle Decl. ¶ 4. For the foregoing reasons, Lead Counsel respectfully submits that the requested fees, expenses and PSLRA awards should be approved.

## ARGUMENT

### I.    A Reasonable Percentage of the Fund Recovered is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The purpose of the common fund doctrine is to fairly and adequately compensate counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation on their behalf. *See id.* at 47.

Courts have recognized that, in addition to providing just compensation, "awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *City of Providence v. Aeropostale, Inc.*, No. 11-cv-7132 (CM), 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015).

The Second Circuit has authorized district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases. *See Goldberger,* 209 F.3d at 47 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used). In expressly approving the percentage method, the Second Circuit recognized that "the lodestar method proved vexing" and resulted in "an inevitable waste of judicial resources." *Goldberger,* 209 F.3d at 48, 49; *Savoie v. Merchs. Bank,* 166 F.3d 456, 460 (2d Cir. 1999) (stating that "the percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases").

Indeed, "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005);[4] *see also In re Blech Sec. Litig.*, No. 94 Civ. 7696, 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000) ("This court … continues to find that the percentage of the fund method is more appropriate than the lodestar method for determining attorney's fees in common fund cases."); *In re IMAX Sec. Litig.,* No. 06 Civ 6128 (NRB), 2012 WL 3133476, at

---

[4] All internal quotations and citations are omitted unless otherwise stated.

*5 (S.D.N.Y. Aug. 1, 2012) ("the percentage method continues to be the trend of district courts in the [Second] Circuit").

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method in determining a reasonable attorneys' fee here.

## II.    A Fee of 30% is Consistent with Fees Awarded in Comparable Cases in this District

Many courts within the Southern District of New York have previously awarded fees of 30% in comparably complex securities class actions. *See, e.g.*, *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding over 30% and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *Stefaniak v. HSBC Bank USA,  N.A.*, No. 05-720, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of fund, finding it "typical in class action settlements in the Second Circuit"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 368 (S.D.N.Y. 2002) (awarding $33 \frac{1}{3}$% of $11.5 settlement and citing cases that also awarded over 30% including *In re Apac Teleservs., Inc. Sec. Litig.*, No. 97-cv-9145 (S.D.N.Y. June 29, 2001), where the court awarded $33 \frac{1}{3}$% of a $21 million settlement, and *Newman v. Caribiner Int'l Inc.*, No. 99-cv-2271 (S.D.N.Y. Oct. 25, 2001), where the court awarded $33 \frac{1}{3}$% of a $15 million settlement); *Schnall v. Annuity & Life Re (Holdings), Ltd.*, No. 02-cv-2133, slip op. at 8-9 (D. Conn. Jan. 21, 2005) (awarding $33 \frac{1}{3}$% of $16.5 million common fund);[5] *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (awarding 33% of a $13 million settlement); *Taft v. Ackermans*, No. 02-cv-7951 (PKL), 2007 WL 414493, at *1, 11 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.175

---

[5] All unreported decisions are submitted herewith in the compendium, arranged by alphabetical order, attached as Exhibit A to the Nespole Decl.

million common fund); *In re LaBranche Sec. Litig*, No. 03-cv-8201, slip op. at 1 (S.D.N.Y. Jan.

22, 2009) (awarding 30% of $15 million common fund); *City of Providence,* 2014 WL 1883494,

at *20 (awarding 33% of $15 million settlement).

The requested fee is also well within the range of percentage fee awards that have been

granted in comparable securities class actions in other Circuits.  *See, e.g., Public Pension Grp. v.*

*KV Pharm. Co*., No. 08-cv-1859 (CEJ), slip op. at 2 (E.D. Mo. Apr. 23, 2014) (awarding 30% of

$12.8 million settlement); *Klugmann v. Am. Capital Ltd*., No. 09-cv-00005-PJM, slip op. at 9 (D.

Md. June 12, 2012) (awarding 33.3% of $18 million settlement); *In re Heritage Bond Litig.*, No.

