UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Avon Products Inc. Securities Litigation | No. 19-cv-01420-MKV<br>CLASS ACTION |

# MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR ENTRY OF AN ORDER APPROVING DISTRIBUTION OF THE <u>NET SETTLEMENT FUND TO AUTHORIZED CLAIMANTS</u>

LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
(212) 363-7500

*Plaintiffs' Lead Counsel*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

   I.   CLAIMS ADMINISTRATION TO DATE ................................................................... 2

      A.  Processing Proofs of Claim ................................................................................ 2

      B.  Identification of Deficiencies in Claims............................................................. 3

      C.  Issuance of Deficiency Letters ........................................................................... 4

      D.  Disputed Claims ................................................................................................. 5

      E.  Quality Assurance Review ................................................................................. 6

      F.  Processing of Late but Otherwise Eligible Claims............................................. 8

   II.   DISTRIBUTION PROCEDURE FOR THE NET SETTLEMENT FUND ....................... 9

   III.  RECORD RETENTION AND DESTRUCTION ............................................................. 11

   IV.  AUTHORIZATION FOR ADDITIONAL PAYMENT TO EPIQ ................................. 11

CONCLUSION .............................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Cases**

*Blank v. Jacobs*,
  No. 03-cv-2111-JS, 2013 WL 1310503 (E.D.N.Y. Mar. 27, 2013) .......................................... 5

*In re Citigroup Inc. Sec. Litig.*,
  199 F. Supp. 3d 845 (S.D.N.Y. 2016)...................................................................................... 11

*In re Citigroup Inc. Secs. Litig.*,
  No. 09 MD 2070-SHS, 2014 WL 2445714 (S.D.N.Y. May 30, 2014) ...................................... 4

*In re Goldome Secs. Litig.*,
  No. 88 Civ. 4765-JES, 1991 WL 113263 (S.D.N.Y. June 20, 1991) .................................... 4, 8

Court-appointed Lead Plaintiff Holly-Ngo ("**Lead Plaintiff**"), by her undersigned Court-appointed Lead Counsel Levi & Korsinsky, LLP ("**Lead Counsel**"), respectfully submits this memorandum of law in support of Lead Plaintiff's Motion for Entry of an Order Approving Distribution of the Net Settlement Fund to Authorized Claimants (the "**Distribution Order**"). A copy of the proposed Distribution Order is respectfully submitted herewith.[1]

## INTRODUCTION

On February 3, 2021, the Court entered judgment granting final approval of the Settlement between Lead Plaintiff and additional plaintiff David Klungle on behalf of themselves and each of the Class Members, on the one hand, and defendants Avon Products, Inc. ("**Avon**" or the "**Company**"), Sherilyn S. McCoy, James S. Scully, James S. Wilson, and David Legher (collectively, the "**Settling Defendants**"), on the other hand. ECF No. 95. Pursuant to the terms of the Settlement, Settling Defendants have paid $14,500,000 into escrow for the benefit of the Settlement Class.

As detailed in the accompanying Mahn Declaration, after dissemination of 63,102 Notice Packages to potential Settlement Class Members and nominees, the Claims Administrator received 8,860 Proofs of Claim. *See* Mahn Decl., ¶¶ 4, 6. Epiq determined that 3,673 of the Proofs of Claim are acceptable for payment in whole or in part (the "**Authorized Claims**") and that 5,187 Claims should be wholly rejected. *See* Mahn Decl., ¶ 38.

The Effective Date set forth in the Settlement has passed, and all Claims have been processed. Accordingly, subject to Court approval, the Net Settlement Fund may now be

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning as in the Stipulation and Agreement of Settlement filed on August 21, 2020 (ECF No. 71-1, the "**Stipulation**") or the accompanying Declaration of Jessie M. Mahn in Support of Lead Plaintiff's Motion for Order Authorizing Distribution of Class Action Settlement Proceeds (the "**Mahn Declaration**").

distributed to Authorized Claimants. Lead Plaintiff respectfully requests that the Court enter the Distribution Order, which approves Epiq's claim determinations and authorizes Epiq to implement the Distribution Plan, as fully set forth in the Mahn Declaration.

I.  **CLAIMS ADMINISTRATION TO DATE**

In accordance with the Court's Preliminary Approval Order (ECF No. 74), Epiq mailed copies of the Notice and Proof of Claim form (together, the "**Notice Packets**") to all Settlement Class members who could be identified through reasonable effort. *See* Mahn Decl., ¶ 4. In addition, Epiq caused the Summary Notice to be published in *Investor's Business Daily* and over the *PR Newswire*. *Id.* ¶ 5. The Notice Packets, along with other important case documents, were posted on the Settlement Website (www.AvonSecuritiesLitigation.com), which Epiq maintained to enable Class Members to access information about the case and the Settlement.

