USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/15/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Avon Products Inc. Securities Litigation | No. 19-cv-01420-MKV<br>CLASS ACTION |

## ORDER APPROVING DISTRIBUTION OF THE
## NET SETTLEMENT FUND TO AUTHORIZED CLAIMANTS

WHEREAS Court-appointed Lead Plaintiff Holly-Ngo ("Lead Plaintiff"), by her undersigned Court-appointed Lead Counsel Levi & Korsinsky, LLP ("Lead Counsel"), has moved this Court for entry of this Order Approving Distribution of the Net Settlement Fund to Authorized Claimants in the above-captioned class action (the "Action"), and the Court having considered all materials and arguments submitted in support of the Motion, including the Declaration of Jessie M. Mahn in Support of Lead Plaintiff's Motion for Order Authorizing Distribution of Class Action Settlement Proceeds (the "Mahn Declaration") and Memorandum of Law in Support of Lead Plaintiff's Motion for Entry of an Order Approving Distribution of the Net Settlement Fund to Authorized Claimants submitted therewith;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order hereby incorporates by reference the definitions in the Stipulation and Agreement of Settlement filed on August 21, 2020 (ECF No. 77-1) (the "Stipulation"), and all capitalized terms, unless otherwise defined herein, shall have the same meanings as set forth in the Stipulation or in the Mahn Declaration.

2. The Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Claimants.

3. Lead Plaintiff's Motion for Entry of an Order Approving Distribution of the Net Settlement Fund to Authorized Claimants is **GRANTED**. Accordingly,

        a.        The administrative recommendations of the Court-approved Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq") to accept the Timely Eligible Claims set forth in Exhibit C-1 to the Mahn Declaration and the Late But Otherwise Eligible Claims set forth in Exhibit C-2 to the Mahn Declaration are approved;

        b.        Epiq's administrative recommendations to reject the Rejected Claims set forth in Exhibit C-3 to the Mahn Declaration and the Disputed Claims as set forth in the Mahn Declaration and in Exhibits B-1, B-2, B-3, and B-4 of that Declaration are approved;

        c.        Epiq will calculate award amounts for all Authorized Claimants as if the Net Settlement Fund, after deducting all payments of fees and expenses incurred in connection with administering the Net Settlement Fund and approved by the Court, any estimated future payments for such fees and expenses, as well as any further payments for escrow fees, taxes, and costs of preparing appropriate tax returns, were to be distributed now, by calculating each Authorized Claimant's *pro rata* share of the Net Settlement Fund in accordance with the Court-approved Plan of Distribution (an Authorized Claimant's "Distribution Amount");

        d.        Epiq will then distribute 100% of the available balance of the Net Settlement Fund after deducting any Notice and Administration Costs, Taxes, and Tax Expenses, to Authorized Claimants who would receive at least $10.00 based on their Recognized Loss in comparison to the total Recognized Losses of all Authorized Claimants;

        e.        In order to encourage Authorized Claimants to promptly deposit their distribution checks, and to avoid or reduce future expenses relating to unpaid distribution checks, all distribution checks will bear the notation, "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF DISTRIBUTION." Epiq is authorized to take appropriate action to locate and/or contact any Authorized Claimant who

or which has not negotiated his, her, or its payment within said time, as detailed within paragraph 43(b), n.4 of the Mahn Declaration;

        f.      Authorized Claimants who or which do not negotiate their payments within the time allotted will irrevocably forfeit all recovery from the Net Settlement Fund. The funds allocated to all such stale-dated checks will be available to be distributed to other Authorized Claimants if Lead Counsel, in consultation with Epiq, determines in its sole discretion that it is feasible to conduct a re-distribution. In the event there are any subsequent distributions, Authorized Claimants who or which do not negotiate their payments for such subsequent distribution(s) within the time allotted will irrevocably forfeit that and any further recovery from the Net Settlement Fund.

        g.      Consistent with the Plan of Allocation, after Epiq has made reasonable and diligent efforts to have Authorized Claimants negotiate their distribution checks, any balance remaining in the Net Settlement Fund at least nine months after the initial distribution of such funds shall be re-distributed on a pro rata basis to Settlement Class Members who have cashed their initial distributions in an equitable and economical manner, subject to the previous paragraph 3(f), after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such redistribution. These redistributions shall be repeated until the balance in the Net Settlement Fund is no longer economical to distribute. Any balance that still remains in the Net Settlement Fund after said redistributions, and after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund, shall be contributed to the Legal Aid Society, a nonsectarian charitable organization certified as tax-exempt under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

h. New Proofs of Claim received after October 31, 2021, responses to deficiencies received after October 31, 2021, and adjustments to Proofs of Claim that would result in an increased Recognized Loss received after October 31, 2021 will not be eligible for the initial distribution. If a re-distribution is necessary, Epiq will propose these claims be eligible for payment in the re-distribution.

4. Unless otherwise ordered by the Court, one year after the final distribution, Epiq will destroy the paper copies of the Proofs of Claim and all supporting documentation, and one year after all funds have been distributed, Epiq will destroy electronic copies of the same.

5. The Court authorizes Lead Counsel to pay to Epiq up to an additional $296,890.89 for its outstanding fees and expenses in administering the Settlement, including its estimate of fees and expenses to complete the initial distribution of the Net Settlement Fund as set forth in Exhibit D to the Mahn Declaration. To the extent there are any subsequent distribution(s), Lead Counsel is authorized to pay Epiq's fees and expenses incurred therewith as set forth in paragraph 43(d) of the Mahn Declaration.

6. The Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and any such other further relief as this Court deems appropriate.

**SO ORDERED** in the Southern District of New York on December 15, 2021.

_____
HON. MARY KAY VYSKOCIL
UNITED STATES DISTRICT JUDGE