02–ML–1475 DT (RCx), 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (awarding $33^{1}/_{3}$%

of $27.78 million settlement); *In re E.W. Blanch Holdings, Inc. Sec. Litig*., No. 01-258, 2003 WL

23335319, at *3 (D. Minn. June 16, 2003) (awarding $33^{1}/_{3}$% of $20 million settlement).

Accordingly, the 30% fee requested here is consistent with fees awarded in similar cases

in this District and nationwide.

## III.   The Factors Considered Within the Second Circuit Confirm that the Requested Fee is Reasonable

The Second Circuit has set forth the following criteria that courts should consider when

reviewing a request for attorneys' fees in a common fund case, whether under the percentage

common fund approach or the lodestar multiplier approach:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. As discussed below, these factors and the analyses herein

demonstrate that Lead Counsel's requested fee is reasonable.

### A.    Plaintiffs' Counsel has Devoted Substantial Time and Labor to the Action

The time and effort expended by Plaintiffs' Counsel in prosecuting the Action and achieving the Settlement support the requested fee.

As set forth in greater detail in the Nespole Decl. at ¶ 15 – 27, Plaintiffs' Counsel thoroughly investigated the facts by scouring the public record, interviewing 60 Representatives and securing seven cooperating witnesses. Plaintiffs' Counsel then successfully opposed Defendants' motion to dismiss, after which the Parties engaged in hard fought discovery involving a number of unusual issues because most of the relevant documents and witnesses were in Brazil or London. Plaintiffs' Counsel reviewed over 15,000 pages of documents produced by Defendants. Plaintiffs' Counsel moved for class certification after spending significant time with their retained damages expert to address complex damages issues such as disaggregation (*i.e.,* determining how much of the decline in the price of Avon's stock was attributable to the alleged fraud and how much was attributable to factors wholly independent of the alleged fraud), how to rebut evidence of confounding events (*i.e.,* events unrelated to the alleged fraud which led to a drop in the stock price), and structure a theory of damages and liability that would support a finding that class certification was appropriate.

In connection with this work, Plaintiffs' Counsel expended a total of 3,808.8 hours with a lodestar value of $2,673,314.75. *See* Nespole Decl. ¶¶ 60-63; Fox Decl. ¶ 4. At all times, Lead Counsel took care to staff the matter efficiently and avoided unnecessary duplication of effort. Accordingly, it is respectfully submitted that the time and labor dedicated to the litigation support the fee request.

### B.    The Magnitude and Complexity of the Action Support the Requested Fee

The magnitude and complexity of the Action also support the requested fee. Courts routinely recognize that securities class action litigation is "notably difficult and notoriously

uncertain." *City of Providence,* 2014 WL 1883494, at *5; *In re FLAG Telecom Holdings, Ltd.* No. 02-cv 3400, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (same). This case was no different.

As discussed in the Nespole Declaration, this Action involved difficult, complex, and hotly disputed issues relating to loss causation, damages and disaggregation. Prosecuting the claims of the Settlement Class required skill and dedication. Accordingly, the magnitude and complexity of the Action supports the conclusion that the requested fee is fair and reasonable. *City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

## C. The Risks of the Litigation Support the Requested Fee

"Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004). "Courts have repeatedly recognized that 'the risk of litigation' is a pivotal factor in assessing the appropriate attorneys' fees to award plaintiffs' counsel in class actions." *In re Telik, Inc. Sec. Litig.* 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008). For this reason, the Second Circuit has said that "[t]he level of risk associated with litigation . . . is 'perhaps the foremost factor' to be considered in assessing the propriety of the multiplier." *McDaniel v. County of Schenectady*, 595 F.3d 411, 424 (2d Cir. 2010) (quoting *Goldberger*, 209 F.3d at 54).