The Notice informed Settlement Class members of the essential terms of the Settlement, Lead Counsel's Fee and Expense Application, the proposed Plan of Allocation, the procedure for submitting Proof of Claim forms, and for requesting exclusion from the Settlement Class. Once Proofs of Claim were received by Epiq, they were uploaded into a database along with all submitted documentation, and each Proof of Claim was assigned a unique Proof of Claim number.

   A.  **Processing Proofs of Claim**

A total of 8,860 Proofs of Claim were received by Epiq through October 31, 2021. Mahn Decl. ¶ 6. Of those Proofs of Claim, 889 were paper Proofs of Claim, 441 were submitted online via the Settlement Website, and 7,530 were filed electronically by institutional investors and nominees. *See* Mahn Decl., ¶¶ 8, 11, 13. After going through the time-intensive and laborious task of preparing paper Proofs of Claim for scanning, Epiq scanned all paper Proofs of Claim into a database, together with all submitted documentation. *Id.*, ¶ 8. Once scanned, the information from

each Proof of Claim was entered into a database developed by Epiq to process Proofs of Claim and the documentation provided in support of each Proof of Claim was reviewed. *Id.*, ¶¶ 8-10. Similarly, Proofs of Claim submitted via the Internet were uploaded into the case database on a nightly basis. *Id.*, ¶ 12. Proofs of Claim submitted electronically by institutional investors and nominees were similarly coded and processed through rigorous procedures. *Id.*, ¶¶ 13-17.

### B.  Identification of Deficiencies in Claims

Once Proofs of Claim were entered into the database and assigned a unique identifier, Epiq undertook an extensive review of the Proofs of Claim to determine which Proofs of Claim were wholly or partially deficient. Mahn Decl., ¶¶ 8-17. Epiq utilized internal codes to identify and classify any deficiency or ineligibility conditions that existed within the Proofs of Claim. *Id*. For example, where a Proof of Claim was submitted by a Claimant who did not have any eligible transactions in the Securities during the Class period, that Proof of Claim would receive a deficiency code that denoted ineligibility. *Id*. Similar codes were used to denote other ineligible conditions, such as duplicate Proofs of Claim. *Id*. These codes indicated to Epiq that the Claimant was not eligible to receive any payment from the Net Settlement Fund with respect to that Proof of Claim unless the deficiency was cured in its entirety. *Id*.

As a Proof of Claim could be deficient only in part, Epiq utilized codes that applied only to specific transactions within a Proof of Claim. *See* Mahn Decl., ¶¶ 9-10. For example, if a Claimant submitted a Proof of Claim with supporting documentation for all but one purchase transaction, that one transaction would receive a transaction-specific deficiency code. *Id*. That code indicated that, while the one transaction was deficient, the Proof of Claim would otherwise be eligible for payment if the other transactions in the Proof of Claim calculated to a Recognized Loss

according to the Plan of Allocation. *Id*. Accordingly, even if the Claimant did not cure the transaction-specific deficiency, the Proof of Claim could still be partially accepted. *Id*.

After processing the Proofs of Claim and undertaking a quality assurance review, Epiq determined that 5,002 Claims should be rejected because they are either ineligible, wholly deficient, or have no Recognized Loss when calculated in accordance with the Plan of Allocation. Mahn Decl., ¶ 39. *See In re Citigroup Inc. Secs. Litig.*, No. 09 MD 2070-SHS, 2014 WL 2445714, at *2-3 (S.D.N.Y. May 30, 2014) (upholding claims administrator's rejection of claims where claimants did not hold shares during the necessary time period and therefore "suffered no loss"). Additionally, 146 Claims have been withdrawn and 39 Claims were submitted in duplicate. *See* Mahn Decl, ¶ 39. Epiq therefore recommends that the Court also reject these withdrawn and duplicate Claims. *See In re Goldome Secs. Litig.*, No. 88 Civ. 4765-JES, 1991 WL 113263, at *1, *3 (S.D.N.Y. June 20, 1991) (accepting claims administrator's rejection of claims where "(1) the purchase took place outside the class period; (2) the claim showed no purchase of the stock; . . . (5) the claim submitted was duplicate of a previously filed claim; (6) the claimant failed to correct a deficiency in the documents provided to the claims administrator after being given notice; or (7) the claimant withdrew the claim.").