While Lead Counsel remains confident in its ability to prove Plaintiffs' claims and to effectively rebut Defendants' defenses, it recognizes that proving liability and recovering damages for the Class was far from certain. The likelihood of a recovery was further complicated because the Company's primary operations, assets, documents and witnesses are located in Brazil and London. The primary risks are discussed below. For a more detailed discussion, the

11

Court is respectfully referred to the Nespole Declaration at ¶¶ 34-44 and the accompanying Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation at Point I(D)(4) – (6).

### 1.    Risks Related to Liability

Lead Plaintiff would have faced significant hurdles in proving her case on liability. Litigation of the claims alleged in this case was expected to raise complex questions concerning scienter, loss causation, and damages that would require substantial efforts by Plaintiffs and Plaintiffs' Counsel. Assuming the claims survived a motion for summary judgment, a jury trial would have required substantial factual and expert testimony, which is always uncertain. Whatever the outcome at trial, it was virtually certain that an appeal would have been taken. All the foregoing would have posed considerable expense to the Parties and would have delayed any potential recovery for several years. Nespole Decl. ¶ 35. A major challenge to prosecuting this case through motions for summary judgment and then through trial would have been the issue of disaggregation, *i.e.*, determining how much of the decline in the price of Avon's stock was attributable to the alleged fraud and how much was attributable to factors wholly independent of the alleged fraud. *Id.* ¶ 36.

Thus, there were very significant risks in prevailing, had the case not settled, and no guarantee that Defendants' liability could be established. *See In re Bayer AG Sec. Litig.*, No. 03-cv-1546, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008) (noting "the difficulty in proving that Defendants acted with scienter, militate in favor of fee awards."). Establishing liability would have been further complicated by the challenge of taking significant discovery in Brazil and London during the pandemic, with no guarantees that third parties located there would be willing or allowed to cooperate or travel and few if any means to cost effectively compel their compliance. Nespole Decl. ¶ 36.

### 2.      Risks Related to Loss Causation, Damages and Market Efficiency

Whether Lead Plaintiff could demonstrate loss causation and damages and overcome issues of market efficiency could also vigorously challenged by Defendants and would continue to require a significant amount of effort on the part of Plaintiffs' Counsel. "Proof of damages in complex class actions is always complex and difficult and often subject to expert testimony." *Shapiro v. JPMorgan Chase & Co.*, 11 Civ. 7961(CM), 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014).

As to loss causation, Lead Counsel anticipates that Defendants would have argued that Lead Plaintiff's event study would be unable to disaggregate for only fraud-related inflation. Defendants would have argued that causation was speculative because Plaintiffs' damages model did not account for the effect of the record macroeconomic downturn in Brazil, or consequential effects such as the tightening of recruiting terms, or other factors such as the announcement of lower-than-expected revenues due to lower sales and higher tax rates. Nespole Decl. ¶ 38. Lead Plaintiff would have also had to overcome issues surrounding market efficiency, namely that Avon securities suffered at least four declines during the Class Period stemming from several causes, not just Representative retention and debt. *Id.* ¶ 39.

In order for the Settlement Class to recover damages at the maximum level estimated by Lead Plaintiff's damages expert, it would need to prevail on each and every one of the claims alleged and establish loss causation related to the alleged disclosures. The damage assessments of the Parties' trial experts would be sure to vary substantially, and expert discovery and trial would become a "battle of experts" requiring significant work on the part of Plaintiffs' Counsel. *See, e.g., In re Flag Telecom Holdings Ltd. Sec. Litig.*, 2010 WL 4537550, at *28 (burden in proving the extent of the class's damages weighed in favor of approving fee request).

13

### 3.      Risks Related to Class Certification

Defendants would undoubtedly have raised vigorous challenges to class certification, and such disputes could well devolve into yet another battle of the experts. Additionally, class certification can be reviewed and modified at any time by the Court before final judgment. Although Lead Counsel believes there are strong grounds for certifying a litigation class, discussed in the Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel (ECF 53) and the Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement (ECF 72) at Point II, Defendants contended that the motion for class certification was accompanied by an event study that they asserted did not provide insight into how damages were to be measured, the underlying assumptions, or how it would adjust for disaggregation for only fraud-related price inflation. Nespole Decl. ¶ 43. Admittedly, the disaggregation issues presented unique challenges to class certification and a four "corrective disclosure" class period is unusual and affords ample fodder to attack the proposed class as being too long or possibly not entitled to the presumption of reliance. *Id*. The Settlement avoids any uncertainty with respect to class certification and risks of maintaining certification of the class through trial and on appeal.