### C. Issuance of Deficiency Letters

Of the paper and Internet Proofs of Claim submitted, approximately 67% were incomplete or had one or more defects or conditions of ineligibility. *See* Mahn Decl., ¶ 19. For example, the Proof of Claim may not have been signed or properly documented or the Proof of Claim indicated no eligible transactions in the Securities. *Id*.

For Claims determined to be wholly or partially deficient or ineligible for any of the reasons discussed in the Mahn Declaration, Epiq either mailed or emailed a Notice of Incomplete Proof of

4

Claim Submission ("**Deficiency Notice**") to the Claimant. *See* Mahn Decl., ¶¶ 20-21. The Deficiency Notice: (i) described the defect(s) or condition(s) of ineligibility in the Claimant's initial Proof of Claim; (ii) informed Claimants what was necessary to cure any "curable" defect(s) in the Proof of Claim; (iii) advised Claimants that, unless appropriate information and/or documentary evidence to complete the Proof of Claim was sent within 20 days from the date of the Deficiency Notice, the Proof of Claim would be recommended for rejection to the extent the deficiency or condition of ineligibility was not cured; and (iv) advised Claimants that, if they desired to contest Epiq's administrative determination, they were required to submit a written statement to Epiq requesting Court review of the determination and setting forth the basis for the request. *See* Mahn Decl., ¶ 21.

For Claimants who filed electronic Proofs of Claim, Epiq undertook a similar process but provided Claimants with an email attaching a Transaction Report that listed the specific electronic Claims that were incomplete, as well as a list of the specific portions of the Claims that were incorrect or incomplete. *See* Mahn Decl., ¶ 23.

In connection with deficiencies in both paper and electronic Proofs of Claim, Epiq reviewed all responses to the Deficiency Notices. If the response corrected the defect(s) or affected the Claim's status, Epiq updated the database to reflect the change in the status of the Claim. *See* Mahn Decl., ¶¶ 22, 24. If the response did not cure the deficiencies noted by Epiq, the Proof of Claim (or the deficient portion thereof) was ultimately rejected. *See Blank v. Jacobs*, No. 03-cv-2111-JS, 2013 WL 1310503, at *5 (E.D.N.Y. Mar. 27, 2013) (accepting claims administrator's "decision to reject any claims not properly documented unless any of those claimants has been able to cure the deficiencies").

### D. Disputed Claims

Epiq informed Claimants that they had the right to contest Epiq's determination of deficiencies or ineligibility within 20 days of the date of notification, and that they could request that the dispute be submitted to the Court for review. *See* Mahn Decl., ¶¶ 21, 23(b), 25. In order to dispute Epiq's determinations, Claimants were required to provide a statement indicating their grounds for contesting the rejection, along with any relevant supporting documentation. *Id*. A total of 20 Claimants contested Epiq's administrative determinations and requested review by the Court. *See id.*, ¶ 26.

In an attempt to narrow the disputes before the Court, Epiq contacted all Claimants requesting Court review in order to fully explain Epiq's determination of Claim status, answer questions, and facilitate the submission of missing information or documentation where applicable. *Id*. As a result of these efforts, 16 requests for Court review have either been cured or retracted. *Id*. Four requests for Court review have yet to be resolved or retracted. *See* Mahn Decl., ¶ 27. Epiq attempted to contact all four Claimants by telephone, email, and/or letter. *Id.* One of these four Claimants did not respond to Epiq's efforts to contact them. *Id*.

As set forth in detail in the accompanying Mahn Declaration, Epiq recommends the rejection of all four disputed claims because they either do not reflect eligible purchases during the Class Period or do not calculate to a Recognized Loss under the Plan of Allocation. *Id*. at ¶¶ 28-31. Lead Plaintiff therefore respectfully requests that the Court reject the disputed claims.

### E. Quality Assurance Review

Epiq also conducted a quality assurance review throughout the claims administration process. During its review, Epiq personnel, among other things, ensured that Proofs of Claim were processed properly, that deficiency and ineligibility message codes were properly applied to Proofs

of Claim, that Deficiency Notices were mailed to the appropriate Claimants, and that Epiq's computer programs were operating properly. *See* Mahn Decl., ¶¶ 34-37.