### 4.      Risks Related to the Collection of a Judgment

Lead Plaintiff's ability to recover was also negatively colored by the ongoing disruption to Avon's business model. As the Company noted in its most recent quarterly report for the period ended September 30, 2020 filed with the SEC on Form 10-Q, "COVID-19 had a significant impact on our operations as many markets were subject to lockdown restrictions

which limited our ability to recruit and enroll Representatives…."[6] It is entirely unpredictable how Avon's direct selling business model will fare given the unprecedented challenges that it is facing.

### 5.    The Contingent Nature of Counsel's Representation

Despite the uncertainties concerning the outcome of the case, Plaintiffs' Counsel undertook this Action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no or potentially little recovery and leave Plaintiffs' Counsel uncompensated for their significant investment of time and expenses. Courts within the Second Circuit have consistently recognized that this risk is an important factor favoring an award of attorneys' fees. *See, e.g.*, *In re Am. Bank Note Holographics, Inc. Sec. Litig*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award").

Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Plaintiffs' Counsel has not been compensated for any time or expenses and would have received no compensation or expenses had this case not achieved a recovery for the Settlement Class. From the outset, Plaintiff's Counsel understood that they were embarking on a complex, expensive, and lengthy endeavor with no guarantee of ever being compensated. In undertaking that responsibility, Plaintiffs' Counsel was obligated to ensure that sufficient attorney and professional resources were dedicated to the prosecution of the Action and that funds were available to compensate staff and to pay for the costs entailed.  Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingent basis, expended thousands of hours and millions of dollars in expenses and time and

---

[6] *See* https://www.sec.gov/ix?doc=/Archives/edgar/data/8868/000000886820000025/avp-20200930.htm (last accessed December 12, 2020).

received nothing for their efforts.[7] This case could have been dismissed like so many others on summary judgment, or if class certification were denied, leading to absolutely no recovery for the class and no fee for Plaintiffs' Counsel. Accordingly, the contingency risk in this case supports the requested attorneys' fee.

### D.    The Quality of Plaintiffs' Counsel's Representation

The quality of the representation by Plaintiffs' Counsel is another important factor that supports the reasonableness of the requested fee.

Since the passage of the PSLRA, Lead Counsel Levi & Korsinsky and additional plaintiffs' counsel Labaton Sucharow have each been approved by courts to serve as lead counsel in numerous notable securities class actions throughout the United States. *See* Exhibit B to the Nespole Decl. (Levi & Korsinsky's firm resume) and Exhibit A to the Fox Declaration (Labaton Sucharow's firm resume). Here, Plaintiffs' Counsel have devoted considerable time and effort to this case, thereby bringing to bear many years of collective experience.

The quality of opposing counsel is also important in evaluating the quality of Plaintiffs' Counsel's work.  *See Flag Telecom*, 2010 WL 4537550, at *28; *Teachers Ret. Sys*., 2004 WL 1087261, at *20. Defendants are represented by Cravath, Swaine & Moore LLP, a first rate firm highly skilled in securities litigation and with significant resources. Faced with this formidable

---

[7] *See, e.g.*, *Robbins v. Koger Props., Inc*., 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Bentley v. Legent Corp*., 849 F. Supp. 429 (E.D. Va. 1994), *aff'd*, *Herman v. Legent Corp*., 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation); *Anixter v. Home-Stake Prod. Co*., 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Comput. Sec. Litig*., No. C-84-20148, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *In re BankAtlantic Bancorp, Inc.,* No. 07-cv-61542 (S.D. Fla. 2010) (granted defendants' motion for judgment as a matter of law on loss causation grounds following a plaintiffs' jury verdict), *aff'd,* 688 F. 3d 713 (11th Cir. 2012).

opposition, Plaintiffs' Counsel were nevertheless able to develop Plaintiffs' case so as to resolve the Action on terms favorable to the Settlement Class. *See, e.g.*, *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, MDL No. 03-1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x. 9 (2d Cir. 2008).