In support of this work, Epiq staff, designed, implemented, and tested the following programs: (i) data entry screens that store Proof of Claim information (including all transactional data included on each Proof of Claim and in any supporting documentation), attach message codes and, where necessary, apply text to denote conditions existing within the Proof of Claim; (ii) screens for the analyst to review images of the Proof of Claim and any supporting documentation provided; (iii) programs to load and analyze transactional data submitted electronically for all electronic Claims (the load program converts the data submitted into the format required by the calculation program, and the analysis program determines if the data is consistent and complete); (iv) a program to compare the claimed transaction prices against the reported market prices to confirm that the claimed transactions were within an acceptable range of the reported market prices; (v) a calculation program to analyze the transactional data for all Proofs of Claim and calculate the Recognized Losses; and (vi) programs to generate various reports throughout and at the conclusion of the administration, including lists of all eligible and ineligible Proofs of Claim. *See* Mahn Decl., ¶ 35.

Epiq's Securities Team performed a final quality control check once all of the accepted Claims were processed, Deficiency Notices were mailed, and deficiency processes were reviewed and processed, to ensure the correctness and completeness of the Proofs of Claim processed. *See* Mahn Decl., ¶ 36. In connection with this quality assurance wrap-up, Epiq: (i) confirmed that Proofs of Claim that are recommended for approval have no messages denoting ineligibility; (ii) confirmed that Proofs of Claim that are recommended for rejection have messages denoting ineligibility; (iii) confirmed that all Proofs of Claim requiring deficiency notices were sent such

notices; (iv) performed a sample review of deficient Proofs of Claim; (v) reviewed a sampling of Proofs of Claim with high Recognized Losses; (vi) sampled Proofs of Claim that had been determined to be ineligible, including those with no Recognized Losses calculated in accordance with the Plan of Allocation, in order to verify that all transactions had been captured correctly; and (vii) retested the accuracy of the calculation program. *Id*.

Epiq also reviewed and compared the entire database of Claimants against its list of questionable filers, which has been developed throughout its tenure administering class action settlements. *See* Mahn Decl., ¶ 37. After Epiq completed its quality assurance review, it notified Claimants of any results that impacted their Claims.

### F. Processing of Late but Otherwise Eligible Claims

Of the 8,860 Proofs of Claim submitted, 278 were received after the claim filing deadline of December 19, 2020 ("**Late Claims**"). Mahn Decl., ¶ 32. The Stipulation expressly contemplates that the deadline to submit Proofs of Claim may be extended by Order of the Court. In the interest of maximizing Class participation in the Settlement, Epiq recommends approving the Late Claims because doing so will not materially delay distribution of the Net Settlement Fund.

Epiq has processed all of the Late Claims and determined that 113 of them are otherwise eligible (collectively, "**Late But Otherwise Eligible Claims**"). *See* Mahn Decl., ¶ 32. The other 165 Late Claims were determined to be fully deficient and therefore ineligible.

Lead Plaintiff requests that the 113 Late But Otherwise Ineligible Claims be accepted and included in the distribution. *See Goldome Secs. Litig.*, 1991 WL 113263, at *2 (S.D.N.Y. June 20, 1991) (accepting class representatives' request "that certain untimely filed but otherwise valid claims be accepted for approval by the Court and that such persons be included in the list of authorized claimants entitled to share in the net settlement fund").

## II. DISTRIBUTION PROCEDURE FOR THE NET SETTLEMENT FUND

Under the proposed Distribution Plan set forth in the Mahn Declaration at ¶ 43, Epiq will distribute 100% of the available balance of the Net Settlement Fund—after deducting Notice and Administration Costs, Taxes, and Tax Expenses—to Authorized Claimants who would receive at least $10.00 based on their Recognized Loss in comparison to the total Recognized Losses of all Authorized Claimants. *See id*., ¶ 43(a). These costs and expenses will include Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of the initial distribution, subject to Court approval), as well as any further escrow fees, taxes, and the costs of preparing appropriate tax returns. ¶¶ 42-43.

In order to encourage Authorized Claimants to promptly deposit their payments, all distribution checks will bear the following notation: "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF DISTRIBUTION." *Id*. at ¶ 43(b). For Authorized Claimants whose checks are returned as undeliverable, Epiq will attempt to locate new addresses by reasonable methods. Where a new address is located, Epiq will update the database accordingly and re-issue a distribution check to the Authorized Claimant at the new address.