### E.     The Requested Fee in Relation to the Settlement

"In determining whether the Fee Application is reasonable in relation to the settlement amount, the Court compares the Fee Application to fees awarded in similar securities class-action settlements of comparable value." *In re Marsh & McLennan*, *Co. Sec. Litig*. No. 04-8144, 2009 WL 5178546, at *19 (S.D.N.Y. Dec. 23, 2009); *see also In re Veeco Instruments Inc. Sec. Litig,* No. 05-1695, 2007 WL 4115808, at *4 (S.D.N.Y. Nov. 7, 2007) (noting that the fee awarded is "consistent with fees awarded in a similar class actions settlements of comparable value").  As discussed above, the attorneys' fees requested here are well within the range of percentage fee awards in comparable securities class action cases within this District.  *See* Point II, *supra.*

### F.     Public Policy Considerations Support the Requested Fee

The federal securities laws are remedial in nature and, to effectuate their purpose of protecting investors, it is respectfully submitted that courts should encourage meritorious private lawsuits such as this one. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988). The Supreme Court has emphasized that private securities actions provide "a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (noting that the court has long recognized that meritorious

private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions).

Courts within the Second Circuit have reasoned that if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29. Specifically, "[i]n order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005)); *see also Hicks v. Stanley*, No. 01-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

It is respectfully submitted that lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved. Public policy therefore supports awarding Lead Counsel's attorneys' fee request.

### G.   The Requested Attorneys' Fees are Reasonable Under the Lodestar Cross-Check

To ensure the reasonableness of a fee awarded under the percentage method, the Second Circuit encourages a "crosscheck" against counsel's lodestar. *Goldberger*, 209 F.3d at 50. Under the lodestar method, a court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each timekeeper spent on the case by each person's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result

obtained, and the quality of the attorney's work. *See, e.g., Flag Telecom*, 2010 WL 4537550, at *26 ("Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent nature of the engagements, the skill of the attorneys, and other factors"). Performing the lodestar cross-check here confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Plaintiffs' Counsel has expended a total of 3,808.8 hours in the prosecution of this Action for a lodestar of $2,673,314.75 at current hourly rates. *See* Nespole Decl. ¶ 60 (Levi & Korsinsky's lodestar); Fox Decl. ¶ 4 (Labaton Sucharow's lodestar). "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12–cv–8557 (CM), 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *see also Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (similar); *Telik*, 576 F. Supp. 2d at 589 n.10 (similar).

The hourly rates of Plaintiffs' Counsel here range from $895 to $1,100 for partners, $335 to $675 for other attorneys, and $150 to $565 for professional staff. Nespole Decl. ¶ 61, Fox Decl. ¶ 5. "In determining the propriety of the hourly rates charged by plaintiffs' counsel in class actions, courts have continually held that the standard is the rate charged in the community where the services were performed for the type of services performed by counsel." *Telik*, 576 F. Supp. 2d at 589. In fact, "perhaps the best indicator of the 'market rate' in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that *defend* class actions on a regular basis." *Id*. It is respectfully submitted that the hourly rates

for attorneys and professional staff above are reasonable and customary within the securities class action bar. Nespole Decl. ¶ 61, Fox Decl. ¶ 5.