In the event an Authorized Claimant loses or damages his, her, or its check, or otherwise requires a new check, Epiq will issue replacements. Distribution re-issues will be undertaken only upon written instructions from the Authorized Claimant, provided that the Authorized Claimant returns the previous check where appropriate. For all checks, Epiq will void the initial payment prior to re-issuing a payment. Authorized Claimants will be informed that, if they do not cash their distribution checks within 90 days from the mailing date, or if they do not cash check re-issues within 30 days of the mailing of such re-issued check, their check will lapse, their entitlement to

recovery will be irrevocably forfeited, and the funds will be re-allocated to other Authorized Claimants. Re-issue requests for lost or damaged checks will be granted after the void date on the checks as long as the request for the re-issue is received prior to the next planned distribution. Requests for re-issued checks in connection with any re-distribution will be handled in the same manner. *See* Mahn Decl. ¶ 43(b) n.4

Authorized Claimants who do not negotiate their distribution checks within the time allotted or on the conditions set forth above will irrevocably forfeit all recovery from the Settlement. *Id.* ¶ 43(c). The funds allocated to all such stale-dated checks will be available to be distributed to other Authorized Claimants if Lead Counsel, in consultation with Epiq, determines that it is feasible to conduct a re-distribution. *Id.* Similarly, Authorized Claimants who do not negotiate their subsequent distributions (should such distributions occur) within the time allotted or on the conditions set forth above will irrevocably forfeit any further recovery from the Net Settlement Fund. *Id.*

Consistent with the Plan of Allocation, after Epiq has made reasonable and diligent efforts to have Authorized Claimants negotiate their distribution checks, any balance remaining in the Net Settlement Fund at least nine months after the initial distribution of such funds shall be re-distributed on a pro rata basis to Settlement Class Members who have cashed their initial distributions in an equitable and economical manner, after payment of unpaid costs or fees incurred in administering the Net Settlement Fund for such redistribution. *See* Mahn Decl. ¶ 43(d). These redistributions shall be repeated until the balance in the Net Settlement Fund is no longer economical to distribute. *Id.* Any *de minimis* balance that still remains in the Net Settlement Fund after redistribution(s) and payment of any unpaid costs or fees incurred in administering the Net Settlement Fund shall be contributed to the Legal Aid Society, a nonprofit legal advocacy

organization. *See In re Citigroup Inc. Sec. Litig.*, 199 F. Supp. 3d 845, 848 (S.D.N.Y. 2016) ("[C]y pres designations should be made only when it is not feasible to make further distributions to class members.").

New Proofs of Claim received after October 31, 2021, responses to deficiencies received after October 31, 2021, and adjustments to Proofs of Claim that would result in an increased Recognized Loss received after October 31, 2021 will not be eligible for the initial distribution. *See* Mahn Decl. ¶ 43(e). If a re-distribution is necessary, Epiq will propose these claims be eligible for payment in the re-distribution. *Id.*

## III.   RECORD RETENTION AND DESTRUCTION

Lead Plaintiff additionally requests that Epiq be permitted to destroy paper copies of Proofs of Claim and all supporting documentation one year after the final distribution, and that Epiq be permitted to destroy electronic copies of the same one year after all funds have been distributed.

## IV.   AUTHORIZATION FOR ADDITIONAL PAYMENT TO EPIQ

To date, Epiq has incurred $365,116.83 for its work performed on behalf of the Class, including its estimate of fees and expenses to complete the initial distribution. Mahn Declaration ¶ 42. Lead Counsel has already paid Epiq a total of $68,225.94 in connection with its fees and expenses pursuant to ¶ 7-8 and 12 of the Preliminary Approval Order (ECF No. 74) and ¶ 13 of the Stipulation. Epiq thus has $296,890.89 in outstanding fees and expenses. Mahn Decl. ¶ 42. To the extent there are any remaining funds following the initial distribution and Epiq and Lead Counsel determine that it is feasible to conduct another distribution, Lead Counsel proposes to pay any additional fees and expenses incurred by Epiq in connection therewith as contemplated in the Mahn Decl. at ¶ 43(d) from any funds remaining at that time.

Accordingly, lead Counsel thus requests the Court approve payment from the Settlement Fund to Epiq of up to $296,890.89 for its outstanding fees and expenses including its estimated fees and expenses to complete the initial distribution, and to provide for the payment of additional fees and expenses in connection with any subsequent distribution as contemplated in the Mahn Decl. at ¶ 43(d).

## CONCLUSION

For the reasons above, Lead Plaintiff respectfully requests the Court enter the accompanying proposed Distribution Order reflecting the foregoing and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 16, 2021

**LEVI & KORSINSKY, LLP**

*/s/ Gregory M. Nespole*
Joseph E. Levi
Gregory M. Nespole
55 Broadway, 10th Floor
New York, NY 10006
T: (212) 363-7500
F: (212) 363-7171
E: jlevi@zlk.com
　gnespole@zlk.com

*Plaintiffs' Lead Counsel*