Thus, the amount of attorneys' fees requested by Lead Counsel on behalf of Plaintiffs' Counsel ($4,350,000) represents a modest multiplier of 1.63 of their lodestar. Such a multiplier is well within the parameters used throughout district courts in the Second Circuit and is additional evidence that the requested fee is reasonable. Indeed, greater lodestar multiples are commonly awarded within the Second Circuit. *See, e.g., Wal-mart Stores, Inc. v. Visa USA, Inc.*, 396 F. 3d 96, 123 (2d Cir. 2005) (upholding a multiplier of 3.5 as reasonable on appeal); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-1825, 2010 WL 2653354, at *5 (S.D.N.Y. June 24, 2010) (approving a 2.78 multiplier in case involving a $165 million settlement); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 359 (E.D.N.Y. 2010) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-9475 (NRB), 2005 WL 7984326, at *4 (S.D.N.Y. June 9, 2005) (approving a 3.96 multiplier); *Maley,* 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country").

Accordingly, it is respectfully submitted that the requested fee would be reasonable, whether calculated as a percentage-of-the-fund or in relation to Lead Counsel's lodestar.

## IV. Counsel's Expenses are Reasonable and were Necessarily Incurred to Achieve the Benefit Obtained

Lead Counsel's fee application includes a request for payment of litigation expenses to Plaintiffs' Counsel, which were reasonably incurred and necessary to prosecute the Action. Plaintiffs' Counsel incurred a total of $157,000.04 in litigation expenses as set forth and itemized in the Nespole Decl. ¶ 74 and the Fox Decl. ¶ 7. This amount is below the $210,000 maximum

expenses that the Notice informed potential Settlement Class Members that Lead Counsel may apply for, and which to date there has been no objections to.  Nespole Decl. ¶ 75, Mahn Decl. Exhibit A. Of the total amount of requested expenses, over 58% was expended on expert and consultant fees whose assistance was critical in addressing the complex issues of damages, market efficiency and disaggregation which led to the Parties' agreeing to the proposed Settlement. Nespole Decl. ¶¶ 26, 40; Fox Decl. ¶ 7. The other expenses for which Plaintiffs' Counsel seek payment are other expert and consulting fees and other expenses that are necessarily incurred in securities class action litigation, such electronic research, electronic discovery, mediation fees and travel expenses.  Nespole Decl. ¶ 72; Fox Decl. ¶ 7. These expenses are properly recoverable by counsel. *See In re China Sunergy Sec. Litig.*, No. 07-cv-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation…'"). Plaintiffs' Counsel does not seek reimbursement for routine overhead expenses such as photocopying and telephone calls. Nespole Decl. ¶ 72; Fox Decl. ¶ 7.

## V.     The Reaction of the Settlement Class to Date Supports the Requested Fee

The reaction of the Settlement Class to date also supports the fee request. Through December 15, 2020, the Claims Administrator has mailed 63,091 Notices (including Proof of Claim Forms) to potential Settlement Class members or their nominees informing them of, among other things, Lead Counsel's intention to apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund and up to $210,000 in expenses. Mahn Decl. ¶ 10; *id.* Exhibit A and Exhibit B. While the time to object to the fee and expense application does not expire until December 30, 2020, to date no objections have been received.

Nespole Decl. ¶ 75. If any objections should be timely submitted, Lead Counsel will address them in reply papers.

## VI.    Application for Awards to Lead Plaintiff and Additional Named Plaintiff

Lead Counsel also moves for modest awards of $7,500 to Lead Plaintiff Holly Ngo and $1,220 for David Klungle for the time they spent representing the class and assisting in the prosecution of this Action. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).

"Such awards are not uncommon and can serve an important function in promoting class action settlements." *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 2002 WL 2003206, at *5 (E.D.N.Y. Aug. 1, 2002). These awards are "meant to compensate the named plaintiff for… any additional effort expended by the individual for the benefit of the lawsuit." *Dornberger v. Metro Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001). *See also Roberts v. Texaco*, 979 F.Supp. 185, 187-188 (S.D.N.Y. 1997) (approving PSLRA award for class plaintiff who "provided valuable assistance to counsel in prosecuting the litigation"); *Denney v. Jenkins & Gilchrist,* 230 F.R.D. 317, 355 (S.D.N.Y. 2005) (such awards serve a particularly important function where the named plaintiff participated actively in the litigation). *See also City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 2015 WL 13639234 , at *4 (S.D.N.Y. Oct. 15, 2015) (awarding $16,800.11 to lead plaintiff and additional named plaintiffs "to compensate them for their reasonable costs and expenses directly relating to their representation of the Class"); *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award of $30,000 to lead plaintiffs "to compensate them for the time and effort they devoted on behalf of a class"), *aff'd*, 452 F. App'x 75 (2d Cir. 2012); *FLAG Telecom*, 2010 WL

4537550, at *31 (approving award of $100,000 to lead plaintiff for time spent in the litigation); *Veeco*, 2007 WL 4115808, at *12 (characterizing such awards as "routine[]" in this Circuit).

Here, Lead Plaintiff Holly Ngo actively participated in litigating the Action by, among other things, (i) regularly communicating with Lead Counsel concerning the Action, including a weekly conference call with Lead Counsel; (ii) remaining fully informed about developments in the case; (iii) reviewing pleadings and materials filed with the Court, asking questions and providing comment; (iv) monitoring the progress of the case and staying informed about case developments; (v) reviewing and offering comments to the mediation statement and actively participating in the settlement discussions via telephone; (vi) actively preparing with Lead Counsel for her deposition, including studying the pleadings and materials that were filed with the Court and going through discovery materials; and (vii) assisting Lead Counsel in preparing the motion for preliminary approval which included her Declaration in support. *See* Ngo Decl. ¶¶ 3 – 6. Ms. Ngo spent approximately 70 hours helping the prosecution of this Action which she would have otherwise spent on other activities. *Id.* ¶ 7. Her requested PSLRA award of $7,500 thus results in an effective hourly rate of $107.14. *Id.*

Mr. Klungle likewise actively participated in litigating the Action by, among other things, (i) regularly communicating with Plaintiffs' Counsel concerning the Action; (ii) reviewing pleadings and materials filed with the Court and discovery exchanged between the parties and discussing them with Plaintiffs' Counsel; (iii) monitoring the progress of the Action and remaining informed about developments; (iv) preparing for and participating in a remote electronic collection from his computer system which housed data related to his transactions in Avon securities and participation in the Action; (v) conferring with Plaintiffs' Counsel about his then-upcoming deposition; and (vi) discussing the progress and ultimate settlement of the Action

23

with Plaintiffs' Counsel. Klungle Decl. ¶ 4. Mr. Klungle spent approximately 40 hours helping the prosecution of this Action which he would have otherwise spent on other professional activities. *Id.* ¶ 6. His requested PSLRA award of $1,220 thus results in an effective hourly rate of $30.50. *Id.*

In light of the foregoing, Lead Counsel respectfully submits that a $7,500 PSLRA award to Ms. Ngo and a $1,220 PSLRA award to Mr. Klungle is reasonable under the circumstances. *See Roberts*, 979 F.Supp. at 188 (incentive award of between $2,500 and $85,000 depending on participation in the action).

## **CONCLUSION**

For the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 30% of the Settlement Fund and $157,000 in litigation expenses; award Lead Plaintiff Holly Ngo and additional named plaintiff David Klungle $7,500 and $1,220 respectively under 15 U.S.C. §78u-4(a)(4); and grant such other and further relief as the Court deems just and proper. A proposed Order will be submitted with Lead Counsel's reply papers; or if there are no reply papers, then after the deadline for objections has passed.

Dated: New York, New York
December 16, 2020

**LEVI & KORSINSKY, LLP**

 */s/ Gregory M. Nespole*
Joseph E. Levi
Gregory Mark Nespole
55 Broadway, 10th Floor
New York, NY 10006
T: (212) 363-7500
F: (212) 363-7171
E: jlevi@zlk.com
   gnespole@zlk.com

*Plaintiffs' Lead Counsel*

**LABATON SUCHAROW LLP**
Christine M. Fox (CF-2910)
140 Broadway
New York, New York 10005
T: (212) 907-0700
F: (212-818-0477
E: Cfox@labaton.com

*Plaintiffs' Counsel*